IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANTÉ GORDON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>SIG SAUER, INC.,<br><br>               Defendant. | Civil Action No. 4:19-cv-00585<br><br>**JOINT DISCOVERY / CASE MANAGEMENT PLAN UNDER RULE 26(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Judge:  Honorable Lee H. Rosenthal |

1. **State where and when the meeting of the parties required by Rule 26(f) was held, and identify the counsel who attended for each party.**

   The Parties met and conferred telephonically pursuant to Rule 26(f) on April 18, 2019. Plaintiff was represented by Joseph I. Marchese and Neal J. Deckant of Bursor & Fisher, P.A. Defendant was represented by Amy Crouch of Shook, Hardy & Bacon, LLP and Robert L. Joyce of Littleton Park Joyce Ughetta & Kelly LLP.

2. **List the cases related to this one that are pending in any state or federal court with the case number and court.**

   The Parties are unaware of any related Rule 23 class action matters concerning the alleged "drop fire" issue.  The pending matter captioned *Hartley v. SIG SAUER, Inc.*, No. 4:18-cv-00267-HFS (W.D. Mo.) concerns allegations that the SIG P320 pistol is manufactured "without the inclusion of an important safety item known as a disconnector safety," which may cause the pistol to fire "out-of-battery."  Plaintiffs in *Hartley* seek damages related to an alleged potential for their pistols to fire "out-of-battery," not related to an alleged "drop fire" risk.  *See* Dkt. 1.

3. **Briefly** describe what this case is about.

Plaintiff alleges that the SIG SAUER ("SIG") P320-brand semi-automatic pistol, due to a defect, can inadvertently discharge a round of ammunition if dropped on the ground (a "drop fire"). Complaint, ¶ 1 (Dkt. 1). SIG repeatedly misrepresented and warranted that the P320 pistols were "drop safe," "won't fire unless you want [them] to," and are "originally manufactured free of defects in material, workmanship and mechanical function." *Id.* Accordingly, Plaintiff alleges that SIG's original design and manufacture of the P320 pistol rendered the weapon unreasonably dangerous for its intended uses. *Id.*

Plaintiff further alleges that SIG has known about the drop fire defect since at least April 20, 2016, when the U.S. Army discovered the defect during its field testing. *Id.*, ¶ 2. In the Army's assessment, a heavy and defective trigger and sear caused the drop fire issue. *Id.* The Army insisted that SIG fix the deficiency by installing a lighter trigger and modified sear. *Id.* SIG promptly implemented this fix for the military versions of the P320. *Id.* However, SIG continued to manufacture defective P320 pistols for the civilian market until late 2017. *Id.* Currently, there are believed to be approximately 500,000 defective P320 pistols in circulation in the civilian market. *Id.*

Plaintiff alleges that pistols should not discharge upon mere impact with the ground. *Id.*, ¶ 3. Drop fires are extremely rare and are abnormal in the firearms industry. *Id.* A 2015 study from the U.S. Center for Disease Control and Prevention analyzed data from 27 states and found that in 193 cases in which people were killed "due to unintentional firearm-related injuries," a "dropped gun" was to blame in only 12 of those deaths. *Id.*

4. **Specify the allegation of federal jurisdiction.**

Plaintiff alleges that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant. Compl., ¶ 9.

Plaintiff further alleges that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff Gordon is a citizen of Texas and resides in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District, and documents and witnesses are likely to be located within this District. *Id.*, ¶ 10. Moreover, Defendant distributed, advertised, and sold the SIG P320 pistol, which is the subject of the present complaint, in this District. *Id.*

**5.     Identify the parties who disagree and the reasons.**

Defendant SIG Sauer, Inc., denies the allegations in Plaintiff's Complaint and denies that this Court has jurisdiction over certain alleged claims. The P320 model pistol is not defective, either in its pre-upgrade or post-upgrade design. At all times, the P320 pistol met or exceeded U.S. abusive handling safety standards. However, mechanical safeties are designed to augment, not replace, safe handling practices. Careless and improper handling of any firearm can result in an unintentional discharge. For this reason, since the P320 model pistol was first manufactured and sold, SIG Sauer has warned consumers that careless and improper handling of any firearm, including dropping a pistol, can result in an unintentional discharge.

Through additional testing above and beyond U.S. safety standards, SIG Sauer confirmed that, usually after multiple drops, at certain angles and conditions, a potential discharge of the P320 may result when dropped. Although it is a rare occurrence, with very specific conditions, SIG Sauer developed and implemented the P320 Voluntary Upgrade Program in August 2017. The program included an alternate design that reduced the physical weight of the trigger, sear, and striker designed to enhance the performance and safety of the P320 pistol. The alternate design has been used in all newly manufactured P320s since August 2017. The upgrade program is available, at no cost, to all P320 owners who purchased their firearms before the alternate design was implemented, including Plaintiff. The free upgrade program continues to be available to Plaintiff and all other P320 purchasers. Plaintiff has not alleged that the upgraded P320 contains a "drop fire" defect. For all of the above reasons, the P320 pistol is neither

2

defective, nor did SIG Sauer fail to warn, nor has Plaintiff suffered any compensable injury under the terms of the parties' consumer contract.

Class certification is inappropriate here for a number of reasons. First, courts in the Fifth Circuit have routinely found that nationwide breach of warranty, unjust enrichment, and fraud claims are inappropriate for class treatment due primarily to variations in the 50 states' laws. Such nationwide class claims are appropriately stricken at the pleading stage. Second, Plaintiff's proposed class definitions are improperly overbroad because they include all purchasers, irrelevant of other factors, such as purchasers who sold or relinquished their P320 without experiencing a "drop fire" or purchasers who bought after the alternate design was implemented (none of whom have suffered any injury). Additional reasons the case is inappropriate for class treatment will be presented in SIG Sauer's class certification opposition.

Finally, the Court lacks personal jurisdiction over the claims of non-Texas class members under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). SIG Sauer does not have contacts with Texas sufficient to subject it to general or specific jurisdiction for class members' claims with no connection to Texas. Courts have recognized that under the rationale of *Bristol-Myers*, Rule 23 cannot create jurisdiction where it does not otherwise exist. *See*, *e.g.*, *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017). All of Plaintiff's nationwide claims should accordingly be dismissed.

6. **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

   The Parties are unaware of any additional entities that should be included at this time.

7. **List anticipated interventions.**

   The Parties are not anticipating any interventions at this time.

8. **Describe class-action or collective-action issues.**

*Plaintiff's Position*

This case is a Rule 23 consumer class action. As such, Plaintiff must move for class certification "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). The U.S. Supreme

3

Court has also recognized that adjudication of motions for class certification will frequently require a "rigorous analysis [that] will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). As such, Plaintiff would like the benefit of completing fact discovery – and expert discovery <u>for class certification purposes</u> – prior to moving for class certification. However, for the sake of judicial efficiency and preventing delay and unnecessary litigation costs, Plaintiff opposes any request to bifurcate discovery into a class certification phase and a post-certification phase, as proposed by Defendant below. *See* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

***Defendant's Position***

Defendant recognizes that, per applicable caselaw, merits discovery will be taken during the class certification phase of the case to the extent that such merits discovery demonstrates whether class certification is appropriate under Federal Rule of Civil Procedure 23. However, to the extent discovery is requested on a topic that has no bearing on the class certification-merits inquiry (*e.g.*, company financial information or other information relevant solely to potential punitive damages), that discovery shall be deferred. Once the Court has rendered its decision on the propriety of class certification, remaining discovery will proceed.

9. **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.**

Plaintiff served his Mandatory Initial Discovery Pilot Responses on April 9, 2019. Defendant served its Mandatory Initial Discovery Pilot Responses on April 16, 2019. The Parties discussed these Responses during their meet and confer pursuant to Rule 26(f) on April 18, 2019.

**10. Describe the proposed agreed discovery plan, including:**

**a. Responses to all the matters raised in Rule 26(f), including any agreements reached concerning electronic discovery and any disputed issues relating to electronic discovery.**

The Parties agreed to negotiate a protocol for the production of electronically stored information ("ESI"). Counsel for Plaintiff will prepare the draft. Likewise, the Parties also agreed to negotiate a protective order, which counsel for Defendant drafted and the Parties filed. The Court entered the agreed Protective Order on May 1.

**b. When and to whom the plaintiff anticipates it may send interrogatories.**

Plaintiff anticipates that he will serve his first set of interrogatories on Defendant following the Court's Initial Conference.

**c. When and to whom the defendant anticipates it may send interrogatories.**

Defendant anticipates that it will serve its first set of interrogatories on Plaintiff following the Court's Initial Conference.

**d. Of whom and by when the plaintiff anticipates taking oral depositions.**

While Defendant identified several individuals in its Mandatory Initial Discovery Pilot Responses, Plaintiff would like the benefit of obtaining document production from Defendant, and reviewing the documents produced, prior to creating a schedule for taking depositions.

**e. Of whom and by when the defendant anticipates taking oral depositions.**

Defendant anticipates that it will depose the Plaintiff after the Court issues a ruling on Defendant's motion to dismiss and after Plaintiff produces documents to Defendant.

**f. When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.**

See Section 11, below.

> **g.     List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date.  *See* Rule 26(a)(2)(B) (expert report).**

Plaintiff will likely take the deposition of any experts identified by Defendant following their disclosure and the service of their expert reports, as outlined above.

> **h.     List expert depositions the opposing party anticipates taking and their anticipated completion date.  *See* Rule 26(a)(2)(B) (expert report).**

Defendant will likely take the deposition of any experts identified by Plaintiff following their disclosure and the service of their expert reports, as outlined above.

> **i.     In a case involving parties that are unincorporated entities, such as an LLC or LLP, state the citizenship of every member and file an affidavit or declaration setting out the citizenship of every member.**

Not applicable.

**11.    If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

*<u>Plaintiff's Position</u>*

Plaintiff proposes that fact discovery shall conclude nine months after the Court issues a ruling on Defendant's motion to dismiss.  Within thirty days of the conclusion of fact discovery, the Parties shall simultaneously disclose expert reports for class certification purposes.  Thirty days thereafter (*i.e.*, sixty days after the conclusion of fact discovery), the Parties shall serve rebuttal expert reports for class certification purposes.  Another thirty days thereafter (*i.e.*, ninety days after the conclusion of fact discovery), Plaintiff shall move for class certification.  Defendant shall have thirty days to oppose Plaintiff's motion.  Plaintiff shall have twenty-one days to file his reply in further support.

Sixty days after the Court issues a ruling on Plaintiff's motion for class certification, the Parties should simultaneously exchange expert reports for <u>merits</u> purposes.[1] Thirty days thereafter, following any necessary depositions, the Parties shall simultaneously exchange rebuttal expert reports for merits purposes.

As discussed below, Plaintiff proposes the simultaneous exchange of expert reports, while Defendant proposes a staggered exchange. Plaintiff believes that a simultaneous exchange of expert reports is in the interest of judicial efficiency and fairness. *See* Fed. R. Civ. P. 1.

***Defendant's Position***

Defendant agrees that fact discovery necessary for class certification (and the requisite merits analysis) shall conclude nine months after the Court issues a ruling on Defendant's motion to dismiss. However, Defendant proposes a staggered expert schedule thereafter, consistent with Rule 26. *See* Fed. R. Civ. P. 26, Advisory Committee Notes to 1993 Amendments (noting that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue."); *see also* Manual for Complex Litigation, 4th, at 98 (noting that the party bearing the burden of proof "should normally be required to disclose its expert testimony on that issue before the other parties."). Specifically, within thirty days of the conclusion of class certification discovery, Plaintiff shall disclose expert reports for class certification purposes. Sixty days thereafter, Defendant shall disclose expert reports for class certification purposes. Sixty days thereafter, Plaintiff may file rebuttal expert reports for class certification purposes. Class certification experts will be made available for deposition within thirty days of the date they are disclosed unless otherwise agreed upon by the parties.

---

[1] As Plaintiff's Position contains no bifurcation between fact discovery for class certification purposes and post-certification discovery, there is no need for additional fact discovery beyond the class certification stage under Plaintiff's proposed schedule. *See supra* § 8.

7

On the day Plaintiff files his rebuttal expert reports, Plaintiff shall move for class certification. Defendant shall have forty-five days to oppose Plaintiff's motion. Plaintiff shall have twenty-one days to file his reply in further support.

Defendant proposes that, subsequent to the Court's ruling on class certification, the Parties shall convene to discuss all remaining discovery to be conducted and will thereafter propose to the Court a schedule through trial.

**12.    Specify the discovery beyond initial disclosures that has been undertaken to date.**

No discovery beyond the Mandatory Initial Discovery Pilot Responses has occurred. The Parties have not yet exchanged documents, noticed depositions, served requests for production of documents, or served interrogatories.

**13.    State the date the planned discovery can reasonably be completed.**

*<u>Plaintiff's Position</u>*

Pursuant to the schedule set forth above, fact discovery shall conclude nine months following the Court's ruling on Defendant's motion to dismiss. *See supra* § 8. All remaining expert discovery for merits purposes should conclude ninety days following the Court's ruling on Plaintiff's motion for class certification. *See supra* § 11.

*<u>Defendant's Position</u>*

Defendant proposes that class certification-merits discovery shall conclude nine months following the Court's ruling on Defendant's motion to dismiss. *See supra* § 8. Defendant proposes that any remaining discovery be scheduled following a ruling on class certification. *See supra* § 11.

**14.    Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

During the Rule 26(f) meeting, Plaintiff indicated a willingness to discuss resolution at any time. That said, so that Plaintiff can have a fruitful discussion, a condition precedent is for Defendant to provide the following information: (i) the number of SIG P320 pistols in the civilian marketplace (*i.e.*, non-military, but including law enforcement) that are subject to the

8

alleged "drop fire" defect and have not been subject to SIG's "voluntary upgrade" program, and (ii) the average purchase price at retail for the SIG P320 pistol. Plaintiff proposed that any such information may be designated confidential under Federal Rule of Evidence 408.

Defendant requested an explanation of the remedy sought and rationale of the action in light of the free Upgrade program that has been and remains available to Plaintiff and all other P320 owners whose firearms contain the original design. Defendant nonetheless stated that it would take Plaintiff's request under advisement. Defendant also noted that any production of confidential material would need to wait until after the entry of a protective order.

15. **From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

At the appropriate time, Plaintiff believes that a non-binding mediation would be the most appropriate alternative dispute resolution technique. Plaintiff would oppose a request for a binding arbitration.

Defendant likewise opposes a binding arbitration. Defendant would be agreeable to a non-binding mediation in the event that Plaintiff produces evidence of an alleged "drop fire defect" that is not already remedied by the free Upgrade program already in place and available to the Plaintiff.

16. **Magistrate judges may now hear jury and nonjury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

The Parties do not wish to convene the trial before a magistrate judge.

17. **State whether a jury demand has been made and if it was made on time.**

In the initial Complaint, Plaintiff demands a trial by jury "on all causes of action and issues so triable." Dkt. 1.

18. **Specify the number of hours it will likely take to present the evidence in this case.**

The Parties estimate that it will take roughly 2-3 weeks to present evidence at trial. This figure will likely be adjusted during the course of discovery.

9

**19. List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

Defendant filed a motion to dismiss on April 16, 2019, which will be fully briefed on June 6, 2019.

**20. List other pending motions.**

There are no other pending motions.

**21. List issues or matters, including discovery, that should be addressed at the conference.**

As set forth above, the Parties ask the Court to set their proposed schedule for the conclusion of fact discovery, the service of expert reports for class certification purposes, and deadlines for class certification briefing. *See supra* §§ 8, 11, 13. The Court should also set a deadline for remaining discovery, including remaining expert reports, following a decision on class certification. *See id.*

**22. Certify that all parties have filed the Disclosure of Interested Persons as directed in the Order for Conference and Disclosure of Interested Persons, listing the date of filing for original and any amendments.**

The Parties will file their Disclosures of Interested Persons concurrently herewith on May 3, 2019.

**23. List the names, bar numbers, addresses, telephone numbers, and e-mails of all counsel and unrepresented parties.**

**For Plaintiff:**

Brandon T. Allen (TX Bar No. 24009353)
Michael K. Oldham (TX Bar No. 00798405)
REYNOLDS FRIZZELL LLP
1100 Louisiana, Ste 3500
Houston, TX 77002
Tel: 713-485-7200
Email: ballen@reynoldsfrizzell.com
        oldham@reynoldsfrizzell.com

Joseph I. Marchese (*pro hac vice*, NY Bar No. 4238317)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Tel: 646-837-7150
Email: jmarchese@bursor.com

Neal J. Deckant (*pro hac vice*, CA Bar No. 322946)
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut, CA 94596
Tel: 925-300-4455
Email: ndeckant@bursor.com

**For Defendant:**

Ryan S. Killian (SDTX ID No. 3265256; TX Bar No. 24105667)
SHOOK, HARDY & BACON, LLP
600 Travis St., Ste 3400
Houston, TX 77002
Tel: 713-227-8008
Email: rkillian@shb.com

Amy Crouch (*pro hac vice*, MO Bar No. 48654)
David Brent Dwerlkotte (*pro hac vice*, MO Bar No. 62864)
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
Tel: 816-474-6550
Email: amcrouch@shb.com
       dbdwerlkotte@shb.com

Robert L. Joyce (*pro hac vice*, NY Bar No. NY 2056083)
LITTLETON PARK JOYCE UGHETTA & KELLY LLP
1 Manhattanville Road, Suite 302
Purchase, NY 10577
Tel: 914-417-3419
Email: robert.joyce@littletonpark.com

Dated:  May 3, 2019

Respectfully submitted,

BURSOR & FISHER, P.A.

By:   */s/ Joseph I. Marchese*
         Joseph I. Marchese

Joseph I. Marchese (*pro hac vice*)
Attorney-in-Charge
NY State Bar No. 4238317
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF DANTE GORDON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

**Of Counsel:**

Neal J. Deckant (p*ro hac vice*)
CA State Bar No. 322946
NY State Bar No. 5026208
Bursor & Fisher, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
ndeckant@bursor.com

Michael K. Oldham
State Bar No. 00798405
S.D. Tex. Bar No. 21486
oldham@reynoldsfrizzell.com
Brandon T. Allen
State Bar No. 24009353
S.D. Tex. Bar No. 25494
allen@reynoldsfrizzell.com
Reynolds Frizzell LLP
1100 Louisiana, Suite 3500
Houston, Texas 77002
Telephone:  (713) 485-7200
Facsimile:  (713) 485-7250

Dated: May 3, 2019					Respectfully submitted,

							SHOOK, HARDY & BACON, LLP

							By:	*/s/ Amy Crouch*
								Amy Crouch

							Amy Crouch
							2555 Grand Boulevard
							Kansas City, MO 64108
							Telephone: (816) 474-6550
							E-Mail: amcrouch@shb.com

							**ATTORNEY FOR DEFENDANT SIG SAUER, INC.**