**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **DANTE GORDON,** | ) |
| Individually and on behalf of all others | ) |
| similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CASE NO: 4:19-CV-00585-LHR** |
| | ) |
| **SIG SAUER, INC.** | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**SIG SAUER, INC.'S MOTION TO DISMISS PLAINTIFF'S**
**FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................................ 2

LEGAL STANDARD .................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.  GORDON LACKS STANDING TO BRING INDIVIDUAL AND
    "NATIONWIDE" CLAIMS. .................................................................................... 4

    A.  Without a Manifest Defect, Gordon Suffered No Injury and Lacks
        Standing. .................................................................................................... 4

    B.  Gordon Lacks Standing to Bring "Nationwide" Claims On Behalf
        of Putative Class Members Based on Other States' Laws. ......................... 8

II. SIG SAUER IS NOT SUBJECT TO PERSONAL JURISDICTION IN
    TEXAS FOR CLASS MEMBERS' CLAIMS WITH NO CONNECTION
    TO TEXAS ............................................................................................................. 9

    A.  SIG Sauer is Not Subject to General Jurisdiction in Texas. ...................... 9

    B.  SIG Sauer is Not Subject to Specific Jurisdiction in Texas for
        Class Members' Claims with No Connection to Texas. ........................... 10

III. THE COURT SHOULD STRIKE OR DISMISS GORDON'S
     PROPOSED CLASS DEFINITIONS .................................................................... 14

    A.  Gordon's Proposed Class Definitions Are Overbroad. ............................ 14

    B.  Gordon's Proposed Nationwide Classes Cannot Meet the
        Commonality or the Predominance Requirements Under Rule 23 ........... 15

IV. GORDON'S WARRANTY-BASED CLAIMS FAIL FOR MULTIPLE
    REASONS ............................................................................................................. 18

    A.  Gordon's Warranty Claims Fail Because There Is No Breach. ................ 18

    B.  Gordon's MMWA Claims Based on Advertising and Marketing
        Fail. ......................................................................................................... 19

    C.  All of Gordon's Warranty Claims Fail for Lack of Notice. ..................... 20

V.  GORDON'S UNJUST-ENRICHMENT CLAIMS FAIL .................................... 21

VI. GORDON'S FRAUD AND DTPA CLAIMS FAIL FOR MULTIPLE
    REASONS ............................................................................................................. 22

**A.** Fraudulent Concealment Is Not An Independent Cause of Action........... 22

**B.** Gordon Alleges No Facts Showing SIG Sauer Had A Duty To
Disclose Or that SIG Sauer Knew of the Alleged Defect Before
Gordon Purchased His P320. ................................................................... 22

**C.** Gordon's DTPA Claim Fails for the Additional Reason that No
Statement by SIG Sauer Was the Producing Cause of Any Injury........... 24

CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Unione Mediterranea Di Sicurta*,
220 F.3d 659 (5th Cir. 2000) ...................................................................................................9

*Agostino v. Quest Diagnostics Inc*.,
256 F.R.D. 437 (D.N.J. 2009)...............................................................................................17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................................................13

*Amoco Prod. Co. v. Smith*,
946 S.W.2d 162 (Tex. App. 1997).........................................................................................21

*Amstadt v. U.S. Brass Corp*.,
919 S.W.2d 644 (Tex. 1996)..................................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................3

*Beck v. FCA US LLC*,
273 F.Supp.3d 735, 753 (E.D. Mich. 2017)..........................................................................24

*Blissard v. FCA US LLC*,
2018 WL 6177295 (C.D. Cal. Nov. 9, 2018).........................................................................24

*Bradford v. Vento*,
48 S.W.3d 749 (Tex. 2001).....................................................................................................22

*Bristol-Meyers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)..........................................................................................9, 10, 12, 13

*Bus. Staffing, Inc. v. Jackson Hot Oil Serv*.,
401 S.W.3d 224 (Tex. App.—El Paso 2012, pet. denied) ......................................................24

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1995) .............................................................................................16, 17

*Chavez v. Church & Dwight Co.*,
2018 WL 2238191 (N.D. Ill. May 16, 2018).........................................................................12

*Clapper v. Am. Realty Investors, Inc*.,
2018 WL 3868703 (N.D. Texas Aug, 14, 2018) ...................................................................21

*Coburn Sup. Co., Inc. v. Kohler Co.*,
 342 F.3d 372 (5th Cir. 2003) ...............................................................................................22

*Coghlan v. Wellcraft Mar. Corp.*,
 240 F.3d 449 (5th Cir. 2001) .............................................................................................5, 6

*Cole v. Gen. Motors Corp.*,
 484 F.3d 717 (5th Cir. 2007) ...........................................................................................15, 16

*Corcoran v. CVS Health Corp.*,
 169 F.Supp.3d 970 (N.D. Cal 2016) .......................................................................................8

*DeBremaecker v. Short*,
 433 F.2d 733 (5th Cir. 1970) ................................................................................................15

*DiNoto v. USAA Cas. Ins. Co.*,
 2014 WL 4923975 (S.D. Tex. Sept. 30, 2014) ........................................................................4

*Dvorin v. Chesapeake Explor., LLC*,
 2013 WL 6003433 (N.D. Tex. Nov. 13, 2013).......................................................................16

*Everett v. TK-Taito, LLC*,
 178 S.W.3d 844 (Tex. App. 2005)............................................................................................5

*Exxon Corp. v. Emerald Oil & Gas Co.*,
 348 S.W.3d 194 (Tex. 2011)...................................................................................................23

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ......................................................................11

*Fortune Prod. Co. v. Conoco, Inc.*,
 52 S.W.3d 671 (Tex. 2000)......................................................................................................21

*Frith v. Guardian Life Ins. Co. of Am.*,
 9 F. Supp. 2d 734 (S.D. Tex. 1998) .........................................................................................4

*Gen. Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982).................................................................................................................15

*Glenn v. Hyundai Motor Am.*,
 2016 WL 3621280 (C.D. Cal. June 24, 2016) ..........................................................................8

*Gonzalez v. State Farm Lloyds*,
 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017) ...............................................................................4

*Goodyear Dunlop Tires Operations, S.A. V. Brown*,
 564 U.S. 915 (2011)...................................................................................................................9

*Hadley v. Chrysler Group LLC*,
    2014 WL 988962 (E.D. Mich. Mar. 13, 2014) ..................................................................7, 19

*Hancock v. Chi. Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009) ...................................................................................21

*Harkless v. Sweeny Indep. Sch. Dist.*,
    427 F.2d 319 (5th Cir. 1970) ..................................................................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)................................................................................................................13

*Henderson v. Ford Motor Co.*,
    547 S.W.2d 663 (Tex. App. 1977)............................................................................................7

*In re Actiq Sales & Mktg. Prac. Litig.*,
    307 F.R.D. 150 (E.D. Pa. 2015)..............................................................................................17

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    2017 WL 5971622 (E.D. La. Nov. 30, 2017) ..................................................................11, 14

*In re Clorox Consumer Litig.*,
    No. 12-CV-280, 2013 WL 3967334 (N.D. Cal. July 31, 2013)...............................................21

*In re Dental Supplies Antitrust Litig.*,
    2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .......................................................................11

*In re Ditropan XL Antitrust Litig.*,
    529 F.Supp.2d 1098 (N.D. Cal. 2007) ......................................................................................8

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
    2010 WL 2813788 (D.N.J. July 9, 2010)................................................................................21

*In re OnStar Contract Litig.*,
    2010 WL 3516691 (E.D. Mich. Aug. 25, 2010) .....................................................................16

*In re Scotts EZ Seed Litig*,
    2013 WL 2303727 (S.D.N.Y. May 22, 2013) ........................................................................20

*Ins. Co. of N. Am. v. Morris*,
    981 S.W.2d 667 (Tex. 1998)...................................................................................................22

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    2014 WL 943224 (D. Minn. Mar. 11, 2014) ...........................................................................8

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ..................................................................................................14

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................................8

*Loch-invar Corp. v. Meyers*,
    930 S.W.2d 182 (Tex. App.—Dallas 1996, no writ) .............................................21

*Lujan v. Def. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................4, 7

*Luv N'care, Ltd. v. Insta–Mix, Inc.*,
    438 F.3d 465 (5th Cir. 2006) .................................................................................9

*M.D. v. Perry*,
    2011 WL 2173673 (S.D. Tex. June 2, 2011), 675 F.3d 832 (5th Cir. 2012) ..........15

*Mandani v. Volkswagen Grp. of Am.*,
    2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ........................................................24

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ...............................................................................17

*McDonnell v. Nature's Way Prods.*,
    LLC, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...............................................12

*McManus v. Fleetwood Enterp, Inc.*,
    320 F.3d 545 (5th Cir. 2003) ...............................................................................17

*Mollicone v. Universal Handicraft, Inc.*,
    2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ..........................................................8

*Molock v. Whole Foods Mkt., Inc.*,
    297 F. Supp. 3d 114, 126 (D.D.C.) ...............................................................11, 14

*Mussat v. IQVIA Inc.*,
    2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ..................................................11, 13

*Nelson v. Regions Mortg. Inc.*,
    170 S.W. 3d 858 (Tex. App. Dallas 2005, no pet.) ...............................................22

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) .................................................................................5

*Pilgrim v. Universal Health Card, LLC*,
    2010 WL 1254849 (N.D. Ohio Mar. 25, 2010) ....................................................17

*Powell Elec. Sys., Inc. v. Hewlett Packard Co.*,
    356 S.W.3d 113 (Tex. App. 2011) .........................................................................7

*Practice Mgmtt Support Servs., Inc., v. Cirque du Soleil, Inc.*,
   301 F.Supp.3d 840, 846 (N.D. Ill. 2018) ................................................................11

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
   896 S.W.2d 156 (Tex. 1995)...........................................................................23, 24

*Rivera v. Wyeth*,
   283 F.3d 315 (5th Cir. 2002) .....................................................................5, 15, 20

*Rosa v. Am. Water Heater Co.*,
   177 F. Supp. 3d 1025, 1042-43 (S.D. Tex. 2016)............................................15, 16

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ...............................................................................10

*Sheehan v. Adams*,
   320 S.W.3d 890 (Tex. Ct. App. 2010) ...................................................................23

*Skelton v. Gen. Motors Corp.*,
   660 F.2d 311 (7th Cir. 1981) ..........................................................................19, 20

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).....................................................................................4, 7

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 16535931 (N.D. Cal. June 5, 2009) ........................................................20

*Taliaferro v. Samsung Telecomm. Am., LLC*,
   2012 WL 169704 (N.D. Tex. Jan. 19, 2012) ...............................................18, 19, 20

*Tuchman v. DSC Commc'ns Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ...............................................................................25

*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
   508 U.S. 439 (1993)............................................................................................11

*Vavak v. Abbott Labs., Inc.*,
   2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) ............................................19

*Wenokur v. AXA Equitable Life Ins. Co.*,
   2017 WL 4357916 (D. Ariz. Oct. 2, 2017).............................................................12

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ..............................................................................23

*Wood v. Gateway, Inc.*,
   2003 WL 23109832 (N.D. Tex. Dec. 12, 2003) .....................................................21

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)................................................................................................................13

**Statutes**

15 U.S.C. § 2310(d)(1) .........................................................................................................19

Tex. Bus. & Com. Code § 2.607(c)(1)........................................................................................21

Plaintiff Dante Gordon brought nationwide class and Texas subclass claims on behalf of all consumers who purchased SIG Sauer's model P320 pistols, alleging that the pistols are defectively designed because they "*can* inadvertently discharge a round of ammunition if dropped on the ground (a 'drop fire')." Compl. ¶ 1 (Doc. # 34) (emphasis added). Gordon asserts multiple fraud- and warranty-based claims despite (1) failing to plead that his pistol has manifested the alleged defect, and (2) admitting that SIG Sauer is fixing the alleged drop-fire defect through a free Voluntary Upgrade Program that has been available to him, as well as all other P320 owners, since August 2017 and continues to be available today.

After SIG Sauer moved to dismiss Gordon's initial Complaint, and after the Court directed Gordon to address Article III standing, Doc. # 31, Gordon amended his Complaint. But Gordon's First Amended Complaint fails to remedy the fundamental and fatal failures and deficiencies underlying his claims. The Court should dismiss Gordon's claims for multiple reasons:

1.  Gordon lacks standing to assert individual claims because he has not been injured. Gordon's pistol has not manifested the alleged defect and a "fix" is available to him. He also lacks standing to represent consumers in the 49 states where he does not reside (all states excluding Texas). All of Gordon's claims should be dismissed for these reasons.

2.  The Court should dismiss the claims of all absent class members whose claims have no connection to Texas (found in the "nationwide" claims brought in Counts I-VI), because the Court lacks personal jurisdiction.

3.  The Fifth Circuit routinely holds that nationwide breach of warranty, unjust enrichment, and fraud claims are inappropriate for class treatment, and Gordon's nationwide class definition should accordingly be stricken.

4.  Gordon's Magnuson-Moss Warranty Act, express-warranty, and implied-warranty claims (Counts I, II, and III) fail because the Voluntary Upgrade provides the product Gordon claims he bargain for, and he failed to give SIG Sauer appropriate pre-suit notice.

5.  Gordon's unjust enrichment and fraudulent concealment claims (Counts IV and V) should be dismissed because they are not recognized claims under Texas law.

1

6.     Gordon's fraudulent concealment, fraud, and DTPA claims (Counts V, VI, and VII) fail because he alleges no facts showing SIG Sauer had a duty to disclose or that SIG Sauer knew of the alleged defect before Gordon purchased his pistol.

7.     Gordon's DTPTA claim (Count VII) fails because Gordon has alleged no statement by SIG Sauer that could have been the "producing cause" of his alleged injury.

## BACKGROUND

Gordon lives in Texas. Compl. ¶ 8. In September 2014, Gordon purchased a P320 from AGR Outdoors in Cypress, Texas. *Id*. Gordon alleges that SIG Sauer's model P320 pistol was defectively designed because it *might* inadvertently discharge a round of ammunition if dropped on the ground ("drop fire."). Compl. ¶ 1. Gordon speculates that SIG Sauer must have known of the defect through pre-manufacture testing. *Id*. ¶¶ 4; 105. Gordon more specifically alleges that, in April 2016, more than a year and a half *after* he purchased his P320, the U.S. Army notified SIG Sauer of the potential drop fire defect and that SIG Sauer "promptly" implemented a fix for the military version of the P320. *Id.* ¶ 3. Gordon further alleges that SIG Sauer addressed the issue in the civilian pistol population in August 2017, after which point it started manufacturing the P320 with a lighter trigger and modified sear. *Id.* ¶¶ 3, 24. At the same time, Gordon claims, SIG Sauer announced a Voluntary Upgrade Program through which it would make the same safety modifications to civilian pistols returned to it—modifications that Gordon calls "the drop fire fix." *Id.* ¶¶ 24, 36-40.

SIG Sauer reported that the upgrade was happening because, even though the "P320 meets and exceeds all US safety standards," SIG Sauer had "confirmed that usually after multiple drops, at certain angles and conditions, a potential discharge of the firearm may result when dropped." *Id.* ¶¶ 48-49. SIG Sauer further represented that the Voluntary Upgrade addressed "overall safety including drop performance." *Id.* ¶ 37. The Voluntary Upgrade is provided at no charge to customers. *See* https://www.sigsauer.com/support/p320-voluntary-upgrade/us-consumer-p320-

voluntary-upgrade-program/ (visited June 25, 2019). The upgrade has been available since August 2017 to all P320 owners, including Gordon, and it continues to be available today. Gordon does not allege that his pistol has ever experienced a drop fire. *Id.* ¶ 8. Gordon also does not plead that he was precluded from participating in the Voluntary Upgrade Program and does not allege why, if in fact he is concerned about the drop safety of his P320, he elected not to participate in the Voluntary Upgrade Program. *Id*.

SIG Sauer also provides a "Limited Lifetime Warranty" for the P320 pistol. *See* Exhibit A. SIG Sauer warrants that its pistols are "manufactured free of defects in material, workmanship and mechanical function[,]" and includes a warranty lasting "for the lifetime of the original purchaser." The warranty promises to correct any "defect in the firearm for the original purchaser by repair, adjustment or replacement, at SIG SAUER's option," provided the firearm is returned. *Id*. Gordon does not allege that he returned his pistol to SIG Sauer—in fact, he removed all references to the Limited Warranty in his Amended Complaint.

Gordon generally claims he "relied on SIG's marketing statements about the safety of the [P320]," including "accompanying labels, disclosures, warranties, and marketing materials." *Id.* Gordon alleges that SIG Sauer "had a duty to disclose that the P320 suffered from a dangerous drop fire defect." *Id*. ¶ 41. Gordon also alleges that if SIG Sauer had disclosed it "Plaintiff and the Class" would not have purchased the SIG Sauer P320 pistol, would not have purchased the pistol "on the same terms," and/or would have paid less. *Id*. ¶ 67.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quotation omitted). Because Rule 9(b)'s heightened pleading standard applies to "all cases where the gravamen of the claim is fraud even though the theory supporting the claim

is not technically termed fraud," *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998), "courts have consistently applied Rule 9(b)'s heightened pleading standard to" DTPA claims, "regardless of the provision" invoked. *Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017). "As succinctly stated by the Fifth Circuit Court of Appeals, Rule 9(b) requires 'the who, what, when, where, and how' of the alleged fraud [or deceptive act] to be laid out" in the Complaint. *DiNoto v. USAA Cas. Ins. Co.*, 2014 WL 4923975, at *2 (S.D. Tex. Sept. 30, 2014) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997).

## ARGUMENT

## I. GORDON LACKS STANDING TO BRING INDIVIDUAL AND "NATIONWIDE" CLAIMS.

### A. Without a Manifest Defect, Gordon Suffered No Injury and Lacks Standing.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires a plaintiff to demonstrate: (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, that (3) is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Caselaw considers standing based on the type of claim alleged: (1) those rooted in contract law (where the plaintiff alleges she did not receive the benefit of her bargain), and (2) those rooted in products liability (where the plaintiff alleges that she was sold a defective product or was not warned of its dangers). Gordon takes what are, at base, products claims and asserts both contract-based claims in Counts I-IV (MMWA, breach of express warranty, breach of implied warranty, and unjust enrichment) and products-based claims in Counts V-VII (fraudulent concealment, fraud, and DTPA). Gordon lacks standing to assert any of those claims.

Contract-based standing was analyzed by the Fifth Circuit in *Coghlan v. Wellcraft Mar. Corp*., 240 F.3d 449 (5th Cir. 2001) and under Texas law in *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 848-50 (Tex. App. 2005). *Coghlan* involved plaintiffs who were promised an all-fiberglass boat but given a boat made of fiberglass and wood. *Id*. at 451. *Everett* involved plaintiffs who claimed that seat belt buckles in vehicles they purchased had a "*propensity* to partially latch and *potentially* provide insufficient restraint during a crash." 178 S.W.3d at 849 (emphasis added).

The *Coghlan* court found standing existed for plaintiffs' contract-based claims because the defect and the injury both manifested at the time of purchase. The defect—the boat's construction of both fiberglass and wood—was manifest at delivery. The purchasers also were injured at the time of purchase, because the boat they received was not the one they contracted for. Plaintiffs therefore did not receive the benefit of their bargain, 240 F.3d 455 n.4, and had standing to bring contract-based claims.

In *Everett*, by contrast, there was neither a defect nor an injury at the time of purchase or thereafter. Plaintiffs in *Everett* received the benefit of their bargain—functioning seat belt buckles and, in fact, used them for 10 years without incident. Plaintiffs did not allege that their seat belt buckles malfunctioned, only that there was the potential for the buckle to malfunction in the future. Without an allegation that either the defect had "manifested during the product's normal use or such malfunction must be inevitable," the purchasers received the benefit of their bargain and had no standing to bring a contract-based claim. 178 S.W.3d at 855. Multiple similar decisions are in accord. *See, e.g., Rivera v. Wyeth*, 283 F.3d 315, 320 (5th Cir. 2002) (finding unharmed plaintiffs lacked standing to bring warranty claims alleging the drug they took was defective because "the drug was not defective as to them"); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009) (citing Fifth Circuit law, concluding case was "similar to other no-injury cases, in that the O'Neil's have

attempted to refashion what is at its core a no-injury product liability suit into a suit based in contract.").

This case is analogous to *Everett*. Gordon does not allege either that the defect manifested in his pistol or that such manifestation is inevitable. In fact, he references only four alleged incidents in which the product allegedly malfunctioned—precluding any allegation of "inevitability." Compl. ¶¶ 27-31. Gordon argues only that a malfunction could occur in the future—as in *Everett*. Compl. ¶ 1. Because Gordon received a functioning pistol that has not manifested any defect, he received the benefit of his bargain. Under the reasoning of *Everett* and *Coghlan*, Gordon has suffered no injury and lacks standing to bring any of the contract-based claims found in Claims I-IV.

For Gordon's product-based claims, the Fifth Circuit's decision in *Coghlan* is controlling. The court distinguished the facts of the contract-based claims in *Coghlan*—where the defect and injury were manifest at purchase—with the facts in a "typical no-injury" products liability suit:

> The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss.

240 F.3d 455 n.4. The Fifth Circuit noted that "the no-injury approach to product litigation has been rejected in several recent decisions." *Id.* (citing *Briehl v. Gen. Motors. Corp.*, 172 F.2d 623 (8th Cir. 1999)). Likewise, in *Everett*, the court recognized that "the unmanifested product defect [plaintiffs] have pleaded is not redressable via a fraud claim," *id.* at 857 n.11, and that "[a]t some point, potential loss-of-benefit-of-the-bargain injuries … from a defect that has not manifested simply become too remote in time to constitute an 'injury' for statutory standing under the DTPA." *Id.* at 858.

The same conclusion is warranted here for Gordon's product-based claims. Gordon has not experienced a malfunction of the alleged defect and so has not suffered any out-of-pocket loss, as recognized by the Fifth Circuit in *Coghlan*. Nor can Gordon claim that he has suffered injury— under any theory—because he stopped using his pistol for fear it will malfunction in the future. Compl. ¶ 8. Gordon has two remedies available to him: repair or replacement under the Limited Lifetime Warranty or repair under the Voluntary Upgrade. Gordon cannot avoid these remedies (which he does not allege to be inadequate) to bolster his claim of injury; rather, the existence of the remedies further confirms that Gordon has no justiciable injury. *See, e.g., Hadley v. Chrysler Group LLC*, 2014 WL 988962, at \*5-7 (E.D. Mich. Mar. 13, 2014) (dismissing contract-based claims for mootness and lack of standing where the recall would cure the alleged vehicle defect at no cost to plaintiff).[1]

Because Gordon has not alleged that his pistol manifested the alleged defect as required under Fifth Circuit and Texas precedent, he has necessarily failed to plead: (1) an injury in fact, (2) fairly traceable to the conduct of SIG Sauer, that (3) could be redressed by a favorable judicial decision. *See Lujan*, 504 U.S. at 560; *Spokeo*, 136 S. Ct. at 1547. Gordon lacks standing to bring either contract- or products-based claims because he has suffered no injury.

---

[1] Further, SIG Sauer's limited warranty for the P320 pistol expressly precludes loss of use (or consequential) damages. The warranty promises to correct any "defect in the firearm for the original purchaser by repair, adjustment or replacement, at SIG SAUER's option," and "in no event shall SIG Sauer be liable for any incidental or consequential damages arising from or in connection with this limited warranty." Texas courts have held that lost use damages are consequential in nature, *see, e.g. Powell Elec. Sys., Inc. v. Hewlett Packard Co*., 356 S.W.3d 113, 121 (Tex. App. 2011), and have held warranties of this nature enforceable. *See, e.g., Henderson v. Ford Motor Co*., 547 S.W.2d 663, 669 (Tex. App. 1977) (explaining that warranty satisfied its purpose where a "limited warranty to repair defects within the limitation prescribed without expense to the purchaser was given in lieu of any implied warranty of merchantability or fitness").

### B. Gordon Lacks Standing to Bring "Nationwide" Claims On Behalf of Putative Class Members Based on Other States' Laws.

Even if the Court concludes Gordon has standing to assert individual claims, Gordon only has standing to bring claims under Texas law. Gordon lacks standing to assert any of the nationwide claims found in Counts I-VI, and those claims should be dismissed.

In a class action, the named plaintiffs must allege and prove that they personally have standing with respect to each claim being made, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *In re Ditropan XL Antitrust Litig*., 529 F.Supp.2d 1098, 1107 (N.D. Cal. 2007) (collecting cases). It necessarily follows, and courts have repeatedly held, that where a representative plaintiff is lacking for a particular state, **all claims based on that state's laws are subject to dismissal because no named plaintiff has standing to assert them**. *See, e.g., Insulate SB, Inc. v. Advanced Finishing Sys., Inc.,* 2014 WL 943224 (D. Minn. Mar. 11, 2014) (finding that plaintiff lacked standing to assert violations of antitrust and consumer protection claims on behalf of other states laws because it had not suffered injury in other states); *see also Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *9-10 (C.D. Cal. Jan. 30, 2017) (finding "the majority of courts to consider this question" have so held); *Corcoran v. CVS Health Corp*., 169 F.Supp.3d 970, 990 (N.D. Cal 2016) (same; finding that courts "routinely" dismiss such claims). Here, representative plaintiffs are lacking for any of the 49 states whose laws are at issue in Counts I-VI, excluding Texas, so these claims must be dismissed.[2]

---

[2] Many courts have reached the same result by applying a choice-of-law analysis at the pleading stage. *See, e.g., Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *4, 10, 13 (C.D. Cal. June 24, 2016) (granting motion to dismiss consumer-fraud and unjust enrichment claims due to choice-of-law problems).

## II. SIG SAUER IS NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS FOR CLASS MEMBERS' CLAIMS WITH NO CONNECTION TO TEXAS

For the Court to exercise personal jurisdiction over SIG Sauer, Gordon must establish either general or specific jurisdiction. *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780-81 (2017) ("*BMS*"). Gordon cannot prove either, and accordingly, all of his "nationwide" claims (Counts I–VI) should be dismissed. *Luv N'care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (plaintiff bears the burden of proof when a defendant challenges personal jurisdiction).

### A. SIG Sauer is Not Subject to General Jurisdiction in Texas.

SIG Sauer is a Delaware corporation, with its principal place of business in New Hampshire, Compl. ¶ 9, and therefore, Gordon would need to establish general jurisdiction by proving that SIG Sauer's contacts with Texas are sufficient to render it "at home" here. *Goodyear Dunlop Tires Operations, S.A. V. Brown*, 564 U.S. 915, 928 (2011). Gordon cannot do so. The attached declaration of SIG Sauer's Executive Vice President & Chief Legal Officer, Steven Shawver, demonstrates that SIG Sauer does not have contacts with Texas sufficient to subject it to general jurisdiction here. SIG Sauer:

- Did not design, create a marketing strategy for, or manufacture the P320 in Texas;
- Does not maintain any office in Texas;
- Does not employ any personnel in Texas;
- Does not own any real property in Texas; and
- Does not maintain any bank or other financial accounts in Texas.[3]

Because general jurisdiction does not exist, Plaintiff must prove specific jurisdiction.

---

[3] *See* Declaration of Steven Shawver, attached hereto as Exhibit E, at ¶¶ 5-6. In evaluating a defendant's motion to dismiss on personal jurisdiction grounds, the Court may consider affidavits from a defendant setting forth facts that demonstrate a lack of contacts with the state. *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000).

**B.    SIG Sauer is Not Subject to Specific Jurisdiction in Texas for Class Members' Claims with No Connection to Texas.**

Specific jurisdiction requires an evaluation of the relationship between the defendant, the forum, and the dispute. *BMS*, 137 S. Ct. at 1780. Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* Specific jurisdiction is determined plaintiff-by-plaintiff, *id.* at 1781, and claim-by-claim, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

The Supreme Court outlined the contours of specific jurisdiction in *BMS*, a mass action brought in California court and involving hundreds of named plaintiffs—86 of whom were California residents whose claims arose in California and 592 of whom were not California residents whose claims arose in other states. *Id.* at 1778. The lower court found personal jurisdiction existed in California court with respect to the claims of the 592 non-resident plaintiffs, but the Supreme Court reversed. *Id.* at 1778, 1784. The Supreme Court affirmed that *each plaintiff* must prove that personal jurisdiction exists over the defendant with respect to his or her specific claims. *Id.* at 1781. The Supreme Court held that the 592 plaintiffs whose claims had no connection to the forum state could not achieve personal jurisdiction by joining their claims to the 86 plaintiffs whose claims arose in California, even though the claims of all the plaintiffs were "similar." *Id*. The "mere fact that *other* plaintiffs were [harmed in] California—and allegedly suffered the same injury as non-residents—does not allow the state to assert specific jurisdiction over the non-residents' claims." *Id.* The Supreme Court held that the defendant's Fourteenth Amendment due process rights would be violated through an exercise of personal jurisdiction over defendant with respect to claims that arose outside of the forum. *Id*.

The lone dissenting justice in *BMS* noted the decision did not resolve related questions arising in the class action context. *Id.* at 1789 n. 4 (Sotomayor, J., dissenting). This is accurate

because *BMS* was not a class action and, given Article III's case-or-controversy requirement, the Supreme Court could not decide a question not before it. *See, e.g.*, *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993). However, that is not an invitation to ignore the *ratio decidendi* of the case. *See Harkless v. Sweeny Indep. Sch. Dist.*, 427 F.2d 319, 321 (5th Cir. 1970) ("Ordinarily, under our system of law, a decision of a higher court is binding as a precedent to the extent of the ratio decidendi of the case."). Nonetheless, some courts have decided that *BMS's* failure to address class actions directly means that courts presiding over class actions can disregard the decision.[4]

The better-reasoned opinions focus on the nature of personal jurisdiction—its source and purpose—and give due weight to the rationale of *BMS*, recognizing that Rule 23 (a procedural device) cannot create jurisdiction where it would otherwise not exist. "The constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). This Court should align itself with those courts holding "that the Due Process Clause of the Fourteenth Amendment precludes the exercise of personal jurisdiction over a defendant in a putative class action where nonresident, absent members seek to aggregate their claims with an in-forum resident, even though the defendant allegedly injured the nonresidents outside of the forum." *Mussat v. IQVIA Inc.*, 2018 WL 5311903, at *3 (N.D. Ill. Oct. 26, 2018).[5]

---

[4]   *See, e.g.*, *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C.); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 5971622, at *12-16 (E.D. La. Nov. 30, 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *3-5 (N.D. Cal. Sept. 22, 2017).

[5]   *See, e.g.*, *Practice Mgmtt Support Servs., Inc., v. Cirque du Soleil, Inc.*, 301 F.Supp.3d 840, 846 (N.D. Ill. 2018) (finding *BMS* prevented the court "from exercising personal jurisdiction over non-

### 1.    Settled Principles Control the Personal Jurisdiction Analysis.

The *basic* requirement for specific personal jurisdiction is that the dispute be tied to the forum. *BMS*, 137 S. Ct. at 1780.  And the existence of plaintiffs *with forum-linked disputes* does not allow similarly situated plaintiffs *without forum-linked disputes* to bootstrap personal jurisdiction. *See id.* at 1781. These "settled principles regarding specific jurisdiction control this case." *See id.* Here, just as in *BMS*, there is no connection between the non-Texas absent class members and SIG Sauer's activities in Texas. Gordon's Complaint does not allege that any of these non-Texas class members purchased or received his/her P320 pistols in Texas; nor does it allege that any non-Texas class member sustained any injury or damages in Texas. Accordingly, this Court lacks specific jurisdiction over claims brought by non-Texas class members.

Any contrary approach would blur the distinctions between specific and general jurisdiction in class actions. Under Gordon's theory, a single plaintiff's claim originating in a given forum would mean all claimants with similar claims (who could not otherwise sue there) could sue in the forum simply by invoking Rule 23. This exposure to nationwide litigation in a state where a defendant might have very limited contacts eviscerates the due process clause's role in providing "a degree of predictability to the legal system that allows potential defendants to structure their

---

Illinois-resident class members"); *Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at \*11 (N.D. Ill. May 16, 2018) (dismissing the claims out out-of-state class members: "The Court therefore concludes that [*BMS*] extends to class actions, and that [the named plaintiff] is therefore foreclosed from representing either a nationwide and multistate class comprising non-Illinois residents in this suit."); *McDonnell v. Nature's Way Prods.*, LLC, 2017 WL 4864910, at \*4 (N.D. Ill. Oct. 26, 2017) (applying *BMS* to class action out claims and declining to exercise specific jurisdiction over non-resident class members); *Wenokur v. AXA Equitable Life Ins. Co*., 2017 WL 4357916, at \*4, n.4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class.").

primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### 2. The Rules Enabling Act Precludes a Jurisdiction-Expanding Interpretation of Rule 23.

"Rule 23's [class action] requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that the [federal court] rules of procedure 'shall not abridge, enlarge, or modify any substantive right." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997). The jurisdictional analysis revolves around the *defendant's* contacts with the forum state. An unnamed class member whose claim could otherwise not be adjudicated in the forum state—because that claim does not relate to defendant's contact with the forum—cannot adjudicate her claim in the forum by hiding behind a named class representative whose claim arose there. *See Mussat*, 2018 WL 5311903, at *5. To hold otherwise would allow Rule 23 to create jurisdiction where it does not otherwise exist, in violation of the Rules Enabling Act, *see id.* at *6, and would encourage rampant forum-shopping.

### 3. Proffered Justifications for Deviating From the Standard Personal Jurisdiction Analysis Are Improper.

The real question is not whether *BMS* applies to class actions—that case was decided based on "settled principles" of personal jurisdiction after all. 137 S. Ct. at 1781. The real question is whether *settled principles of personal jurisdiction* applies to class actions. The burden of persuasion should be on plaintiff to show that "the essential foundation of in personam jurisdiction"—*i.e.*, the "'relationship among the defendant, the forum, and the litigation'"—is *inessential* in nationwide class actions. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The problems with this position are best revealed by cases that have accepted it. Instead of focusing on the nature and purpose of personal jurisdiction, these courts "focu[s] their analysis on

the material distinctions between a class action and a mass tort action," *see Molock*, 297 F. Supp. 3d at 126, and they start from the anomalous premise that personal jurisdiction over a given plaintiff's claims depends not on case-linked forum contacts but instead on whether the plaintiff is named or unnamed. *See id* at 124. That is not consistent with settled personal jurisdiction law.

Also problematic, some courts conclude Rule 23's prerequisites for certification provide "additional due process" and abrogate ordinary personal jurisdiction requirements. *In re Chinese–Manufactured Drywall*, 2017 WL 5971622, at *14. But the fact that class action defendants are afforded certain protections in class actions does not mean that class actions defendants are stripped of other, basic constitutional protections shared by all defendants. Rule 23's prerequisites do not, *and cannot*, displace Fourteenth Amendment and Fifth Amendment due process protections. The arguments against application of *BMS* in the nationwide class action context are unavailing and contrary to settled constitutional law. For these reasons, the claims of all non-Texas class members (even though absent) should be dismissed.

## III. THE COURT SHOULD STRIKE OR DISMISS GORDON'S PROPOSED CLASS DEFINITIONS

Courts in the Fifth Circuit need not wait until class certification to dismiss class allegations that, from the face of the complaint, are improper for class treatment. *See, e.g., John v. Nat'l Sec. Fire & Cas. Co*., 501 F.3d 443, 445, 445 n.4 (5th Cir. 2007)*.* Instead, courts often dismiss such claims at the Rule 12 stage to avoid letting protracted discovery proceed on an improper class-wide basis. Such narrowing is appropriate in this case.

### A. Gordon's Proposed Class Definitions Are Overbroad.

Gordon's two proposed class definitions (one nationwide and one Texas specific) are improperly overbroad and therefore unascertainable. "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly

ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). There may be "potential unfairness to the class members bound by the judgment if the framing of the class is overbroad." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "[C]ourts may find a class definition overly broad where the putative class contains members lacking Article III standing or where the class encompasses persons who have not suffered any injury." *M.D. v. Perry*, 2011 WL 2173673, at *4 (S.D. Tex. June 2, 2011) (internal quotation marks and alterations omitted), *rev'd and vac'd on other grounds*, 675 F.3d 832 (5th Cir. 2012).

Gordon's purported class definitions for the nationwide class and Texas subclass are improperly overbroad because both include *all* purchasers, irrelevant of other factors such as the date purchased, subsequent sale, whether the defect manifested, or whether the purchaser participated in the Voluntary Upgrade. This is overly broad because, for example, (1) purchasers who sold or relinquished their P320 and did not experience a "drop fire" suffered no injury, *see Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 317 (5th Cir. 2002)), (2) SIG Sauer's limited warranty only covers original purchasers, and (3) purchasers after the Voluntary Upgrade in August 2107 (or who purchased earlier but participated in the Voluntary Upgrade) received a pistol with a lighter trigger designed to enhance drop-fire safety. Compl. ¶ 40. Gordon's class definitions contain proposed members who lack Article III standing because they suffered no injury and have no claims. Both class definitions—for all pleaded claims—should be stricken.

## B.   Gordon's Proposed Nationwide Classes Cannot Meet the Commonality or the Predominance Requirements Under Rule 23.

Additionally, the Court should strike Gordon's nationwide class allegations for all claims because, as pleaded, Gordon cannot satisfy Rule 23(a)'s commonality requirement or Rule 23(b)(3)'s requirement that common issues of law and fact predominate over questions affecting individual members. *See Cole v. Gen. Motors Corp*., 484 F.3d 717, 724 (5th Cir. 2007); *Rosa v.*

*Am. Water Heater Co*., 177 F. Supp. 3d 1025, 1042-43 (S.D. Tex. 2016); *Dvorin v. Chesapeake Explor., LLC,* 2013 WL 6003433, at \*3-6 (N.D. Tex. Nov. 13, 2013).

Gordon's warranty allegations on behalf of the nationwide class (found in Counts I-III) should be dismissed because the Court will have to apply 50 different states' warranty laws. *Cole*, 484 F.3d at 724. In *Rosa*, the Southern District of Texas struck a plaintiff's nationwide class allegations under *Cole*, reasoning that the variations of state warranty law made the claim inappropriate for class treatment. *Rosa*, 177 F.Supp.3d at 1046 n.63 (striking MMWA and warranty claims at motion-to-dismiss stage).[6] *Rosa* recognized that Texas courts have found states' breach of warranty laws "vary with regards to (1) whether plaintiffs must demonstrate reliance, (2) whether plaintiffs must provide notice of breach, (3) whether there must be privity of contract, (4) whether plaintiffs may recover for unmanifested [] defects, (5) whether merchantability may be presumed and (6) whether warranty protections extend to [purchasers of used goods]." *Rosa*, 177 F. Supp. 3d at 1046 n.63 (citing *Cole*, 484 F.3d at 726). "[I]n the Fifth Circuit, the burden of applying the warranty law of each jurisdiction defeats predominance and, thus, national class certification." *Id*. at 1045-50; *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1995).[7] Given these significant variations, Gordon's nationwide class allegations for breach of warranty (Count I-III) should be dismissed or stricken.

Nor can Gordon show that common issues predominate for any purported nationwide unjust-enrichment claim (Count IV). Nationwide unjust enrichment claims are improper for class treatment because state laws regarding unjust enrichment significantly differ in terms of (1)

---

[6] Gordon's Magnuson-Moss Act claim is derivative of his breach of express- and implied-warranty claims under state law. *See In re OnStar Contract Litig.*, 2010 WL 3516691, at \*3 (E.D. Mich. Aug. 25, 2010).

[7] *See* Exhibit B (differences in state warranty laws).

whether the claim exists as an independent cause of action, (2) whether an inadequate remedy at law must be shown, (3) whether the benefit obtained must have been done so at the direct expense of the plaintiff, (4) the level of misconduct that must be proven, (5) the scope of the statute of limitations, (6) the accrual of the statute of limitations, and (7) availability of defenses such as laches and unclean hands. *Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849, at \*4 (N.D. Ohio Mar. 25, 2010) (granting motion to strike class allegations, explaining that "the law on unjust enrichment var[ies] significantly from state to state"); *In re Actiq Sales & Mktg. Prac. Litig.*, 307 F.R.D. 150, 164-166 & nn. 23-27 (E.D. Pa. 2015) (collecting cases); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) ("elements necessary to establish a claim for unjust enrichment also vary materially from state to state").[8] Given these significant variations, Gordon's nationwide class allegations for unjust-enrichment (Count IV) should be dismissed or stricken.

Finally, Gordon's nationwide fraud-based claims (Counts V and VI) are improper for class treatment because the Fifth Circuit has made clear that "[c]laims for money damages in which individual reliance is an element are poor candidates for class treatment, at best. We have made that plain." *McManus v. Fleetwood Enterp, Inc.*, 320 F.3d 545, 549-50 (5th Cir. 2003) (citing *Patterson v. Mobil Oil Corp*., 241 F.3d 417, 419 (5th Cir. 2001) and *Castano*, 84 F.3d at 745 ("[A] fraud class action cannot be certified when individual reliance will be an issue."). Reliance is typically an element of both fraud and fraudulent concealment claims around the country. *See* Exhibit D (differences under state fraudulent concealment laws). Courts routinely reject fraud claims under Rule 23(b)(3), finding that state laws contain "materially different standards of claim accrual, statutes of limitations, tolling, economic loss requirements, burdens of proof, scienter and reliance." *Agostino v. Quest Diagnostics Inc*., 256 F.R.D. 437, 464 (D.N.J. 2009); *see also* Exhibit

---

[8] *See* Exhibit C (differences in state unjust enrichment laws).

D. Gordon's nationwide class allegations for fraud and fraudulent concealment (Counts V and VI) should be dismissed or stricken.

## IV. GORDON'S WARRANTY-BASED CLAIMS FAIL FOR MULTIPLE REASONS

### A. Gordon's Warranty Claims Fail Because There Is No Breach.

Gordon's three warranty-based claims (Counts I-III) are all contract-based claims. To recover, Gordon must prove a breach of contract or warranty, but Plaintiff cannot do so. Plaintiff tries hard to ignore SIG Sauer's Lifetime Limited Warranty (referenced specifically in his original Complaint) because it is fatal to his claims. The warranty promises to correct any "defect in the firearm for the original purchaser by repair, adjustment or replacement, at SIG SAUER's option," provided the firearm is returned. Ex. A. Gordon does not allege that he returned his pistol to SIG Sauer for "repair, adjustment or replace[ment]," and there accordingly can be no breach of warranty. *See Taliaferro v. Samsung Telecomm. Am., LLC,* 2012 WL 169704, at *12 (N.D. Tex. Jan. 19, 2012) (dismissal of express-warranty claim where consumer refused to return the product and noting that noncompliance deprived warrantor of its contractual right to cure.).

Each of Gordon's warranty-based claims also fails because, as Gordon has pleaded, SIG Sauer is providing all P320 owners a "drop fire fix" through the Voluntary Upgrade. Compl. ¶ 24. SIG Sauer offered the upgrade because, even though the "P320 meets and exceeds all US safety standards," SIG Sauer had "confirmed that usually after multiple drops, at certain angles and conditions, a potential discharge of the firearm may result when dropped." Compl. ¶¶ 48-49. Through the upgrade, SIG Sauer is making pistol modifications designed to address "overall safety including drop performance." Compl. ¶ 37. The Voluntary Upgrade is provided completely free of charge. *See* https://www.sigsauer.com/support/p320-voluntary-upgrade/us-consumer-p320-voluntary-upgrade-program/ (visited June 25, 2019).

Gordon does not allege he returned his pistol to SIG Sauer to receive the benefits of the Voluntary Upgrade. Nor does Gordon allege that the Voluntary Upgrade is in any way inadequate to address the defects alleged in his First Amended Complaint—to the contrary, Gordon labels those free pistol modifications a "drop fire fix." Compl. ¶ 24. Gordon cannot assert any contract-based claim when the product Gordon claims he bargained for—a P320 without an alleged drop-fire defect—is being provided by SIG Sauer to all customers free of charge. *See Hadley v. Chrysler Group LLC*, 2014 WL 988962, at \*5-7 (E.D. Mich. Mar. 13, 2014) (dismissing plaintiff's contract-based claims for mootness and lack of standing where the pre-litigation recall would cure the alleged vehicle defect at no cost to plaintiff); *Vavak v. Abbott Labs.*, Inc., 2011 WL 10550065, at \*3 (C.D. Cal. June 17, 2011) (dismissing multiple claims—including breach of express and implied warranties—by plaintiffs seeking restitution where the pre-litigation recall offered a full refund to purchasers).

### B. Gordon's MMWA Claims Based on Advertising and Marketing Fail.

The MMWA allows a consumer to bring an individual action if the consumer is damaged by failure to comply with a written warranty. 15 U.S.C. § 2310(d)(1). It does not create substantive rights but rather provides a federal cause of action to enforce warranty rights created by state law. If a claim would fail under the relevant state law, it also fails under the MMWA. *See, e.g. Taliaferro,* 2012 WL 169704, at \*10.

Gordon's MMWA claim based on alleged marketing representations should be dismissed. Brochures and consumer advertising cannot create a warranty enforceable under the MMWA. *See Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 322 (7th Cir. 1981). In *Skelton*, the Seventh Circuit affirmed the district court's finding that an advertisement claiming certain General Motors cars contained "THM transmissions" or "transmissions of similar quality and performance" was not a written warranty under the MMWA because the advertisement did not "affirm that the

transmission would meet a specified level of performance over a specified period of time." 660 F.2d at 316 n. 7. "Following *Skelton*, courts have found promises are written warranties under the MMWA only if the promise clearly states the specific time period over which the promised performance is to occur." *In re Scotts EZ Seed Litig*, 2013 WL 2303727, at *4 (S.D.N.Y. May 22, 2013) (collecting cases). At best, Gordon alleges that SIG Sauer "repeatedly represented" that the P320 is "drop safe" and "won't fire unless you want it to." Compl. p. 5. But Gordon does not point to any advertising, marketing, labeling, or disclosures that constitute a written warranty under the MMWA because none of the allegations promise a specific period of time the promised performance would occur. And, regardless, Gordon received the benefit of his bargain—a pistol that has not fired when dropped. *See Rivera*, 283 F.3d at 320. Gordon has no MMWA claim.

### C.    All of Gordon's Warranty Claims Fail for Lack of Notice.

Gordon's MMWA claim also should be dismissed because he failed to provide SIG Sauer a reasonable opportunity to cure. A plaintiff cannot maintain a class action under the MMWA unless "the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure[,]" and the plaintiff notifies "the defendant that they are acting on behalf of the class." *Taliferro*, 2012 WL 169704, at *10 (quoting 15 U.S.C. § 2310(e)). Here, Plaintiff's counsel sent a Notice and Demand Letter to Sig Sauer *one day* before filing his nationwide class action Complaint, "advising [SIG Sauer] that they breached an express warranty and demand[ing] that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom." *See* Compl. ¶ 75; *see also* Doc. # 1-1. Sending notice to SIG Sauer one day before filing suit did not provide SIG Sauer with an opportunity to address the issue properly before Gordon filed suit. *Stearns v. Select Comfort Retail Corp.*, 2009 WL 16535931, at *4 (N.D. Cal. June 5, 2009) ("[e]ven if Stearns had provided notice during that seventy-two hour window

[before filing her suit], there would have been no opportunity for Defendants to address the issue properly before Stearns filed suit.").

For the same reasons, Gordon's express and implied-warranty claims under Texas law fail. Texas law requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach," and if he fails to do so, "be barred from any remedy." Tex. Bus. & Com. Code § 2.607(c)(1); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig*., 2010 WL 2813788, at \*53 (D.N.J. July 9, 2010) (applying Texas law); *Loch-invar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App.—Dallas 1996, no writ) (implied-warranty). For this reason alone, all of Gordon's warranty claims should be dismissed.

## V.     GORDON'S UNJUST-ENRICHMENT CLAIMS FAIL

In addition to his "nationwide" unjust enrichment claim, Gordon brings a Texas unjust enrichment claim on behalf of the Texas subclass. But unjust enrichment is not a recognized cause of action under Texas law. *Clapper v. Am. Realty Investors, Inc*., 2018 WL 3868703 (N.D. Texas Aug, 14, 2018); *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560-61 (N.D. Tex. 2009); *see also Wood v. Gateway, Inc*., 2003 WL 23109832, at \*12 (N.D. Tex. Dec. 12, 2003) (same). And even if the Court found such an independent claim existed under Texas law, where an express contract such as a warranty exists, like here, unjust enrichment does not apply and such claims are barred. *Fortune Prod. Co. v. Conoco, Inc*., 52 S.W.3d 671, 684-685 (Tex. 2000); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997).

Even if the Court recognized an independent claim for unjust enrichment, Gordon's unjust enrichment claim fails because he has an adequate remedy at law.  *See, e.g., In re Clorox Consumer Litig*., No. 12-CV-280, 2013 WL 3967334, at \*12 (N.D. Cal. July 31, 2013) (applying Texas law; dismissing unjust enrichment claims because, even if Texas recognized independent cause of

action for unjust enrichment, it was duplicative of other claims). Gordon's unjust enrichment claim should be dismissed.

## VI.     GORDON'S FRAUD AND DTPA CLAIMS FAIL FOR MULTIPLE REASONS

### A.     Fraudulent Concealment Is Not An Independent Cause of Action.

There is no independent claim under Texas law for "fraudulent concealment." *See Nelson v. Regions Mortg. Inc.*, 170 S.W. 3d 858, 862 (Tex. App. Dallas 2005, no pet.). "Concealment by silence, or fraudulent concealment, is a type of misrepresentation." *Id.* (citation omitted). Gordon's claim for fraudulent concealment (Count VI) as a separate claim under Texas law should be dismissed.

### B.     Gordon Alleges No Facts Showing SIG Sauer Had A Duty To Disclose Or that SIG Sauer Knew of the Alleged Defect Before Gordon Purchased His P320.

Gordon's claims based on omission and concealment (found in Counts V-VII) should be dismissed because (1) he does not allege a special or fiduciary relationship, and (2) Gordon has failed to allege that SIG Sauer knew the concealed fact(s) at the time Gordon bought his P320 pistol.

Fraudulent concealment or omission requires a duty to disclose the allegedly concealed information. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Under Texas law, "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Coburn Sup. Co., Inc. v. Kohler Co*., 342 F.3d 372 (5th Cir. 2003) (applying Texas law); *Bradford v. Vento*, 48 S.W.3d 749, 755-56 (Tex. 2001). Here, Gordon does not allege he and SIG Sauer are in a fiduciary or confidential relationship, nor could he. Such a relationship requires that "the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Ins*, 981 S.W.2d at 674.

Further, it is common sense that a defendant cannot have concealed a material fact unless it knew that fact at the time of the transaction. *See, e.g., Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd*., 896 S.W.2d 156, 162 (Tex. 1995) ("A seller has no duty to disclose facts he does not know."); *Sheehan v. Adams*, 320 S.W.3d 890, 897 (Tex. Ct. App. 2010) (no liability "under the DTPA for 'failing to disclose information [defendants] did not actually know.' ... Proof that the [defendants] should have known the information is not enough.") (internal citations omitted). The defendant also must know that any alleged misrepresentation was false at the time it was made. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011).

Gordon's original complaint lacked any allegation that SIG Sauer knew at the time Gordon purchased his pistol (in September 2014) that the P320 was defective. In fact, Gordon specifically pleaded that SIG Sauer was made aware of the alleged defect only *after* Gordon purchased his P320, in 2016 when allegedly informed about it by the military. Doc. # 1 ¶ 3. In his First Amended Complaint, Gordon now includes a single conclusory assertion that "SIG Sauer has known about the drop fire design defect since at least 2014 when it started manufacturing the SIG P320 and conducting its own internal testing." Compl. ¶ 4. But Gordon does not describe what tests were conducted, the results of the testing, or what those tests allegedly showed—rendering his allegation inherently speculative. The inference Gordon seeks cannot plausibly be drawn from the mere fact that testing occurred—indeed, Gordon does not allege that the pre-upgrade P320 did not meet all existing U.S. standards for drop safety. And it is equally likely from the facts alleged that pre-release testing of the original design of the P320 was conducted in accordance with existing U.S. standards and showed full compliance with those standards.

Courts routinely hold allegations like Gordon's do not adequately plead knowledge. *See, e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (allegation that HP "had

'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect'"); *Mandani v. Volkswagen Grp. of Am.*, 2019 WL 652867, at \*8 (N.D. Cal. Feb. 15, 2019) ("conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient"); *Blissard v. FCA US LLC*, 2018 WL 6177295, at \*13 (C.D. Cal. Nov. 9, 2018) ("pre-sale testing" and the defendant's "own records" do not sufficiently plead knowledge); *Beck v. FCA US LLC*, 273 F.Supp.3d 735, 753 (E.D. Mich. 2017) (references to "testing" and "analysis" do not sufficiently plead knowledge).

Gordon's remaining "knowledge" allegations fare no better because they all occurred *after* Gordon purchased his pistol in September 2014. Compl. ¶¶ 4, 94 (alleging the U.S. Army "discovered" the defect during its field testing in April 2016, but SIG Sauer continued to manufacture and sell defective pistols in the civilian market). And the purported replications and personal injuries that Gordon references all occurred well *after* Gordon purchased his pistol. *See* Compl. ¶¶ 20-35 (citing events from 2018, 2017, and 2016). These allegations are insufficient to survive a motion to dismiss Gordon's fraud-based claims for misrepresentation or omission. *See, e.g., Prudential Ins.*, 896 S.W.2d at 162-63.

### C.   Gordon's DTPA Claim Fails for the Additional Reason that No Statement by SIG Sauer Was the Producing Cause of Any Injury.

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). A plaintiff seeking recovery under the DTPA must "also establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury." *Id.*; *Bus. Staffing, Inc. v. Jackson Hot Oil Serv*., 401 S.W.3d 224, 236 (Tex. App.—El Paso 2012, pet. denied).

Gordon has failed to adequately plead one of the violations of the DTPA was a producing cause of his injury. Gordon alleges that he purchased his P320 in September 2014. Compl. ¶ 8. According to Gordon, and setting aside Gordon's conclusory allegations concerning SIG Sauer's pre-testing above, the alleged defect in the P320 was not discovered until "April 20, 2016, when the U.S. Army discovered that the SIG P320 pistol would fire unintentionally on its own when dropped, which the Army deemed to be a 'deficiency.'" *Id*. ¶¶ 18- 19. None of the alleged deceptive acts regarding this discovery (set out in paragraphs 24 to 50), all of which occurred after September 2014 could be a "producing cause" in Gordon's decision to purchase the P320 pistol years later.

The only alleged statements contained in Gordon's Complaint that could possibly have been a "producing cause" of Gordon's decision to purchase the P320 pistol are alleged marketing statements contained in Paragraphs 12-15. But these allegations fail to identify when the allegedly false statements were made—whether before or after September 2014. The failure to include any dates in these key paragraphs fail to satisfy Rule 9(b). *See Tuchman v. DSC Commc'ns Corp*., 14 F.3d 1061, 1068 (5th Cir. 1994). For this reason too, Gordon's DTPA claim (Count VII) should be dismissed.

## CONCLUSION

For these reasons, the Court should grant SIG Sauer's motion to dismiss.

Dated: June 25, 2019

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  /s/ Amy M. Crouch
    Amy M. Crouch (*Pro Hac Vice*)
    Brent Dwerlkotte (*Pro Hac Vice*)
    2555 Grand Blvd.
    Kansas City, Missouri 64108-2613
    Ph: 816.474.6550
    Fax: 816.421.5547
    amcrouch@shb.com
    dbdwerlkotte@shb.com

    Ryan Killian
    600 Travis St., #3400
    Houston, Texas 77002
    Ph:713.227.8008
    Fax:713.227.9508
    rkillian@shb.com

    Robert L. Joyce (*Pro Hac Vice*)
    LITTLETON PARK JOYCE UGHETTA &
    KELLY LLP
    4 Manhattanville Road, Suite 202
    Purchase, New York 10577
    Ph: 914.417.3400
    Fax: 914.417.3401
    robert.joyce@littletonpark.com

*Attorneys for Defendant*
*SIG Sauer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of June, 2019, the above and foregoing document was filed electronically through the CM/ECF system which sent notification of such filing to all known counsel of record.

_/s/Ryan S. Killian_
Ryan S. Killian