1       **UNITED STATES DISTRICT COURT**
          **SOUTHERN DISTRICT OF TEXAS**
2              **HOUSTON DIVISION**

3
    DANTE GORDON              *    4:19-CV-00585
4                             *
    V.                        *    2:22 P.M. to 2:56 P.M.
5                             *
    SIG SAUER, INC.           *    AUGUST 21, 2019
6
                        **HEARING ON MOTIONS**
7      **BEFORE THE HONORABLE CHIEF JUSTICE LEE H. ROSENTHAL**
                    **Volume 1 of 1 Volume**
8  **APPEARANCES**
   **FOR THE PLAINTIFF:**
9  Mr. Joseph L. Marchese
   Bursor & Fisher, P.A.
10 888 Seventh Avenue
   New York, New York 10019
11 (646) 837-7150
       and
12 Mr. Brandon Allen
   Reynolds Frizzell, LLP
13 1100 Louisiana
   Suite 3500
14 Houston, Texas   77002
   (713) 485-7200
15
   **FOR THE DEFENDANT:**
16 Mr. David Brent Dwerlkotte
   Shook, Hardy & Bacon, LLP
17 2555 Grand Boulevard
   Kansas City, Missouri 64108-2613
18 (816) 474-6550
       and
19 Mr. Robert Laurent Joyce
   Littleton Park
20 4 Manhattanville Road
   Suite 202
21 Purchase, New York 10577
   (914) 417-3419
22
   Court Reporter:
23 Laura Wells, RPR, RMR, CRR
   515 Rusk Street, Suite 8004
24 Houston, Texas 77002

25 Proceedings recorded by mechanical stenography.
   Transcript produced by computer-assisted transcription.

**PROCEEDINGS**

1

2          THE COURT:  All right.  Dante Gordon v. SIG

3     Sauer.  Come on up and state your appearances.

4          MR. MARCHESE:  Good afternoon, Your Honor.

02:22:52   5     Joseph Marchese of Bursor & Fisher for the plaintiff.

6          MR. ALLEN:  Brandon Allen with Reynolds Frizzell,

7     co-counsel for the plaintiff.

8          MR. DWERLKOTTE:  Good afternoon, Your Honor.

9     Brent Dwerlkotte for defendant SIG Sauer.

02:23:10   10          THE COURT:  Thank you very much.

11          MR. JOYCE:  Good afternoon, Your Honor.  Rob

12     Joyce with Littleton Park for defendant SIG Sauer.

13          THE COURT:  Thank you.  All right.  So we have

14     some very interesting issues.  Most of the issues deal

02:23:44   15     with whether a claim has been stated but, more

16     importantly, whether certification of the classes that are

17     proposed is permissible.  A very interesting case.

18          Have there been any other cases, based on this alleged

19     defect, that have been filed?

02:24:03   20          MR. JOYCE:  No, Your Honor.  As indicated in the

21     papers, there is a class action pending in Missouri

22     alleging a different unrelated alleged defect.

23          THE COURT:  With the same model?

24          MR. JOYCE:  The same model, right.  But that

02:24:23   25     hasn't -- that's just at the allegation stage.  That's

*Laura Wells, CRR, RDR*

1    also subject to a pending dispositive motion.

2         THE COURT:  Okay.  Very good.  Okay.  I did want

3    to ask questions of counsel for the plaintiff focusing on

4    the allegations that Mr. Gordon understood from reviewing

02:24:55   5    unspecified materials that there had been certain

6    representations made.

7         He doesn't ever, as best I can tell, tie together or

8    connect what he reviewed to the "Safety Without

9    Compromise" marketing campaign that he references.

02:25:25   10   Doesn't allege when it started.  Doesn't allege what it

11   was that he looked at.  Doesn't allege when he looked at

12   it.  Doesn't allege the specific statements made.  He just

13   says I looked at stuff and here is what I understood.

14        How can that be enough and why isn't there more?

02:25:43   15        MR. MARCHESE:  Thank you, Your Honor.  Actually,

16   in Paragraph 8 of the first-amended complaint we do allege

17   the specific representations, which is that the gun was

18   quote-unquote drop safe.

19             THE COURT:  But where was that representation?

02:26:01   20             MR. MARCHESE:  It was in the marketing materials.

21             THE COURT:  What marketing materials?

22        MR. MARCHESE:  I believe, standing here today,

23   that it was on the website.

24             THE COURT:  Okay.  That's not alleged.  You need

02:26:13   25   to allege the when, the what, the how.  This is a 9(b)

*Laura Wells, CRR, RDR*

heightened disclosure requirement.  You don't allege that.

MR. MARCHESE:  With respect to warranty claims, I mean, the plaintiff is bringing a variety of warranty claims, Your Honor.

02:26:31   THE COURT:  Yes.

MR. MARCHESE:  Also bringing a claim for unjust enrichment.

THE COURT:  And fraud.

MR. MARCHESE:  Some fraud and then the Texas

02:26:39   Deceptive Practices -- Trade Practices Act and the warrantied claims, Your Honor, are not a 9(b) pleading standard.  That's a Rule 8 pleading standard.  And so I, you know, respectfully disagree that with respect to those claims we have to meet the heightened standard.

02:26:59   THE COURT:  But on the claims that do require a heightened pleading standard, that do have that apply, can you amend to make clearer precisely what he looked at and precisely what statements were on what he looked at when he looked at them in relationship to when he purchased the

02:27:20   weapon?

MR. MARCHESE:  I believe we can do that, Your Honor.

THE COURT:  But you haven't yet?

MR. MARCHESE:  Well, I had -- I had thought that

02:27:28   our allegations were sufficient because in Paragraph 8 of

1  the complaint, although he doesn't allege a specific time,

2  the plaintiff does state that he remembers reviewing the

3  drop-safe claims prior to making his purchase and that he

4  relied on those claims in making his purchase and he also

02:27:50  5  states that he would not have purchased the gun had he

6  known that those -- that those claims were not true.  So

7  that's all in there.

8         THE COURT:  And if I found it insufficient, you

9  think that --

02:28:04  10        MR. MARCHESE:  Well, I would ask -- I would ask

11  for leave to amend if Your Honor had thought that that was

12  insufficient.

13        THE COURT:  Okay.  In what years did SIG Sauer

14  make the safety -- begin the "Safety Without Compromise"

02:28:19  15  campaign?  Does anybody know?

16        MR. JOYCE:  Well, Your Honor, the assertion that

17  the plaintiff relied on a statement on the --

18        THE COURT:  Drop safety.

19        MR. JOYCE:  -- on the website that the firearm

02:28:38  20  won't discharge unless you pull the trigger, I think is

21  what he is referring to, and then ignored the actual

22  product manual that goes with the pistol that specifically

23  has a warning with a picture that says, Do not drop your

24  firearm, any firearm can discharge if dropped.  All right.

02:28:57  25        So I think that assertion is just not plausible.  It's

*Laura Wells, CRR, RDR*

1   not -- it doesn't withstand -- you know, it doesn't

2   withstand the particularity requirement with respect to

3   the --

4         THE COURT:  Well, it's particular.

02:29:13  5         MR. JOYCE:  Well, it's not plausible.

6         THE COURT:  It's not what?

7         MR. JOYCE:  It's not plausible.  It has got to be

8   particular but it also has to be --

9         THE COURT:  Would it be plausible if the manual

02:29:21  10  statement wasn't there?

11        MR. JOYCE:  I think that's a better -- that's a

12  closer -- that's a closer call and maybe --

13        THE COURT:  When was the manual provided?  Before

14  or after the weapon was purchased?

02:29:32  15        MR. JOYCE:  It's provided with the purchase of

16  every firearm.  Every firearm there is a warning manual --

17        THE COURT:  At the time of the purchase.

18        MR. JOYCE:  -- or instruction manual at the time

19  of purchase, right.

02:29:41  20        THE COURT:  All right.

21        MR. JOYCE:  And the warning manual is also on the

22  internet.  It's available that way, also.  But it's

23  physically provided.

24        THE COURT:  So it's on the same website that the

02:29:49  25  statements would have been included?

*Laura Wells, CRR, RDR*

1         MR. JOYCE:  Yes.  Yes.

2         THE COURT:  All right.  Let me switch to a

3    slightly different aspect of the question.  Did all of

4    this, the "Safety Without Compromise" marketing campaign

02:30:06    5    that -- was it largely a website campaign?

6         MR. JOYCE:  There may have been -- I can't say

7    that there wouldn't be any point of sale, you know,

8    brochure or any information like that.  It's also

9    undetermined at this point whether that information was

02:30:22    10   even on the website in 2014.

11        THE COURT:  Well, that's my question.  Do you

12   know when it went on the website?  Does anybody?

13        MR. JOYCE:  We don't know that information.

14        MR. MARCHESE:  I would need discovery on that,

02:30:32    15   Your Honor.  They would know better than I.

16        THE COURT:  So your client says it was on the

17   website at the time he made his purchase in 2014?

18        MR. MARCHESE:  That's what he told me that he

19   recalls.

02:30:38    20        THE COURT:  Which was the first year that the

21   weapon was marketed?

22        MR. JOYCE:  Right.  That's not in the pleading

23   though, Your Honor.  The pleading doesn't say the

24   plaintiff reviewed the website and he made -- he noticed

02:30:48    25   that on the website and he made his --

1          THE COURT:  No.  It says the website and a bunch

2     of materials.  Sort of a --

3          MR. MARCHESE:  But it says he reviewed that claim

4     and remembers it prior to making his purchase.  That is

02:30:58  5     what is important.

6          THE COURT:  Well, it says he looked at marketing

7     materials and documents accompanying the P320 before

8     making his purchase that would have included the manual.

9          MR. MARCHESE:  Well, I don't know.  First of all,

02:31:12  10    every gun, Your Honor, could -- could misfire when

11    dropped.  The issue is that this gun has a design that

12    is --

13         THE COURT:  Had a tendency.

14         MR. MARCHESE:  -- has a design defect --

02:31:25  15    THE COURT:  I understand.

16         MR. MARCHESE:  -- that is unduly prone.

17         THE COURT:  It was more likely to than other

18    weapons.  Is that a fair statement?

19         MR. JOYCE:  Well, Your Honor.  This firearm met

02:31:33  20    every U.S. safety standard.

21         THE COURT:  No.  No.  That's not the issue.

22    Their theory of liability is that it was more likely to

23    fire when dropped than other weapons.  Any weapon can but

24    this one was more likely; is that right?

02:31:47  25         MR. MARCHESE:  Yes.  And you don't have to take

1    our word for that.  The Army said that, too.

2              MR. JOYCE:  Well, Your Honor, it had a

3    vulnerability at a particular angle that was not tested

4    for under that existing U.S. safety standards.

02:31:58    5              THE COURT:  We're getting outside the pleadings

6    here.

7              MR. JOYCE:  Well, that actually is in the

8    pleading.

9              THE COURT:  Which part?

02:32:04    10             MR. DWERLKOTTE:   Paragraph 48 and 49.

11             THE COURT:  That their internal testing revealed

12   the --

13             MR. JOYCE:  48 and 49.

14             THE COURT:  All right.

02:32:09    15             MR. JOYCE:  And then the elephant in the room, of

16   course, here, Your Honor, is that there was a safety

17   upgrade made available to this plaintiff and every other

18   purchaser --

19             THE COURT:  Well, I know.  The voluntary upgrade

02:32:19    20   program.

21             MR. JOYCE:  -- that addresses that.

22             THE COURT:  All right.  So before we get to that,

23   let me ask one other question about the pre or at purchase

24   representations.  To the extent reliance is required for

02:32:36    25   the claims that rest on these promises that you have

*Laura Wells, CRR, RDR*

1    identified or representations and warranties that you have

2    identified, can you address the concerns raised about

3    whether when individual reliance is an issue,

4    certification of a (b)3 class can be proper?

02:33:02    5    MR. MARCHESE:  I can address that, Your Honor;

6    but really, it's hard for me to address that right now

7    without discovery because I need to know in discovery how

8    pervasive these drop performance claims were on the

9    marketing material.

02:33:20    10    THE COURT:  That doesn't go to the question of

11    reliance on the statements made at the time of the

12    purchase.  That's the issue.

13    MR. MARCHESE:  So, you know, once we get down the

14    line, Your Honor, we are going to make a class

02:33:39    15    certification motion and there is going to be an

16    opposition and so on and so forth.  Right now we have a

17    nationwide claim and we have got warranty claims and some

18    states do have reliance.

19    THE COURT:  What about the common law fraud and

02:33:53    20    Texas Deceptive Trade Practices Act claims that are based

21    on false and misleading statements?  They require

22    individual reliance.

23    MR. MARCHESE:  I believe that --

24    THE COURT:  Fraud does.

02:34:11    25    MR. MARCHESE:  I believe that the drop

1   performance claims were, basically, so material and so

2   pervasive that some level of reliance could be presumed;

3   but again, I would need discovery on this at the nascent

4   stage of this litigation.

02:34:29   5        THE COURT:  What is a case that says that

6   discovery can be presumed because some -- that reliance

7   can be presumed because something happens relatively

8   frequently?  There is a presumption of -- there is a

9   presumption that can be applied in some securities cases

02:34:50   10   of reliance, based on the market; but I'm not aware of it

11   in this kind of case.  Cite me a case that does that.

12        MR. MARCHESE:  Sure.  *Ebin v. Kangadis*.

13        THE COURT:  Sorry?

14        MR. MARCHESE:  *Ebin v. Kangadis*.  It's a consumer

02:35:03   15   class action.

16        THE COURT:  Okay.  We'll take a look.

17        MR. MARCHESE:  And also *Hart v.* -- I can't

18   remember the name of the defendant but it is, basically,

19   another consumer class action case in the Southern

02:35:12   20   District of New York.  Judge --

21        THE COURT:  No.  No.  No.  Texas.  Start with the

22   Fifth Circuit.

23        MR. MARCHESE:  Okay.

24        THE COURT:  What do you do with the Fifth

02:35:18   25   Circuit?  Not Second Circuit.

1          MR. MARCHESE:  So I would give --

2          THE COURT:  Are you aware of any Fifth Circuit

3     case?

4          MR. MARCHESE:  Not standing here at the moment,

02:35:27  5     Your Honor.

6          THE COURT:  All right.  Are you aware of a

7     case -- what is your best case that says if individual

8     reliance is an element of the claim, certification of a

9     class is improper for fraud claims, DTPA claims?

02:35:41  10         MR. DWERLKOTTE:  Absolutely, Your Honor.  What we

11    did in our brief is I think we spelled out in all the

12    jurisdictions whether reliance is required for

13    warranty-type claims.  We did that for every single state.

14    So I don't think that any amount of discovery is going to

02:35:55  15    change that.

16         You have got Texas is one of the states -- it's

17    Exhibit 1 or Exhibit A -- that talks about reliance and

18    that it's required.  That's *Omni USA v. Parker,* 964

19    F. Supp. 2d 805.  We have also outlined unjust enrichment

02:36:14  20    elements in each state as well as fraudulent concealment

21    in each state, Your Honor.  I think that that --

22         THE COURT:  That raises two questions.

23         MR. DWERLKOTTE:  Sure.

24         THE COURT:  One is variations among the various

02:36:25  25    states, and the second is individual reliance as an

1   element of a claim that may be so frequent that it raises

2   a concern unrelated to variability.

3              MR. DWERLKOTTE:  Are we talking about the

4   presumption?  Is that what you are --

02:36:47   5              THE COURT:  Yes.

6              MR. DWERLKOTTE:  So I think the only -- the only

7   state that follows a presumption would be California, that

8   there is a presumption that if a particular statement is

9   in fact false in its material to a certain amount of

02:37:00   10   consumers that certain courts in California have allowed

11   what they would call -- I would call it more of a -- not a

12   presumption but a -- I just blanked on the word.

13   Essentially a presumption, Your Honor, but only in

14   California, not in Texas.

02:37:18   15              THE COURT:  And what is your best Texas case that

16   says that if reliance is an issue that class treatment is

17   inappropriate?

18              MR. DWERLKOTTE:  I would cite the *Cole* case, the

19   *Rosa* case, as well as *Castano*, Your Honor.

02:37:34   20              THE COURT:  Do you want to -- and the *Cole* case

21   raises one other issue, and that is the standing issue

22   that you have challenged.  But it seems to go against you

23   on the standing issue.  How is it -- do you distinguish it

24   on that basis?

02:37:55   25              MR. DWERLKOTTE:  I do, Your Honor.  I think in

*Cole* I think that the product had actually manifested the
defect that the plaintiff claimed in that case.  Whereas
in this case our position is that Mr. Gordon's pistol has
not manifested the defect, i.e. the drop fire.

And I think, just to add on to that, Your Honor, I
think the *Inman* case -- it's a Texas Supreme Court case --
lays out kind of the distinction between *Cole* and the
situation that we're talking about here where in *Cole* the
event actually happened but the defect was present either
at the time of sale or it actually occurred.

Whereas here in the cases that we have cited, like
*Everett*, those cases are clear that if an event has to
occur and it could occur in the future, i.e. the drop
event here, that those -- those type of allegations are
insufficient for standing, Your Honor.

THE COURT:  Did you want to respond?

MR. MARCHESE:  Well, I would just say that right
now we are at the pleading stage, and I would certainly
love the opportunity to brief all of these issues at the
class certification stage with respect to -- and provide
the Court with a survey of different state laws and all of
the elements and, you know, there are courts that certify
fraud cases on a multi-state basis all the time.

THE COURT:  Well, SIG Sauer has already done an
analysis laying out variations among the various state

1   laws.  Is there any reason that precludes you from doing

2   that as well?

3            MR. MARCHESE:  There is nothing that precludes me

4   from doing it.  I'm not sure we have done that yet.  But

02:39:41   5   generally speaking, that's something that we would handle

6   at the class certification stage after getting some

7   discovery that might bear on some of these issues.  With

8   respect to whether there is --

9            THE COURT:  Why would discovery bear on the

02:39:55  10   variability of state law?  That's something that doesn't,

11   it seems to me, depend on discovery into factual grounds.

12           MR. MARCHESE:  That is a legal issue, Your Honor.

13           THE COURT:  That's right.

14           MR. MARCHESE:  But I think to some extent there

02:40:10  15   is a mixed question of law and fact, depending on what we

16   would find out about these drop performance claims in

17   connection with the safety marketing campaign that SIG

18   did.

19       With respect to whether a defect has manifested

02:40:29  20   itself, we would say that this is a design defect case.

21   And so there is an inherent defect in each unit of that

22   pistol as it was originally designed.

23       And we have also made allegations about how there are

24   a number of users of the P320 who were injured and shot

02:40:56  25   because they dropped their weapon and they were subject to

*Laura Wells, CRR, RDR*

1    a drop-fire incident.

2        So this is not a situation like in the *Everett* case

3    which related to a manufacturing defect with some

4    seatbelts that never, you know, malfunctioned.  This is a

02:41:18  5    case where there is a present defect in every one of the

6    units of the P320 coming off of the factory line, and

7    that's exactly what the court in Missouri in the *Hartley*

8    case said.  They said that an allegation of a design

9    defect is not a potential problem.  It is something that

02:41:44  10   is manifest in the product.

11       MR. JOYCE:  Well, Your Honor, Mr. Hartley's gun

12   actually allegedly fired out-of-battery.  We don't agree

13   with his assertion, but that allegation was made.

14       Secondly, in *Hartley*, the plaintiffs contend that the

02:42:04  15   upgrade program, which in fact was never intended to

16   address an alleged out-of-battery problem, which we don't

17   even think exists, but that is in that case.  The

18   plaintiffs allege --

19           THE COURT:  Wait a minute.  Okay.

02:42:17  20       MR. JOYCE:  -- that there is no fix available for

21   the out-of-battery problem that they allege.

22       In contrast, in this case, plaintiffs concede that the

23   voluntary upgrade program that is available free of charge

24   to the plaintiff and everyone else that has a 320 does

02:42:35  25   address the concern.

*Laura Wells, CRR, RDR*

1          THE COURT:  Before we get to that, what is your

2     best case or cases that when there are -- that the

3     analysis of state law and whether subclassing will

4     overcome any problems with variability or variations

02:42:58     5     across the states or not, what is your best case that says

6     that that is appropriately handled at the motion to

7     dismiss side -- stage as opposed to waiting for discovery

8     or certification motions?

9          MR. DWERLKOTTE:  Sure, Your Honor.  That would be

02:43:16    10     the *Rosa* case again.  That was a motion to dismiss.  That

11     was at the motion to dismiss stage.  I think that's right

12     on track here, Your Honor.

13          THE COURT:  All right.  And what is your best

14     case for saying you should wait until the class

02:43:30    15     certification stage?

16          MR. MARCHESE:  We have a Fifth Circuit -- we

17     cited a lot of authority on this.  We cited a Fifth

18     Circuit case.

19          THE COURT:  Which is what?

02:43:44    20     MR. MARCHESE:  Give me a minute, Your Honor.  I'm

21     sorry.

22        (Sotto voce discussion between counsel.)

23          MR. MARCHESE:  So it's, right, *Cole v. General

24     Motors Corp.,* 484 F.3d 717, Fifth Circuit.

02:44:12    25          THE COURT:  Okay.  I have that.  All right.

*Laura Wells, CRR, RDR*

1    Thank you.

2          MR. DWERLKOTTE:  Your Honor, could I address that

3    one real fast?

4          THE COURT:  I'm sorry?

02:44:16  5          MR. DWERLKOTTE:  If I could address that one real

6    fast.

7          THE COURT:  Go ahead.

8          MR. DWERLKOTTE:  I was going to address that one.

9    In that case, Your Honor, we would differentiate that one

02:44:25  10   because it wasn't raised at the motion to dismiss stage.

11   It was, in fact, at the class certification where that was

12   challenged.  And the Court there denied class

13   certification on a nationwide basis.  We think that

14   actually goes in our favor.

02:44:41  15         THE COURT:  All right.  The last set of questions

16   that I have is the impact of the voluntary upgrade

17   program, the argument over whether that undermines, that

18   the availability of that fix wholly undermines the ability

19   of the plaintiff to claim any kind of design defect.

02:45:16  20   Hotly disputed.  What is your best case for your argument?

21   And then, I'll hear from the plaintiff.

22         MR. DWERLKOTTE:  What is our best case on

23   standing, Your Honor?

24         THE COURT:  Well, on the question of whether --

02:45:27  25   yes, on the question of whether the recall fixes

*Laura Wells, CRR, RDR*

1  everything, undermines the claim.  I think you rely on

2  *Cole*.  Any other cases?

3           MR. DWERLKOTTE:  We cite *Everett*.  We think

4  *Everett* and those line of cases are on all fours here.  I

02:45:46  5  think it's slightly nuanced here, Your Honor, in that I

6  think some courts have -- have looked at and allowed a

7  plaintiff to proceed on an injury theory that they have

8  stopped using a product for fear that a defect may

9  manifest.

02:46:02  10      Here this case falls in one of those small niches

11  where --

12           THE COURT:  Well, that's what he does allege.

13           MR. DWERLKOTTE:  I'm sorry?

14           THE COURT:  That's what he does allege.

02:46:11  15           MR. DWERLKOTTE:  That he -- after the first

16  complaint, he comes back later and says, yes, I have

17  stopped using it.

18           THE COURT:  Right.

19           MR. DWERLKOTTE:  That is what some courts have

02:46:18  20  found that to be the case.  For example, there is a BPA

21  decision.  I know it's Eighth Circuit, Your Honor, but I

22  think Judge Smith there does a really nice job of laying

23  out this analysis, which includes Fifth Circuit law.  What

24  he says there is it would be ridiculous and absurd to say

02:46:34  25  that we don't -- you would have to -- we wouldn't find

*Laura Wells, CRR, RDR*

1    standing if you haven't actually ingested poison, for

2    example.   That would be absurd.

3         But in a situation where you have a recall or

4    especially one where -- sorry -- not a recall but an

02:46:48  5    upgrade, one that is conceded to be appropriate and would

6    make him whole, that that is really the linchpin here for

7    why he doesn't have standing.

8            MR. JOYCE:   Right.   And the cases where there was

9    an assertion that the Court found valid, at least on the

02:47:08  10   motion to dismiss claim, that the plaintiff decided to

11   stop using the product out of fear that an alleged defect

12   made the product unsafe, in those situations there wasn't

13   an available fix, what the plaintiffs call a fix.

14        And that's key here because the plaintiff here can

02:47:28  15   return his gun to SIG.   And just like under any garden

16   variety warranty claim in any product for any product

17   manufacturer, he can get his gun back in a week and a half

18   and his -- he can use the product and the product is now

19   above and beyond any, you know, drop safety requirements

02:47:54  20   and any abusive handling standards in the United States.

21   And the plaintiff doesn't allege to the contrary.

22        If every standard variety warranty claim becomes the

23   basis of a class action, Your Honor, where the plaintiffs'

24   lawyers sweep in after the fact and take a fee for

02:48:10  25   something that has already occurred, the courts are going

1   to be overrun.

2        MR. DWERLKOTTE:  Your Honor, I think one of the

3   cases that plaintiff cites actually illustrates this point

4   very nicely.  It's the *BMW* case on Pages 8 or 9, I

02:48:24  5  believe.  It's *Bang v. BMW*.  In that case the plaintiff

6   alleged a defect.  And then there was a -- BMW offered a

7   repair but the plaintiffs claimed that that repair didn't

8   fix everything or that it was inadequate.  And that's

9   exactly what we're talking about.

02:48:41  10       THE COURT:  All right.  Anything else on these

11  points?

12       MR. MARCHESE:  Yes, Your Honor.  So, first of

13  all, the voluntary upgrade program, so-called, as it is,

14  takes four to six weeks to complete and sometimes more

02:48:56  15  time than that.

16       MR. JOYCE:  That's not true.

17       MR. MARCHESE:  And during that time, SIG installs

18  a lighter trigger to address this drop-safety issue.  But

19  SIG never provided effective notice of that program to its

02:49:11  20  customers and it misrepresented --

21       THE COURT:  But your client doesn't deny that he

22  knew about it.

23       MR. MARCHESE:  Excuse me?

24       THE COURT:  Does your client deny that he knew

02:49:18  25  about it?

*Laura Wells, CRR, RDR*

1          MR. MARCHESE:  He does not deny that he knew

2     about it.

3          THE COURT:  In fact, he says he didn't want to

4     because he didn't want to be without the use of it.

02:49:26  5     That's one harm he alleges.  He doesn't explain why he

6     didn't want to avail himself of the opportunity.

7          MR. MARCHESE:  He learned about the defect with

8     this gun in December of 2018, Your Honor.  He learned

9     about it from a man in his church congregation.  And he

02:49:48  10    was outraged about the fact that there was this issue with

11    a -- a gun safety issue and he cares a lot about gun

12    safety and SIG had not -- SIG had an opportunity to reach

13    out to people who registered their guns with them.  SIG

14    had an opportunity to reach out to people who submitted

02:50:14  15    warranty cards to them.  But SIG has not done any direct

16    notice of the voluntary upgrade program.

17       And then, they misrepresented the nature of the

18    program, sometimes expressly stating that the guns were

19    safe as originally designed and that the upgrade has

02:50:27  20    nothing to do with drop safety.  And as a result, there

21    are hundreds of thousands --

22          MR. JOYCE:  That is just not correct.

23          MR. MARCHESE:  Excuse me.  And as a result, there

24    are hundreds of thousands of these defective P320s still

02:50:39  25    out on the streets.

*Laura Wells, CRR, RDR*

1          Now here, the plaintiff alleged economic injury that

2     confers standing.  He paid for a gun that was represented

3     as drop safe, but he got a gun with a drop-fire defect.

4     And that's quintessential economic harm suffered at the

02:50:54   5     point of purchase.

6          The plaintiff and the punitive class members can

7     pursue money damages because they received less than what

8     they bargained for at the time of purchase, and plaintiff

9     has alleged that he has been deprived of the use and

02:51:08   10    enjoyment of his gun, which he stopped using due to safety

11    concerns.

12         And he is fully within his rights to bring these -- to

13    bring these claims, Your Honor.  And the voluntary upgrade

14    program cannot moot his claims because his claims include

02:51:26   15    remedies such as punitive damages or trebling of damages

16    that are simply not addressed by the voluntary upgrade

17    program.

18         And he also wants injunctive relief to get SIG to set

19    the record straight on what is really going on here, and

02:51:45   20    the voluntary upgrade program just does not do that.

21         So -- so I don't think the defendant can moot out the

22    plaintiff's claim with that upgrade program.  It's just

23    too little too late.  And so that would be my response.

24              THE COURT:  Anything from the --

02:52:03   25              MR. DWERLKOTTE:  May I address a couple of those?

*Laura Wells, CRR, RDR*

1           MR. MARCHESE:  I'm sorry.  One other point.  They

2    brought these arguments up in the *Hartley* case.  That's

3    the other punitive class action about another type of

4    design defect with the P320, and the judge said this issue

02:52:18    5    with the voluntary upgrade program is rife with factual

6    issues that are inappropriate to decide on a motion to

7    dismiss at the pleading stage and that's where we are,

8    Your Honor.

9           MR. JOYCE:  Well, Your Honor, let me address

02:52:28   10    that.

11           THE COURT:  Is that a summary judgment motion?

12           MR. JOYCE:  Your Honor --

13           MR. DWERLKOTTE:  A motion to dismiss.

14           MR. MARCHESE:  A motion to dismiss.

02:52:35   15           MR. JOYCE:  Your Honor, *Hartley* has nothing to

16    with the voluntary upgrade.  The voluntary upgrade had

17    nothing to do with --

18           THE COURT:  Was there a voluntary upgrade in

19    *Hartley*?

02:52:41   20           MR. JOYCE:  Not that relates to the defect that

21    they are alleging in *Hartley*.  That has nothing to do with

22    it, no.

23           THE COURT:  Wait.  Wait.  I'm confused.  What was

24    the voluntary recall related to in that case?

02:52:50   25           MR. JOYCE:  It wasn't.  The voluntary -- in

*Laura Wells, CRR, RDR*

1    *Hartley* they are alleging that the P320 can fire

2    out-of-battery, and SIG denies that that's the case.

3    That's what the class action is there.

4            THE COURT:  Was there a voluntary --

02:53:03  5            MR. JOYCE:  SIG instituted a voluntary upgrade to

6    deal with the drop-fire issue not to --

7            THE COURT:  Did they -- okay.  Was there a

8    voluntary upgrade for the issue that was brought up in

9    *Hartley?*

02:53:15  10           MR. JOYCE:  No.

11           THE COURT:  Okay.

12           MR. DWERLKOTTE:  No.

13           MR. JOYCE:  It's the same gun.  So the same guns

14   or the same firearms are the subject of that.

02:53:19  15           MR. MARCHESE:  I disagree.

16           THE COURT:  I'll look at the case.

17           MR. MARCHESE:  I disagree.  There is a mechanical

18   disconnector added to the weapon which addresses this --

19           THE COURT:  Both?

02:53:28  20           MR. MARCHESE:  -- which addresses this potential

21   out-of-battery design defect.

22           THE COURT:  As well as the drop fire?

23           MR. JOYCE:  That is not why the mechanical

24   disconnector was added to the P320.  The mechanical

02:53:39  25   disconnector was not added to the P320 to address an

1    out-of-battery issue.  There is no out-of-battery issue.

2    The mechanical disconnector was not added to address a

3    concern that the firearm could fire out-of-battery.  The

4    mechanical disconnector was added as a component to

02:53:55    5    address the drop-fire issue.  That's why -- that's why

6    that was added.

7            THE COURT:  Okay.  All right.  I'll look at the

8    *Hartley* case and see what it says.  Thank you.

9            MR. MARCHESE:  Thank you.

02:54:05    10           THE COURT:  Anything else that would be helpful?

11           MR. DWERLKOTTE:  A couple of more points on what

12   counsel raised, Your Honor.  A lot of those facts that we

13   just heard from counsel are not actually in the pleadings

14   anywhere.  This December 2018 event, that's not anywhere

02:54:18    15   in the complaint, Your Honor.  The piece about notice and

16   how we're supposed to provide notice and all those things,

17   that is not required by any law that we're aware of.

18       In fact, that would be akin to post-sale duty, which I

19   think is pretty clear under Texas that there is no

02:54:37    20   post-sale duty to warn, recall, retrofit, anything of that

21   nature.  So those allegations, I think, are without merit,

22   Your Honor.

23       And then as to the -- this standing piece of this

24   inherent defect, I think they are trying to lump in this

02:54:51    25   case with kind of the false advertising cases on which

1    they primarily rely.  And those cases are clear at the

2    point of sale that there is an injury.  There is a

3    uniformly false statement that induced a plaintiff to

4    purchase a product.

02:55:05    5        Here the alleged defect may or may not happen.  It's

6    contingent on something happening in the future, dropping

7    it numerous times potentially and at certain angles.  So

8    that it's -- you can't put this case in the false

9    advertising-type cases, Your Honor.

02:55:18    10        THE COURT:  Some of the cases talk about

11    inevitably manifesting.

12        MR. DWERLKOTTE:  Absolutely.  I think that that

13    is --

14        THE COURT:  What is the -- does "inevitably" mean

02:55:28    15    in every weapon, in every product, in every item this will

16    happen or does it mean that in a certain number of cases

17    it's likely to happen?

18        MR. DWERLKOTTE:  Are you asking --

19        THE COURT:  What does "inevitably manifest" mean

02:55:46    20    in the case law?

21        MR. DWERLKOTTE:  Well, I think there has to be a

22    clear allegation that it is inevitable, and it is not

23    here, Your Honor.

24        THE COURT:  Does that mean it is going to happen

02:55:51    25    in every single case at some point?  What does it mean?

*Laura Wells, CRR, RDR*

1    MR. DWERLKOTTE:  I'm not sure the exact answer to

2 that, Your Honor.

3    MR. JOYCE:  But I think it has to happen in

4 ordinary use, Your Honor, here.

02:56:00 5    THE COURT:  Well, dropping it is in ordinary use.

6    MR. JOYCE:  Is not in ordinary use.  Dropping a

7 loaded firearm is --

8    THE COURT:  Everybody knows it happens.

9    MR. JOYCE:  It can happen.

02:56:08 10    THE COURT:  Yes.  That's really the point.  It

11 can happen during ordinary use.  It may not be ordinary.

12    MR. JOYCE:  I wouldn't agree it's ordinary use,

13 but it can happen during ordinary use, Your Honor.

14    THE COURT:  Right.  That's a fair way to put it.

02:56:21 15 All right.  Anything else?

16    MR. MARCHESE:  No, Your Honor.

17    MR. DWERLKOTTE:  No, Your Honor.

18    THE COURT:  Well, this has been very helpful, and

19 I appreciate it.  We'll try to get an opinion out as

02:56:31 20 quickly as possible.  Without prejudging anything, I think

21 that you will have some more work to do to make your

22 pleadings a little bit tighter, and we'll see if that can

23 address some of the issues that have been raised in the

24 motion to dismiss.

02:56:52 25    MR. MARCHESE:  Thank you, Judge.

Concordance

1          MR. ALLEN:  Thank you, Your Honor.

2          MR. JOYCE:  Thank you, Your Honor.

3          MR. DWERLKOTTE:  Thank you, Judge.

4          THE COURT:  Thank you.

02:57:00  5      (Proceedings concluded at 2:57 p.m.)

6   *Date: August 27, 2019*

7              ***COURT REPORTER'S CERTIFICATE***

8      *I, Laura Wells, certify that the foregoing is a*

9   *correct transcript from the record of proceedings in the*

10  *above-entitled matter.*

11

12                   *_____/s/ Laura Wells_____*

13              *Laura Wells, CRR, RMR*

14

15

16

17

18

19

20

21

22

23

24

25

*Laura Wells, CRR, RDR*

| / | 7 |
|---|---|
| /s [1] - 29:12 | 713 [1] - 1:14 |
|  | 717 [1] - 17:24 |
| **1** | 77002 [2] - 1:14, 1:24 |
| 1 [3] - 1:7, 12:17 | **8** |
| 10019 [1] - 1:10 | 8 [4] - 3:16, 4:12, 4:25, 21:4 |
| 10577 [1] - 1:21 | 8004 [1] - 1:23 |
| 1100 [1] - 1:13 | 805 [1] - 12:19 |
| **2** | 816 [1] - 1:18 |
| 2014 [2] - 7:10, 7:17 | 837-7150 [1] - 1:11 |
| 2018 [2] - 22:8, 26:14 | 888 [1] - 1:10 |
| 2019 [2] - 1:5, 29:6 | **9** |
| 202 [1] - 1:20 | 9 [1] - 21:4 |
| 21 [1] - 1:5 | 9(b [2] - 3:25, 4:11 |
| 2555 [1] - 1:17 | 914 [1] - 1:21 |
| 27 [1] - 29:6 | 964 [1] - 12:18 |
| 2:22 [1] - 1:4 | **A** |
| 2:56 [1] - 1:4 | ability [1] - 18:18 |
| 2:57 [1] - 29:5 | above-entitled [1] - 29:10 |
| 2d [1] - 12:19 | absolutely [2] - 12:10, 27:12 |
| **3** | absurd [2] - 19:24, 20:2 |
| 320 [1] - 16:24 | abusive [1] - 20:20 |
| 3500 [1] - 1:13 | accompanying [1] - 8:7 |
| **4** | Act [2] - 4:10, 10:20 |
| 4 [1] - 1:20 | action [6] - 2:21, 11:15, 11:19, 20:23, 24:3, 25:3 |
| 417-3419 [1] - 1:21 | actual [1] - 5:21 |
| 474-6550 [1] - 1:18 | add [1] - 14:5 |
| 48 [2] - 9:10, 9:13 | added [6] - 25:18, 25:24, 25:25, 26:2, 26:4, 26:6 |
| 484 [1] - 17:24 | address [15] - 10:2, 10:5, 10:6, 16:16, 16:25, 18:2, 18:5, 18:8, 21:18, 23:25, 24:9, 25:25, 26:2, 26:5, 28:23 |
| 485-7200 [1] - 1:14 | addressed [1] - 23:16 |
| 49 [2] - 9:10, 9:13 | addresses [3] - 9:21, |
| 4:19-CV-00585 [1] - 1:3 | |
| **5** | |
| 515 [1] - 1:23 | |
| **6** | |
| 64108-2613 [1] - 1:17 | |
| 646 [1] - 1:11 | |

| (cont.) | B |
|---|---|
| 25:18, 25:20 | b)3 [1] - 10:4 |
| advertising [2] - 26:25, 27:9 | Bacon [1] - 1:16 |
| advertising-type [1] - 27:9 | Bang [1] - 21:5 |
| afternoon [3] - 2:4, 2:8, 2:11 | bargained [1] - 23:8 |
| agree [2] - 16:12, 28:12 | based [3] - 2:18, 10:20, 11:10 |
| ahead [1] - 18:7 | basis [4] - 13:24, 14:23, 18:13, 20:23 |
| akin [1] - 26:18 | battery [8] - 16:12, 16:16, 16:21, 25:2, 25:21, 26:1, 26:3 |
| allegation [4] - 2:25, 16:8, 16:13, 27:22 | bear [2] - 15:7, 15:9 |
| allegations [5] - 3:4, 4:25, 14:14, 15:23, 26:21 | becomes [1] - 20:22 |
| allege [13] - 3:10, 3:11, 3:12, 3:16, 3:25, 4:1, 5:1, 16:18, 16:21, 19:12, 19:14, 20:21 | BEFORE [1] - 1:7 |
| alleged [9] - 2:18, 2:22, 3:24, 16:16, 20:11, 21:6, 23:1, 23:9, 27:5 | begin [1] - 5:14 |
| allegedly [1] - 16:12 | best [8] - 3:7, 12:7, 13:15, 17:2, 17:5, 17:13, 18:20, 18:22 |
| alleges [1] - 22:5 | better [2] - 6:11, 7:15 |
| alleging [3] - 2:22, 24:21, 25:1 | between [2] - 14:7, 17:22 |
| Allen [2] - 1:12, 2:6 | beyond [1] - 20:19 |
| ALLEN [2] - 2:6, 29:1 | bit [1] - 28:22 |
| allowed [2] - 13:10, 19:6 | blanked [1] - 13:12 |
| amend [2] - 4:17, 5:11 | BMW [3] - 21:4, 21:5, 21:6 |
| amended [1] - 3:16 | Boulevard [1] - 1:17 |
| amount [2] - 12:14, 13:9 | BPA [1] - 19:20 |
| analysis [3] - 14:25, 17:3, 19:23 | |
| angle [1] - 9:3 | |
| angles [1] - 27:7 | |
| answer [1] - 28:1 | |
| appearances [1] - 2:3 | |
| APPEARANCES [1] - 1:8 | |
| applied [1] - 11:9 | |
| apply [1] - 4:16 | |
| appreciate [1] - 28:19 | |
| appropriate [1] - 20:5 | |
| appropriately [1] - 17:6 | |
| argument [2] - 18:17, | |

| (cont.) |
|---|
| 18:20 |
| arguments [1] - 24:2 |
| Army [1] - 9:1 |
| aspect [1] - 7:3 |
| assertion [4] - 5:16, 5:25, 16:13, 20:9 |
| assisted [1] - 1:25 |
| AUGUST [1] - 1:5 |
| August [1] - 29:6 |
| authority [1] - 17:17 |
| avail [1] - 22:6 |
| availability [1] - 18:18 |
| available [5] - 6:22, 9:17, 16:20, 16:23, 20:13 |
| Avenue [1] - 1:10 |
| aware [4] - 11:10, 12:2, 12:6, 26:17 |

Proceedings

Brandon [2] - 1:12, 2:6
Brent [2] - 1:16, 2:9
brief [2] - 12:11, 14:19
bring [2] - 23:12, 23:13
bringing [2] - 4:3, 4:6
brochure [1] - 7:8
brought [2] - 24:2, 25:8
bunch [1] - 8:1
Bursor [2] - 1:9, 2:5

**C**

California [3] - 13:7, 13:10, 13:14
campaign [5] - 3:9, 5:15, 7:4, 7:5, 15:17
cannot [1] - 23:14
cards [1] - 22:15
cares [1] - 22:11
case [43] - 2:17, 11:5, 11:11, 11:19, 12:3, 12:7, 13:15, 13:18, 13:19, 13:20, 14:2, 14:3, 14:6, 15:20, 16:2, 16:5, 16:8, 16:17, 16:22, 17:2, 17:5, 17:10, 17:14, 17:18, 18:9, 18:20, 18:22, 19:10, 19:20, 21:4, 21:5, 24:2, 24:24, 25:2, 25:16, 26:8, 26:25, 27:8, 27:20, 27:25
cases [15] - 2:18, 11:9, 14:11, 14:12, 14:23, 17:2, 19:2, 19:4, 20:8, 21:3, 26:25, 27:1, 27:9, 27:10, 27:16
Castano [1] - 13:19
certain [5] - 3:5, 13:9, 13:10, 27:7, 27:16
certainly [1] - 14:18
CERTIFICATE [1] - 29:7
certification [10] - 2:16, 10:4, 10:15, 12:8, 14:20, 15:6, 17:8, 17:15, 18:11, 18:13
certify [2] - 14:22, 29:8
challenged [2] - 13:22, 18:12

change [1] - 12:15
charge [1] - 16:23
CHIEF [1] - 1:7
church [1] - 22:9
Circuit [9] - 11:22, 11:25, 12:2, 17:16, 17:18, 17:24, 19:21, 19:23
cite [3] - 11:11, 13:18, 19:3
cited [3] - 14:11, 17:17
cites [1] - 21:3
City [1] - 1:17
claim [12] - 2:15, 4:6, 8:3, 10:17, 12:8, 13:1, 18:19, 19:1, 20:10, 20:16, 20:22, 23:22
claimed [2] - 14:2, 21:7
claims [20] - 4:2, 4:4, 4:11, 4:14, 4:15, 5:3, 5:4, 5:6, 9:25, 10:8, 10:17, 10:20, 11:1, 12:9, 12:13, 15:16, 23:13, 23:14
class [16] - 2:21, 10:4, 10:14, 11:15, 11:19, 12:9, 13:16, 14:20, 15:6, 17:14, 18:11, 18:12, 20:23, 23:6, 24:3, 25:3
classes [1] - 2:16
clear [4] - 14:12, 26:19, 27:1, 27:22
clearer [1] - 4:17
client [3] - 7:16, 21:21, 21:24
closer [2] - 6:12
co [1] - 2:7
co-counsel [1] - 2:7
Cole [7] - 13:18, 13:20, 14:1, 14:7, 14:8, 17:23, 19:2
coming [1] - 16:6
common [1] - 10:19
complaint [4] - 3:16, 5:1, 19:16, 26:15
complete [1] - 21:14
component [1] - 26:4
Compromise [3] - 3:9, 5:14, 7:4

computer [1] - 1:25
computer-assisted [1] - 1:25
concealment [1] - 12:20
concede [1] - 16:22
conceded [1] - 20:5
concern [3] - 13:2, 16:25, 26:3
concerns [2] - 10:2, 23:11
concluded [1] - 29:5
confers [1] - 23:2
confused [1] - 24:23
congregation [1] - 22:9
connect [1] - 3:8
connection [1] - 15:17
consumer [2] - 11:14, 11:19
consumers [1] - 13:10
contend [1] - 16:14
contingent [1] - 27:6
contrary [1] - 20:21
contrast [1] - 16:22
Corp [1] - 17:24
correct [2] - 22:22, 29:9
counsel [5] - 2:7, 3:3, 17:22, 26:12, 26:13
couple [2] - 23:25, 26:11
course [1] - 9:16
Court [5] - 1:22, 14:6, 14:21, 18:12, 20:9
court [1] - 16:7
COURT [97] - 1:1, 2:2, 2:10, 2:13, 2:23, 3:2, 3:19, 3:21, 3:24, 4:5, 4:8, 4:15, 4:23, 5:8, 5:13, 5:18, 6:4, 6:6, 6:9, 6:13, 6:17, 6:20, 6:24, 7:2, 7:11, 7:16, 7:20, 8:1, 8:6, 8:13, 8:15, 8:17, 8:21, 9:5, 9:9, 9:11, 9:14, 9:19, 9:22, 10:10, 10:19, 10:24, 11:5, 11:13, 11:16, 11:21, 11:24, 12:2, 12:6, 12:22, 12:24, 13:5, 13:15, 13:20, 14:16, 14:24,

15:9, 15:13, 16:19, 17:1, 17:13, 17:19, 17:25, 18:4, 18:7, 18:15, 18:24, 19:12, 19:14, 19:18, 21:10, 21:21, 21:24, 22:3, 23:24, 24:11, 24:18, 24:23, 25:4, 25:7, 25:11, 25:16, 25:19, 25:22, 26:7, 26:10, 27:10, 27:14, 27:19, 27:24, 28:5, 28:8, 28:10, 28:14, 28:18, 29:4, 29:7
courts [5] - 13:10, 14:22, 19:6, 19:19, 20:25
CRR [2] - 1:23, 29:13
customers [1] - 21:20

**D**

damages [3] - 23:7, 23:15
Dante [1] - 2:2
DANTE [1] - 1:3
Date [1] - 29:6
David [1] - 1:16
deal [2] - 2:14, 25:6
December [2] - 22:8, 26:14
Deceptive [2] - 4:10, 10:20
decide [1] - 24:6
decided [1] - 20:10
decision [1] - 19:21
defect [23] - 2:19, 2:22, 8:14, 14:2, 14:4, 14:9, 15:19, 15:20, 15:21, 16:3, 16:5, 16:9, 18:19, 19:8, 20:11, 21:6, 22:7, 23:3, 24:4, 24:20, 25:21, 26:24, 27:5
defective [1] - 22:24
DEFENDANT [1] - 1:15
defendant [4] - 2:9, 2:12, 11:18, 23:21
denied [1] - 18:12
denies [1] - 25:2
deny [3] - 21:21, 21:24, 22:1

deprived[1] - 23:9
design[7] - 8:11, 8:14, 15:20, 16:8, 18:19, 24:4, 25:21
designed[2] - 15:22, 22:19
different[3] - 2:22, 7:3, 14:21
differentiate[1] - 18:9
direct[1] - 22:15
disagree[3] - 4:13, 25:15, 25:17
discharge[2] - 5:20, 5:24
disclosure[1] - 4:1
disconnector[5] - 25:18, 25:24, 25:25, 26:2, 26:4
discovery[10] - 7:14, 10:7, 11:3, 11:6, 12:14, 15:7, 15:9, 15:11, 17:7
discussion[1] - 17:22
dismiss[9] - 17:7, 17:10, 17:11, 18:10, 20:10, 24:7, 24:13, 24:14, 28:24
dispositive[1] - 3:1
disputed[1] - 18:20
distinction[1] - 14:7
distinguish[1] - 13:23
DISTRICT[2] - 1:1, 1:1
District[1] - 11:20
DIVISION[1] - 1:2
documents[1] - 8:7
done[3] - 14:24, 15:4, 22:15
down[1] - 10:13
drop[18] - 3:18, 5:3, 5:18, 5:23, 10:8, 10:25, 14:4, 14:13, 15:16, 16:1, 20:19, 21:18, 22:20, 23:3, 25:6, 25:22, 26:5
drop-fire[4] - 16:1, 23:3, 25:6, 26:5
drop-safe[1] - 5:3
drop-safety[1] - 21:18
dropped[4] - 5:24,

8:11, 8:23, 15:25
dropping[3] - 27:6, 28:5, 28:6
DTPA[1] - 12:9
due[1] - 23:10
during[3] - 21:17, 28:11, 28:13
duty[2] - 26:18, 26:20
Dwerlkotte[2] - 1:16, 2:9
DWERLKOTTE[28] - 2:8, 9:10, 12:10, 12:23, 13:3, 13:6, 13:18, 13:25, 17:9, 18:2, 18:5, 18:8, 18:22, 19:3, 19:13, 19:15, 19:19, 21:2, 23:25, 24:13, 25:12, 26:11, 27:12, 27:18, 27:21, 28:1, 28:17, 29:3

## E

Ebin[2] - 11:12, 11:14
economic[2] - 23:1, 23:4
effective[1] - 21:19
Eighth[1] - 19:21
either[1] - 14:9
element[2] - 12:8, 13:1
elements[2] - 12:20, 14:22
elephant[1] - 9:15
enjoyment[1] - 23:10
enrichment[2] - 4:7, 12:19
entitled[1] - 29:10
especially[1] - 20:4
essentially[1] - 13:13
event[4] - 14:9, 14:12, 14:14, 26:14
Everett[4] - 14:12, 16:2, 19:3, 19:4
exact[1] - 28:1
exactly[2] - 16:7, 21:9
example[2] - 19:20, 20:2
excuse[2] - 21:23, 22:23
Exhibit[2] - 12:17

existing[1] - 9:4
exists[1] - 16:17
explain[1] - 22:5
expressly[1] - 22:18
extent[2] - 9:24, 15:14

## F

F.3d[1] - 17:24
fact[8] - 13:9, 15:15, 16:15, 18:11, 20:24, 22:3, 22:10, 26:18
factory[1] - 16:6
facts[1] - 26:12
factual[2] - 15:11, 24:5
fair[2] - 8:18, 28:14
falls[1] - 19:10
false[5] - 10:21, 13:9, 26:25, 27:3, 27:8
fast[2] - 18:3, 18:6
favor[1] - 18:14
fear[2] - 19:8, 20:11
fee[1] - 20:24
Fifth[7] - 11:22, 11:24, 12:2, 17:16, 17:17, 17:24, 19:23
filed[1] - 2:19
fire[9] - 8:23, 14:4, 16:1, 23:3, 25:1, 25:6, 25:22, 26:3, 26:5
firearm[8] - 5:19, 5:24, 6:16, 8:19, 26:3, 28:7
firearms[1] - 25:14
fired[1] - 16:12
first[5] - 3:16, 7:20, 8:9, 19:15, 21:12
first-amended[1] - 3:16
Fisher[2] - 1:9, 2:5
fix[5] - 16:20, 18:18, 20:13, 21:8
fixes[1] - 18:25
focusing[1] - 3:3
follows[1] - 13:7
FOR[2] - 1:8, 1:15
foregoing[1] - 29:8
forth[1] - 10:16
four[1] - 21:14

fours[1] - 19:4
fraud[6] - 4:8, 4:9, 10:19, 10:24, 12:9, 14:23
fraudulent[1] - 12:20
free[1] - 16:23
frequent[1] - 13:1
frequently[1] - 11:8
Frizzell[2] - 1:12, 2:6
fully[1] - 23:12
future[2] - 14:13, 27:6

## G

garden[1] - 20:15
General[1] - 17:23
generally[1] - 15:5
GORDON[1] - 1:3
Gordon[2] - 2:2, 3:4
Gordon's[1] - 14:3
Grand[1] - 1:17
grounds[1] - 15:11
gun[14] - 3:17, 5:5, 8:10, 8:11, 16:11, 20:15, 20:17, 22:8, 22:11, 23:2, 23:3, 23:10, 25:13
guns[3] - 22:13, 22:18, 25:13

## H

half[1] - 20:17
handle[1] - 15:5
handled[1] - 17:6
handling[1] - 20:20
hard[1] - 10:6
Hardy[1] - 1:16
harm[2] - 22:5, 23:4
Hart[1] - 11:17
Hartley[9] - 16:7, 16:14, 24:2, 24:15, 24:19, 24:21, 25:1, 25:9, 26:8
hartley's[1] - 16:11
hear[1] - 18:21
heard[1] - 26:13
HEARING[1] - 1:6
heightened[3] - 4:1,

4:14, 4:16
helpful [2] - 26:10, 28:18
himself [1] - 22:6
Honor [57] - 2:4, 2:8, 2:11, 2:20, 3:15, 4:4, 4:11, 4:22, 5:11, 5:16, 7:15, 7:23, 8:10, 8:19, 9:2, 9:16, 10:5, 10:14, 12:5, 12:10, 12:21, 13:13, 13:19, 13:25, 14:5, 14:15, 15:12, 16:11, 17:9, 17:12, 17:20, 18:2, 18:9, 18:23, 19:5, 19:21, 20:23, 21:2, 21:12, 22:8, 23:13, 24:8, 24:9, 24:12, 24:15, 26:12, 26:15, 26:22, 27:9, 27:23, 28:2, 28:4, 28:13, 28:16, 28:17, 29:1, 29:2
HONORABLE [1] - 1:7
hotly [1] - 18:20
HOUSTON [1] - 1:2
Houston [2] - 1:14, 1:24
hundreds [2] - 22:21, 22:24

**I**

i.e [2] - 14:4, 14:13
identified [2] - 10:1, 10:2
ignored [1] - 5:21
illustrates [1] - 21:3
impact [1] - 18:16
important [1] - 8:5
importantly [1] - 2:16
improper [1] - 12:9
inadequate [1] - 21:8
inappropriate [2] - 13:17, 24:6
INC [1] - 1:5
incident [1] - 16:1
include [1] - 23:14
included [2] - 6:25, 8:8
includes [1] - 19:23
indicated [1] - 2:20
individual [4] - 10:3,

10:22, 12:7, 12:25
induced [1] - 27:3
inevitable [1] - 27:22
inevitably [3] - 27:11, 27:14, 27:19
information [3] - 7:8, 7:9, 7:13
ingested [1] - 20:1
inherent [2] - 15:21, 26:24
injunctive [1] - 23:18
injured [1] - 15:24
injury [3] - 19:7, 23:1, 27:2
Inman [1] - 14:6
installs [1] - 21:17
instituted [1] - 25:5
instruction [1] - 6:18
insufficient [3] - 5:8, 5:12, 14:15
intended [1] - 16:15
interesting [2] - 2:14, 2:17
internal [1] - 9:11
internet [1] - 6:22
issue [18] - 8:11, 8:21, 10:3, 10:12, 13:16, 13:21, 13:23, 15:12, 21:18, 22:10, 22:11, 24:4, 25:6, 25:8, 26:1, 26:5
issues [6] - 2:14, 14:19, 15:7, 24:6, 28:23
item [1] - 27:15
itself [1] - 15:20

**J**

job [1] - 19:22
Joseph [2] - 1:9, 2:5
Joyce [2] - 1:19, 2:12
JOYCE [40] - 2:11, 2:20, 2:24, 5:16, 5:19, 6:5, 6:7, 6:11, 6:15, 6:18, 6:21, 7:1, 7:6, 7:13, 7:22, 8:19, 9:2, 9:7, 9:13, 9:15, 9:21, 16:11, 16:20, 20:8, 21:16, 22:22, 24:9, 24:12, 24:15, 24:20, 24:25, 25:5, 25:10,

25:13, 25:23, 28:3, 28:6, 28:9, 28:12, 29:2
Judge [4] - 11:20, 19:22, 28:25, 29:3
judge [1] - 24:4
judgment [1] - 24:11
jurisdictions [1] - 12:12
JUSTICE [1] - 1:7

**K**

Kangadis [2] - 11:12, 11:14
Kansas [1] - 1:17
key [1] - 20:14
kind [4] - 11:11, 14:7, 18:19, 26:25
known [1] - 5:6
knows [1] - 28:8

**L**

largely [1] - 7:5
last [1] - 18:15
late [1] - 23:23
Laura [4] - 1:23, 29:8, 29:12, 29:13
Laurent [1] - 1:19
law [7] - 10:19, 15:10, 15:15, 17:3, 19:23, 26:17, 27:20
laws [1] - 14:21, 15:1
lawyers [1] - 20:24
laying [2] - 14:25, 19:22
lays [1] - 14:7
learned [2] - 22:7, 22:8
least [1] - 20:9
leave [1] - 5:11
LEE [1] - 1:7
legal [1] - 15:12
less [1] - 23:7
level [1] - 11:2
liability [1] - 8:22
lighter [1] - 21:18
likely [4] - 8:17, 8:22, 8:24, 27:17
linchpin [1] - 20:6
line [3] - 10:14, 16:6,

19:4
litigation [1] - 11:4
Littleton [2] - 1:19, 2:12
LLP [2] - 1:12, 1:16
loaded [1] - 28:7
look [3] - 11:16, 25:16, 26:7
looked [8] - 3:11, 3:13, 4:17, 4:18, 4:19, 8:6, 19:6
Louisiana [1] - 1:13
love [1] - 14:19
lump [1] - 26:24

**M**

malfunctioned [1] - 16:4
man [1] - 22:9
Manhattanville [1] - 1:20
manifest [3] - 16:10, 19:9, 27:19
manifested [3] - 14:1, 14:4, 15:19
manifesting [1] - 27:11
manual [7] - 5:22, 6:9, 6:13, 6:16, 6:18, 6:21, 8:8
manufacturer [1] - 20:17
manufacturing [1] - 16:3
Marchese [2] - 1:9, 2:5
MARCHESE [48] - 2:4, 3:15, 3:20, 3:22, 4:2, 4:6, 4:9, 4:21, 4:24, 5:10, 7:14, 7:18, 8:3, 8:9, 8:14, 8:16, 8:25, 10:5, 10:13, 10:23, 10:25, 11:12, 11:14, 11:17, 11:23, 12:1, 12:4, 14:17, 15:3, 15:12, 15:14, 17:16, 17:20, 17:23, 21:12, 21:17, 21:23, 22:1, 22:7, 22:23, 24:1, 24:14, 25:15, 25:17, 25:20, 26:9, 28:16, 28:25
market [1] - 11:10
marketed [1] - 7:21

marketing [7] - 3:9, 3:20, 3:21, 7:4, 8:6, 10:9, 15:17
material [3] - 10:9, 11:1, 13:9
materials [5] - 3:5, 3:20, 3:21, 8:2, 8:7
matter [1] - 29:10
mean [6] - 4:3, 27:14, 27:16, 27:19, 27:24, 27:25
mechanical [6] - 1:25, 25:17, 25:23, 25:24, 26:2, 26:4
meet [1] - 4:14
members [1] - 23:6
merit [1] - 26:21
met [1] - 8:19
might [1] - 15:7
minute [2] - 16:19, 17:20
misfire [1] - 8:10
misleading [1] - 10:21
misrepresented [2] - 21:20, 22:17
Missouri [3] - 1:17, 2:21, 16:7
mixed [1] - 15:15
model [2] - 2:23, 2:24
moment [1] - 12:4
money [1] - 23:7
moot [2] - 23:14, 23:21
most [1] - 2:14
motion [12] - 3:1, 10:15, 17:6, 17:10, 17:11, 18:10, 20:10, 24:6, 24:11, 24:13, 24:14, 28:24
MOTIONS [1] - 1:6
motions [1] - 17:8
Motors [1] - 17:24
MR [118] - 2:4, 2:6, 2:8, 2:11, 2:20, 2:24, 3:15, 3:20, 3:22, 4:2, 4:6, 4:9, 4:21, 4:24, 5:10, 5:16, 5:19, 6:5, 6:7, 6:11, 6:15, 6:18, 6:21, 7:1, 7:6, 7:13, 7:14, 7:18, 7:22, 8:3, 8:9, 8:14, 8:16, 8:19, 8:25, 9:2, 9:7, 9:10, 9:13,

9:15, 9:21, 10:5, 10:13, 10:23, 10:25, 11:12, 11:14, 11:17, 11:23, 12:1, 12:4, 12:10, 12:23, 13:3, 13:6, 13:18, 13:25, 14:17, 15:3, 15:12, 15:14, 16:11, 16:20, 17:9, 17:16, 17:20, 17:23, 18:2, 18:5, 18:8, 18:22, 19:3, 19:13, 19:15, 19:19, 20:8, 21:2, 21:12, 21:16, 21:17, 21:23, 22:1, 22:7, 22:22, 22:23, 23:25, 24:1, 24:9, 24:12, 24:13, 24:14, 24:15, 24:20, 24:25, 25:5, 25:10, 25:12, 25:13, 25:15, 25:17, 25:20, 25:23, 26:9, 26:11, 27:12, 27:18, 27:21, 28:1, 28:3, 28:6, 28:9, 28:12, 28:16, 28:17, 28:25, 29:1, 29:2, 29:3
multi [1] - 14:23
multi-state [1] - 14:23

**N**

name [1] - 11:18
nascent [1] - 11:3
nationwide [2] - 10:17, 18:13
nature [2] - 22:17, 26:21
need [4] - 3:24, 7:14, 10:7, 11:3
never [3] - 16:4, 16:15, 21:19
New [4] - 1:10, 1:21, 11:20
nice [1] - 19:22
nicely [1] - 21:4
niches [1] - 19:10
nothing [5] - 15:3, 22:20, 24:15, 24:17, 24:21
notice [4] - 21:19, 22:16, 26:15, 26:16
noticed [1] - 7:24
nuanced [1] - 19:5
number [2] - 15:24, 27:16

numerous [1] - 27:7

**O**

occur [2] - 14:13
occurred [2] - 14:10, 20:25
OF [1] - 1:1
offered [1] - 21:6
Omni [1] - 12:18
ON [1] - 1:6
once [1] - 10:13
one [16] - 8:24, 9:23, 12:16, 12:24, 13:21, 16:5, 18:3, 18:5, 18:8, 18:9, 19:10, 20:4, 20:5, 21:2, 22:5, 24:1
opinion [1] - 28:19
opportunity [4] - 14:19, 22:6, 22:12, 22:14
opposed [1] - 17:7
opposition [1] - 10:16
ordinary [7] - 28:4, 28:5, 28:6, 28:11, 28:12, 28:13
originally [2] - 15:22, 22:19
out-of-battery [8] - 16:12, 16:16, 16:21, 25:2, 25:21, 26:1, 26:3
outlined [1] - 12:19
outraged [1] - 22:10
outside [1] - 9:5
overcome [1] - 17:4
overrun [1] - 21:1

**P**

P.A [1] - 1:9
p.m [1] - 29:5
P.M [2] - 1:4
P320 [7] - 8:7, 15:24, 16:6, 24:4, 25:1, 25:24, 25:25
P320s [1] - 22:24
Pages [1] - 21:4
paid [1] - 23:2
papers [1] - 2:21
Paragraph [3] - 3:16,

4:25, 9:10
Park [2] - 1:19, 2:12
Parker [1] - 12:18
part [1] - 9:9
particular [4] - 6:4, 6:8, 9:3, 13:8
particularity [1] - 6:2
pending [2] - 2:21, 3:1
people [2] - 22:13, 22:14
performance [3] - 10:8, 11:1, 15:16
permissible [1] - 2:17
pervasive [2] - 10:8, 11:2
physically [1] - 6:23
picture [1] - 5:23
piece [2] - 26:15, 26:23
pistol [3] - 5:22, 14:3, 15:22
PLAINTIFF [1] - 1:8
plaintiff [22] - 2:5, 2:7, 3:3, 4:3, 5:2, 5:17, 7:24, 9:17, 14:2, 16:24, 18:19, 18:21, 19:7, 20:10, 20:14, 20:21, 21:3, 21:5, 23:1, 23:6, 23:8, 27:3
plaintiff's [1] - 23:22
plaintiffs [5] - 16:14, 16:18, 16:22, 20:13, 21:7
plaintiffs' [1] - 20:23
plausible [4] - 5:25, 6:5, 6:7, 6:9
pleading [8] - 4:11, 4:12, 4:16, 7:22, 7:23, 9:8, 14:18, 24:7
pleadings [3] - 9:5, 26:13, 28:22
point [8] - 7:7, 7:9, 21:3, 23:5, 24:1, 27:2, 27:25, 28:10
points [2] - 21:11, 26:11
poison [1] - 20:1
position [1] - 14:3
possible [1] - 28:20
post [2] - 26:18, 26:20
post-sale [2] - 26:18, 26:20

potential [2] - 16:9, 25:20

potentially [1] - 27:7

Practices [3] - 4:10, 10:20

pre [1] - 9:23

precisely [2] - 4:17, 4:18

precludes [2] - 15:1, 15:3

prejudging [1] - 28:20

present [2] - 14:9, 16:5

presumed [3] - 11:2, 11:6, 11:7

presumption [7] - 11:8, 11:9, 13:4, 13:7, 13:8, 13:12, 13:13

pretty [1] - 26:19

primarily [1] - 27:1

problem [2] - 16:9, 16:16, 16:21

problems [1] - 17:4

proceed [1] - 19:7

Proceedings [2] - 1:25, 29:5

proceedings [1] - 29:9

PROCEEDINGS [1] - 2:1

produced [1] - 1:25

product [12] - 5:22, 14:1, 16:10, 19:8, 20:11, 20:12, 20:16, 20:18, 27:4, 27:15

program [13] - 9:20, 16:15, 16:23, 18:17, 21:13, 21:19, 22:16, 22:18, 23:14, 23:17, 23:20, 23:22, 24:5

promises [1] - 9:25

prone [1] - 8:16

proper [1] - 10:4

proposed [1] - 2:17

provide [2] - 14:20, 26:16

provided [4] - 6:13, 6:15, 6:23, 21:19

pull [1] - 5:20

punitive [3] - 23:6, 23:15, 24:3

Purchase [1] - 1:21

purchase [13] - 5:3, 5:4, 6:15, 6:17, 6:19, 7:17, 8:4, 8:8, 9:23, 10:12, 23:5, 23:8, 27:4

purchased [3] - 4:19, 5:5, 6:14

purchaser [1] - 9:18

pursue [1] - 23:7

put [2] - 27:8, 28:14

**Q**

questions [3] - 3:3, 12:22, 18:15

quickly [1] - 28:20

quintessential [1] - 23:4

quote [1] - 3:18

quote-unquote [1] - 3:18

**R**

raised [4] - 10:2, 18:10, 26:12, 28:23

raises [3] - 12:22, 13:1, 13:21

reach [2] - 22:12, 22:14

real [2] - 18:3, 18:5

really [5] - 10:6, 19:22, 20:6, 23:19, 28:10

reason [1] - 15:1

received [1] - 23:7

record [2] - 23:19, 29:9

recorded [1] - 1:25

references [1] - 3:9

referring [1] - 5:21

registered [1] - 22:13

related [2] - 16:3, 24:24

relates [1] - 24:20

relationship [1] - 4:19

relatively [1] - 11:7

reliance [13] - 9:24, 10:3, 10:11, 10:18, 10:22, 11:2, 11:6, 11:10, 12:8, 12:12, 12:17, 12:25, 13:16

relied [2] - 5:4, 5:17

relief [1] - 23:18

rely [2] - 19:1, 27:1

remedies [1] - 23:15

remember [1] - 11:18

remembers [2] - 5:2, 8:4

repair [2] - 21:7

Reporter [1] - 1:22

REPORTER'S [1] - 29:7

representation [1] - 3:19

representations [4] - 3:6, 3:17, 9:24, 10:1

represented [1] - 23:2

require [2] - 4:15, 10:21

required [4] - 9:24, 12:12, 12:18, 26:17

requirement [2] - 4:1, 6:2

requirements [1] - 20:19

respect [6] - 4:2, 4:13, 6:2, 14:20, 15:8, 15:19

respectfully [1] - 4:13

respond [1] - 14:16

response [1] - 23:23

rest [1] - 9:25

result [2] - 22:20, 22:23

retrofit [1] - 26:20

return [1] - 20:15

revealed [1] - 9:11

reviewed [3] - 3:8, 7:24, 8:3

reviewing [2] - 3:4, 5:2

Reynolds [2] - 1:12, 2:6

ridiculous [1] - 19:24

rife [1] - 24:5

rights [1] - 23:12

RMR [2] - 1:23, 29:13

Road [1] - 1:20

Rob [1] - 2:11

Robert [1] - 1:19

room [1] - 9:15

Rosa [2] - 13:19, 17:10

ROSENTHAL [1] - 1:7

RPR [1] - 1:23

Rule [1] - 4:12

Rusk [1] - 1:23

**S**

safe [4] - 3:18, 5:3, 22:19, 23:3

Safety [3] - 3:8, 5:14, 7:4

safety [12] - 5:14, 5:18, 8:20, 9:4, 9:16, 15:17, 20:19, 21:18, 22:11, 22:12, 22:20, 23:10

sale [7] - 7:7, 14:10, 26:18, 26:20, 27:2

SAUER [1] - 1:5

Sauer [5] - 2:3, 2:9, 2:12, 5:13, 14:24

seatbelts [1] - 16:4

Second [1] - 11:25

second [1] - 12:25

secondly [1] - 16:14

securities [1] - 11:9

see [2] - 26:8, 28:22

set [2] - 18:15, 23:18

Seventh [1] - 1:10

Shook [1] - 1:16

shot [1] - 15:24

side [1] - 17:7

SIG [17] - 1:5, 2:2, 2:9, 2:12, 5:13, 14:24, 15:17, 20:15, 21:17, 21:19, 22:12, 22:13, 22:15, 23:18, 25:2, 25:5

simply [1] - 23:16

single [2] - 12:13, 27:25

situation [3] - 14:8, 16:2, 20:3

situations [1] - 20:12

six [1] - 21:14

slightly [2] - 7:3, 19:5

small [1] - 19:10

Smith [1] - 19:22

so-called [1] - 21:13

sometimes [2] - 21:14, 22:18

Sorry [1] - 11:13

sorry [5] - 17:21, 18:4,

19:13, 20:4, 24:1
**sort** [1] - 8:2
**Sotto** [1] - 17:22
**SOUTHERN** [1] - 1:1
**Southern** [1] - 11:19
**speaking** [1] - 15:5
**specific** [3] - 3:12, 3:17, 5:1
**specifically** [1] - 5:22
**spelled** [1] - 12:11
**stage** [10] - 2:25, 11:4, 14:18, 14:20, 15:6, 17:7, 17:11, 17:15, 18:10, 24:7
**standard** [6] - 4:12, 4:14, 4:16, 8:20, 20:22
**standards** [2] - 9:4, 20:20
**standing** [10] - 3:22, 12:4, 13:21, 13:23, 14:15, 18:23, 20:1, 20:7, 23:2, 26:23
**start** [1] - 11:21
**started** [1] - 3:10
**state** [11] - 2:3, 5:2, 12:13, 12:20, 12:21, 13:7, 14:21, 14:23, 14:25, 15:10, 17:3
**statement** [5] - 5:17, 6:10, 8:18, 13:8, 27:3
**statements** [5] - 3:12, 4:18, 6:25, 10:11, 10:21
**states** [5] - 5:5, 10:18, 12:16, 12:25, 17:5
**States** [1] - 20:20
**STATES** [1] - 1:1
**stating** [1] - 22:18
**stenography** [1] - 1:25
**still** [1] - 22:24
**stop** [1] - 20:11
**stopped** [3] - 19:8, 19:17, 23:10
**straight** [1] - 23:19
**Street** [1] - 1:23
**streets** [1] - 22:25
**stuff** [1] - 3:13
**subclassing** [1] - 17:3
**subject** [3] - 3:1, 15:25,

25:14
**submitted** [1] - 22:14
**suffered** [1] - 23:4
**sufficient** [1] - 4:25
**Suite** [3] - 1:13, 1:20, 1:23
**summary** [1] - 24:11
**Supp** [1] - 12:19
**supposed** [1] - 26:16
**Supreme** [1] - 14:6
**survey** [1] - 14:21
**sweep** [1] - 20:24
**switch** [1] - 7:2

## T

**talks** [1] - 12:17
**tendency** [1] - 8:13
**tested** [1] - 9:3
**testing** [1] - 9:11
**TEXAS** [1] - 1:1
**Texas** [10] - 1:14, 1:24, 4:9, 10:20, 11:21, 12:16, 13:14, 13:15, 14:6, 26:19
**THE** [98] - 1:7, 1:8, 1:15, 2:2, 2:10, 2:13, 2:23, 3:2, 3:19, 3:21, 3:24, 4:5, 4:8, 4:15, 4:23, 5:8, 5:13, 5:18, 6:4, 6:6, 6:9, 6:13, 6:17, 6:20, 6:24, 7:2, 7:11, 7:16, 7:20, 8:1, 8:6, 8:13, 8:15, 8:17, 8:21, 9:5, 9:9, 9:11, 9:14, 9:19, 9:22, 10:10, 10:19, 10:24, 11:5, 11:13, 11:16, 11:21, 11:24, 12:2, 12:6, 12:22, 12:24, 13:5, 13:15, 13:20, 14:16, 14:24, 15:9, 15:13, 16:19, 17:1, 17:13, 17:19, 17:25, 18:4, 18:7, 18:15, 18:24, 19:12, 19:14, 19:18, 21:10, 21:21, 21:24, 22:3, 23:24, 24:11, 24:18, 24:23, 25:4, 25:7, 25:11, 25:16, 25:19, 25:22, 26:7, 26:10, 27:10, 27:14, 27:19, 27:24, 28:5, 28:8, 28:10, 28:14,

28:18, 29:4
**theory** [2] - 8:22, 19:7
**thousands** [2] - 22:21, 22:24
**tie** [1] - 3:7
**tighter** [1] - 28:22
**today** [1] - 3:22
**together** [1] - 3:7
**track** [1] - 17:12
**Trade** [2] - 4:10, 10:20
**transcript** [1] - 29:9
**Transcript** [1] - 1:25
**transcription** [1] - 1:25
**treatment** [1] - 13:16
**trebling** [1] - 23:15
**trigger** [2] - 5:20, 21:18
**true** [2] - 5:6, 21:16
**try** [1] - 28:19
**trying** [1] - 26:24
**two** [1] - 12:22
**type** [4] - 12:13, 14:14, 24:3, 27:9

## U

**U.S** [2] - 8:20, 9:4
**under** [3] - 9:4, 20:15, 26:19
**undermines** [3] - 18:17, 18:18, 19:1
**understood** [2] - 3:4, 3:13
**undetermined** [1] - 7:9
**unduly** [1] - 8:16
**uniformly** [1] - 27:3
**unit** [1] - 15:21
**United** [1] - 20:20
**UNITED** [1] - 1:1
**units** [1] - 16:6
**unjust** [2] - 4:6, 12:19
**unless** [1] - 5:20
**unquote** [1] - 3:18
**unrelated** [2] - 2:22, 13:2
**unsafe** [1] - 20:12
**unspecified** [1] - 3:5

**up** [3] - 2:3, 24:2, 25:8
**upgrade** [19] - 9:17, 9:19, 16:15, 16:23, 18:16, 20:5, 21:13, 22:16, 22:19, 23:13, 23:16, 23:20, 23:22, 24:5, 24:16, 24:18, 25:5, 25:8
**USA** [1] - 12:18
**users** [1] - 15:24

## V

**valid** [1] - 20:9
**variability** [3] - 13:2, 15:10, 17:4
**variations** [3] - 12:24, 14:25, 17:4
**variety** [3] - 4:3, 20:16, 20:22
**various** [2] - 12:24, 14:25
**voce** [1] - 17:22
**Volume** [2] - 1:7
**voluntary** [17] - 9:19, 16:23, 18:16, 21:13, 22:16, 23:13, 23:16, 23:20, 24:5, 24:16, 24:18, 24:24, 24:25, 25:4, 25:5, 25:8
**vulnerability** [1] - 9:3

## W

**wait** [4] - 16:19, 17:14, 24:23
**waiting** [1] - 17:7
**wants** [1] - 23:18
**warn** [1] - 26:20
**warning** [3] - 5:23, 6:16, 6:21
**warrantied** [1] - 4:11
**warranties** [1] - 10:1
**warranty** [7] - 4:2, 4:3, 10:17, 12:13, 20:16, 20:22, 22:15
**warranty-type** [1] - 12:13
**weapon** [7] - 4:20, 6:14, 7:21, 8:23, 15:25, 25:18, 27:15
**weapons** [2] - 8:18,

Proceedings

8:23

**website** [10] - 3:23,
5:19, 6:24, 7:5, 7:10,
7:12, 7:17, 7:24, 7:25,
8:1

**week** [1] - 20:17

**weeks** [1] - 21:14

**Wells** [4] - 1:23, 29:8,
29:12, 29:13

**whereas** [2] - 14:2,
14:11

**whole** [1] - 20:6

**wholly** [1] - 18:18

**withstand** [2] - 6:1, 6:2

**word** [2] - 9:1, 13:12

## Y

**year** [1] - 7:20

**years** [1] - 5:13

**York** [4] - 1:10, 1:21,
11:20