United States District Court
Southern District of Texas
**ENTERED**
October 16, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANTE GORDON, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-19-585 |
| SIG SAUER, INC., | § § § | |
| Defendant. | § § § | |

**MEMORANDUM AND ORDER GRANTING THE DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

This is a putative class action involving an alleged drop-fire defect in the SIG P320 pistol manufactured by Sig Sauer, Inc. Over the past year and a half, Sig Sauer has filed multiple motions to dismiss Gordon's lawsuit. Each time, Gordon has narrowed his allegations. After the last order granting in part and denying in part Sig Sauer's second motion to dismiss, Gordon filed a third amended complaint. (Docket Entry No. 55). In this complaint, Gordon asserts breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, fraud by nondisclosure, and Texas Deceptive Trade Practices Act claims against Sig Sauer. (*Id.* at ¶¶ 68–112). Gordon brings these claims individually and all but the express warranty claim on behalf of a class.[1] Gordon defines the class as "all persons in the State of Texas who purchased a SIG P320 semi-automatic pistol in the United States prior to January 1, 2018, in either the full or compact versions." (*Id.* at ¶ 62).

---

[1] While Gordon asserted a class claim for breach of express warranty within his third amended complaint, he has since withdrawn the claim.

In June 2020, a federal district court in the Western District of Missouri granted final approval of a class action settlement of the following class:

> Category I Settlement Class: All current owners of a P320 Original Design Pistol whose pistols have not previously experienced a Cartridge Failure Event.[2]
>
> Category II Settlement Class: All individuals who previously returned their P320 Pistol to SIG Sauer after experiencing a Cartridge Failure Event and were told that their pistol could not be repaired.
>
> Category III Settlement Class: All individuals who previously returned their P320 Pistol to SIG Sauer after experiencing a Cartridge Failure Event and were charged any amount, including shipping costs, for the repair and return of the pistol. Excluded from the Settlement Classes are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental and law enforcement agency purchasers; (d) Sig Sauer, Inc. and any of its employees, parents, subsidiaries and affiliates.

*Hartley v. Sig Sauer, Inc.*, No. 4:18-CV-00267-SRB, 2020 WL 3473652, at *3 (W.D. Mo. June 25, 2020).

The court entered a final judgment that included the following provision:

> The Settlement Class Members shall be enjoined from prosecuting any claim they have released in the Settlement Agreement and as set forth in the preceding paragraphs in any proceeding against any of the Released Persons or based on any actions taken by any of the Released Persons that are authorized or required by the Settlement Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to the releases set forth in the Settlement Agreement and this Final Judgment.

---

[2] The class action settlement approved by the final judgment defined the term as follows: "'Cartridge Failure Event' means a P320 pistol that has sustained damage caused by a ruptured cartridge; the type of damage caused by a Cartridge Failure Event includes a blown-out extractor and/or cracking or other damage to the grip module and/or frame of the pistol." *Hartley v. Sig Sauer, Inc.*, No. 4:18-cv-00267, Docket Entry No. 58 at 28.

*Id.* at *5. Gordon has not informed the court of the effect of the approved nationwide class settlement on either his claims or any class claims. He must do so, in writing, no later than October 30, 2020.

Subject to that settlement, the pending motion for partial dismissal is ripe. Gordon repleads his fraud-by-nondisclosure claim by alleging that Sig Sauer knew of the drop-fire defect by early 2014, during premanufacture testing, giving rise to a duty to disclose the defect under Texas law, which it breached. (*Id.* at ¶¶ 91–100).

After Gordon filed this third amended complaint, Sig Sauer filed its third motion to dismiss, arguing that Gordon's fraud-by-nondisclosure claim should be dismissed because Sig Sauer did not have a duty to disclose the alleged defects and, even if it did, Gordon failed to adequately allege that Sig Sauer knew of the alleged defects when Gordon purchased his P230 pistol. Gordon counters that Sig Sauer did have a duty to disclose the alleged defects and that Sig Sauer's premanufacture testing revealed the drop-fire defect before any consumers purchased the P320 pistol.

Because Gordon's third amended complaint does not meet Rule 9(b)'s heightened pleading standard for fraud claims, Gordon's individual and class claims for fraud-by-nondisclosure are dismissed. Further amendment would be futile, so the dismissal is with prejudice. The reasons for this ruling are set out below.

I. **Background**

The facts contained in this memorandum and order are taken from the well-pleaded allegations in Gordon's third amended complaint and accepted as true for the purpose of Sig Sauer's motion to dismiss. *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Because the facts have already been described in the earlier

motions to dismiss, this opinion focuses on the new details alleged in the third amended complaint as they relate to Gordon's fraud-by-nondisclosure claims. (Docket Entry No. 55); *see generally Gordon v. Sig Sauer, Inc.*, No. 4:19-cv-585, 2020 WL 4783186, at *2–3 (S.D. Tex. April 20, 2020); *Gordon v. Sig Sauer, Inc.*, No. 19-cv-585, 2019 WL 4572799, at *2–4 (S.D. Tex. Sept. 20, 2019).

Sig Sauer, a Delaware corporation with its principal place of business in Portsmouth, New Hampshire, designed and manufactured the SIG P320 semiautomatic pistol. (Docket Entry No. 55 at ¶¶ 1, 19). Law-enforcement officials, private civilians, and the U.S. military use the P320. (*Id.* at ¶ 3).

Dante Gordon is a Texas citizen who purchased a P320 pistol from a retailer in September 2014. (*Id.* at ¶13). Before making his purchase, Gordon visited Sig Sauer's website, where he read that the P320 "is the most operator focused striker duty pistol on the market today," and that "the P320 provides an enhanced level of safety not found in most modern service pistols." (*Id.* at ¶ 14). Gordon also watched a promotional video that claimed the P320 was "drop safe" and that "[a] striker safety prevents the striker from releasing unless the trigger is pulled." (*Id.*). Gordon also read statements on Sig Sauer's website claiming that "the P320 won't fire unless you want it to." (*Id.*) Gordon understood these claims as representations and warranties, relying on them before he decided to purchase his P320 in September 2014. (*Id.* at ¶16).

Gordon now asserts that before creating these videos, Sig Sauer knew that the P320 had a design defect from the internal premanufacture testing completed before the gun was marketed beginning in mid-2014. (*Id.* at ¶ 9). "Accordingly, SIG knew about the drop fire

4

design defect before it sold a single pistol, including the unit it sold to Plaintiff Gordon in September 2014." (*Id.*).

The first public discovery of the design defect occurred in 2016. That year, the military discovered, through its own internal testing, that the P320 is susceptible to a drop fire "deficiency." (*Id.* at ¶ 28). Sig Sauer modified the trigger mechanism only on military-issue P320 pistols. (*Id.* at ¶¶ 29–30). Because Sig Sauer only offered the modification to the military, civilians replicated the drop-fire incidents with their own testing protocols, including the Houston Police Department. (*Id.* at ¶¶ 31–32).

Sig Sauer did not implement an upgrade program for civilian pistols until 2017. (*Id.* at ¶¶ 9, 46–47). At least three police officers have been injured by the P320 after drop fire incidents. (*Id.* at ¶¶ 38–41). All these incidents occurred in 2017 and 2018, long after Gordon purchased his P320. (*Id.*).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Claims may be dismissed under Rule 12(b)(6) if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

5

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

For fraud claims, Federal Rule of Civil Procedure 9(b) requires plaintiffs "to plead enough facts to illustrate 'the "who, what, when, where and how" of the alleged fraud.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)); *see also Heck v. Orion Grp. Holdings Inc.*, __ F. Supp. 3d __, 2020 WL 3403111, at *9 (S.D. Tex. June 19, 2020) (quoting *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) ("Pleading fraud with particularity in this circuit requires 'the particulars of time, place, and contents of the false representations.") (internal quotations omitted). "'In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *Carroll*, 470 F.3d at 1174 (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)). "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

A court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice for a factual pleading insufficiency. Dismissal without leave to amend is appropriate when further amendment would be futile. *See Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th

Cir. 2012) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend.") (quotation omitted).

### III. Fraud By Nondisclosure

Sig Sauer argues that Gordon's fraud-by-nondisclosure claim should be dismissed because Gordon has no confidential or fiduciary relationship with Sig Sauer or other basis for finding a duty to disclose. Sig Sauer argues Gordon's complaint does not show that it knew of the alleged design defect in the P320 pistols before Gordon purchased his pistol in September 2014. Gordon counters that he has adequately pleaded a claim for fraud by nondisclosure based on the allegation that Sig Sauer knew of the drop-fire defect from the premanufacture testing it conducted before September 2014. Gordon also argues that a duty to disclose may arise without a special or fiduciary relationship and that Texas does not require privity between parties for a fraud-by-nondisclosure claim.

Each of these arguments is addressed below.

#### A. A Confidential or Fiduciary Relationship

Federal and Texas courts have struggled to formally recognize whether a duty to disclose exists outside a confidential or fiduciary relationship. The RESTATEMENT (SECOND) OF TORTS § 551 recognizes a general duty to disclose in certain business transactions:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about

>to act in reliance upon it in a transaction with him; and (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect disclosure of those facts.

RESTATEMENT (SECOND) OF TORTS § 551 (Am. Law Inst. 1977).

By the time the Texas Supreme Court first addressed § 551 in *Bradford v. Vento*, a few Texas courts of appeals and the Fifth Circuit had already recognized a limited duty to disclose outside a confidential or fiduciary relationship. *See, e.g.*, *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001); *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633 (Tex. App.—San Antonio 1993, writ denied). In *Bradford*, however, the Texas Supreme Court failed to adopt or reject § 551 and instead found the plaintiff's fraud claim insufficient regardless of any duty to disclose. *Bradford v. Vento*, 48 S.W.3d 749, 756 (Tex. 2001) ("We have never adopted section 551. But even if we were to adopt such a general duty, there is no evidence to support the jury's finding under the submitted jury charge." (citations omitted)).

After *Bradford*, courts applying Texas law continued to work on the issue. *See Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 377–78 (5th Cir. 2003) (requiring a fiduciary or confidential relationship to give rise to a duty to disclose); *Travel Music of San Antonio, Inc. v. Douglas*, No. 04-00-00757-CV, 2002 WL 1058527, at *4 (Tex. App.—San Antonio, May 29, 2002) (same); *but see Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) ("[A] duty to speak arises by operation of law when 'one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth.'") (quoting *Rhone-Poulenc, Inc.*, 247 F.3d at 586); *Pellegrini v. Cliffwood-*

*Blue Moon Joint Venture, Inc.*, 115 S.W.3d 577, 580–81 (Tex. App.—Beaumont 2003, no pet.) (recognizing the possibility of a duty to disclose absent a confidential or fiduciary relationship). The Fifth Circuit weighed in a few years later, finding that *Bradford* required some fiduciary or confidential relationship between the plaintiff and the fraudfeasor before imposing a duty to disclose. *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005) ("A reasonable jurist might well conclude, certainly after *Bradford*, that a duty to disclose exists in Texas only in the context of a fiduciary or confidential relationship.").

Recently, the Texas Supreme Court recognized that a duty to disclose may exist absent a confidential or fiduciary relationship if the defendant: "(1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings LLC*, 572 S.W.3d 213, 220 (Tex. 2019); *but see Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562–63 (Tex. 2019) ('[Mercedes] also contends that no basis exists for the application of the four situations identified in section 551 of the RESTATEMENT (SECOND) OF TORTS, a part of the RESTATEMENT that this Court has never expressly adopted."). Texas courts of appeals and federal district courts applying Texas law have recognized a duty to disclose outside a fiduciary or confidential relationship. *See, e.g.*, *ADP, LLC v. Uniloc Luxembourg S.A.*, No. 5:19-CV-00015-RWS, 2020 WL 3163035, at *5 (E.D. Tex. Apr. 1, 2020); *North Presido, LLC v. Lowe's Home Ctrs., LLC*, No. 4:19-CV-222, 2019 WL 3414264, at *6 (N.D. Tex. July 29, 2019); *CLC Roofing, Inc. v. Helzer*, 594 S.W.3d 414, 420–21 (Tex. App.—Fort Worth 2019, no pet.).

Even though the Texas Supreme Court has not formally adopted § 551, recent decisions suggest that a duty to disclose may exist outside a confidential or fiduciary relationship. Sig Sauer contends that *Bradford* conclusively decided the issue. But neither the Texas Supreme Court nor the Fifth Circuit has rejected a duty to disclose absent a confidential or fiduciary relationship. Recent decisions have leaned towards recognizing a duty. *Compare Bradford*, 48 S.W.3d at 756 ("We have never adopted section 551"), *with Bombardier Aerospace*, 572 S.W.3d at 220 (recognizing that "[t]here may also be a duty to disclose" absent a confidential or fiduciary relationship); *see also NuVasive, Inc. v. Renaissance Surgical Ctr. N., L.P.*, 853 F. Supp. 2d 654, 663 (S.D. Tex. 2012) ("A duty to disclose *can* exist absent a fiduciary relationship." (emphasis in original)). Considering the uncertainty surrounding the duty to disclose and trend towards recognizing the duty in broader contexts, Gordon's claim for fraud by nondisclosure is not dismissed at this stage on the basis that he had no confidential or fiduciary relationship with Sig Sauer.

### B. An Arm's-Length Transaction

Sig Sauer also argues that Gordon cannot bring a fraud-by-nondisclosure claim because he purchased his P320 from a gun store and not directly from Sig Sauer. (Docket Entry No. 55 at ¶ 13). Some district courts interpreting Texas law have held that a plaintiff-purchaser cannot bring a fraud claim against a manufacturer if the plaintiff purchased the item from a third-party vendor. *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 453–54 (S.D.N.Y. 2017); *see also McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1353–54 (N.D. Ga. 2015) ("*Bradford* involved *arm's length business transactions* between the parties in which affirmative representations were made but other material information was not disclosed." (emphasis in original)). These cases apparently stem from *Nissan*

10

*Motor Company Limited v. Armstrong*, a products-liability case involving an allegedly faulty accelerator in some Nissan vehicles. 145 S.W.3d 131, 136 (Tex. 2004). In *Armstrong*, the plaintiff's fraud claims were dismissed because she had purchased the allegedly defective vehicle from her parents six years earlier. *Id.* at 149. Because "Nissan had no involvement or pecuniary interest in the transaction," Nissan had no duty to disclose any information it may have known about the faulty accelerator. *Id.* (citing *Formosa Plastics Corp. USA v. Presido Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Apart from *Armstrong*, no Texas cases exhaustively define what types of business transactions give rise to a duty to disclose. *Armstrong* seems to suggest that a duty to disclose may be present if the manufacturer had some pecuniary interest in the transaction. *See id.* The more recent out-of-circuit cases cited by Sig Sauer suggest that a duty only arises in a direct sale between a manufacturer and the plaintiff-purchaser. *See Gen. Motors*, 257 F. Supp. 3d at 454; *McCabe*, 160 F. Supp. 3d at 1353–54.

Gordon argues that Sig Sauer's approach imposes a privity requirement that Texas has already rejected. *Great Plains Trust Co. v. Morgan Stanley Dean Whitter & Co.*, 313 F.3d 305, 323 (5th Cir. 2002); *Ernst & Young v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 579–81 (Tex. 2001). While Texas has rejected a privity requirement to prove the intent element of a fraud claim, *Great Plains Trust*, 313 F.3d at 323, the intent element of fraud is unrelated to the independent issue of whether an arm's-length transaction is a necessary element in a claim that a manufacturer had a duty to disclose that was breached.

To prove fraud-by-misrepresentation in Texas, a plaintiff must allege facts that show that:

> (1) a material misrepresentation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its

11

>truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the plaintiff was injured as a result.

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004). In a fraud-by-nondisclosure claim, the plaintiff can prove the first element "by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teachers*, 414 F.3d at 567. The plaintiff must separately prove all other elements, including intent. *Id*. Texas law does not require privity to prove the intent requirement of fraud. *See Ernst & Young*, 51 S.W.3d at 579–81. Several cases applying Texas law have mentioned that an arm's-length transaction is necessary to prove that a party had a duty to disclose in the first place. *See Bradford*, 48 S.W.3d at 755; *Gen. Motors*, 257 F. Supp. 3d at 454; *McCabe*, 160 F. Supp. 3d at 1353–54; *Admiral Ins. Co. v. Arrowood Indem. Co.*, 471 B.R. 687, 711 (N.D. Tex. 2012); *In re ACM-Tex., Inc.*, 430 B.R. 371, 418 (Bankr. W.D. Tex. 2010); *but see Bombardier Aerospace*, 572 S.W.3d at 220 (acknowledging the possibility of a duty to disclose absent a confidential or fiduciary relationship without mentioning an arm's-length transaction requirement); *Click v. Gen. Motors LLC*, No. 2:18-CV-455, 2020 WL 3118577, at *7 (listing scenarios in which a duty to disclose may arise without an arm's-length transaction).

This ill-defined requirement to-plead an arm's-length transaction may simply require an allegation that the manufacturer had some pecuniary interest in the purchase of the item before a duty to disclose can be imposed. *See Armstrong*, 145 S.W.3d at 149. If so, that requirement would likely be met here because Gordon purchased a new P320 pistol from a gun store, directly increasing the sales of Sig Sauer's new product. (Docket Entry No. 55 at ¶ 13). On the other hand, if an arm's-length transaction requires some direct

connection between the manufacturer and the seller, Gordon's claim would fail because he purchased his gun from a third-party retailer, not from Sig Sauer. (*Id.*).

### C.      Factual Sufficiency

Even if Gordon's relationship to Sig Sauer can support to a fraud-by-nondisclosure claim, Gordon's claim nonetheless fails because he has not alleged facts showing that Sig Sauer had sufficient knowledge of the P320's drop-fire defect before Gordon purchased his pistol. While Rule 9(b) permits a plaintiff to generally allege "conditions of a person's mind," plaintiffs asserting fraud claims must "set forth specific facts that support an inference of fraud" to "plead scienter adequately." *Tuchman*, 14 F.3d at 1068.

Gordon's third amended complaint asserts that Sig Sauer knew of the defect from design testing conducted in "mid-2014," before the pistols were manufactured or sold. (Docket Entry No. 55 at ¶¶ 9, 34).  He does not provide any facts supporting an inference of knowledge. This general assertion insufficient. *See In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 895 (S.D. Tex. 2001) ("Although Rule 9(b) allows scienter to be 'averred generally,' case law requires that 'the plaintiff must set forth specific facts that support an inference of fraud.'").

Gordon cites no cases with similar allegations in which a fraud claim survived a motion to dismiss. Instead, he cites an unpublished district court case assessing the improper joinder of a non-manufacturing seller to a strict liability products lawsuit, not a fraud claim that required the elements of knowledge and intent. *Garcia v. Ford Motor Co.*, No. 1:12-cv-181, 2013 WL 12137090, at *3 (S.D. Tex. May 10, 2013). Indeed, allegations of circumstantial evidence can support a claim that the defendant knew of a defect for some statutory state-law claims, *see id.*, but these statutory claims are not subject to Rule 9(b)'s

heightened pleading standard. Other jurisdictions have rejected fraud claims when the plaintiff's allegations of knowledge hinge on little more than presale testing. *See, e.g.*, *Blissard v. FCA US LLC*, No. 18-cv-02765, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) ("Plaintiffs' allegations regarding testing and records are 'speculative and do [] not suggest how any tests or information could have alerted [defendant] to the defect.'") (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012)); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) ("Regarding the generic allegations of [defendant's] access to 'testing' and 'analysis,' courts have found substantially similar allegations to be insufficient to support an inference that a defendant knew about a design defect at the product's time of sale."); *Grodzitsky v. Am. Honda Motor Corp.*, No. 2:12-cv-1142, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) ("Plaintiffs' generalized assertion that unspecified 'pre-release testing data' and 'aggregate data from Honda dealers' fails to suggest how this information could have informed Defendant of the alleged defect at the time of sale.").

Gordon has not pleaded his fraud claim with the requisite particularity by merely alleging that presale testing in mid-2014 alerted Sig Sauer to the drop-fire defect. Gordon's fraud-by-nondisclosure claim has already been dismissed once without prejudice and with leave to amend. *Gordon*, 2020 WL 4783186, at *11. Because Gordon has failed a second time to plead his claim with particularity, the record shows that further amendment would futile, supporting dismissal with prejudice.

## IV.  Conclusion

Regardless of whether Texas allows fraud-by-nondisclosure claims absent an arm's-length transaction or a confidential or fiduciary relationship, Gordon's claim

14

nonetheless fails because he has not pleaded it with particularity. Gordon's generalized assertions about presale testing do not adequately support a plausible inference that Sig Sauer knew of the P320's design defect before it sold the pistols and Gordon made his purchase. Gordon has now failed to plead his fraud-by-nondisclosure claim twice. Sig Sauer's motion to dismiss Gordon's fraud-by-nondisclosure claim is granted.

SIGNED on October 16, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge