**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

-----------------------------------------------------------------

|  |  |  |
|---|---|---|
| **DAVID HARTLEY and TIMOTHY DELISLE,** individually and on behalf of all others similarly situated, | ) ) ) | Case No. 4:18-cv-00267-HFS |
|  | ) | **SECOND AMENDED CLASS** |
| Plaintiffs, | ) | **ACTION COMPLAINT** |
|  | ) | **JURY TRIAL DEMANDED** |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| **SIG SAUER, Inc.** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

-----------------------------------------------------------------

Plaintiffs David Hartley and Timothy DeLisle ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby bring this action against Defendant Sig Sauer, Inc. ("Sig" or "Defendant"). Plaintiffs' allegations are based upon their own knowledge and belief as to their own acts and upon the investigation of their counsel as to all other matters.

## I.    NATURE OF THE ACTION

1.    This is a class action brought by Plaintiffs on behalf of a proposed class (the "Class") of all consumers who purchased Sig Sauer model P320 pistols (the "Pistols" or "P320").[1]  This case involves Sig Sauer's decision to design and manufacture the Pistols without the inclusion of an important safety item known as a disconnector safety.  Sig's failure to include

---

[1] This lawsuit does not in any way challenge or seek to infringe upon those rights established in the Second Amendment of the United States Constitution.

a disconnector safety renders the design of the Pistols both defective and unsafe because the Pistols may fire out-of-battery,[2] creating a dangerous and potentially lethal safety issue.

2.      Despite the lack of a disconnector safety, Sig has made numerous representations that the Pistols are safe and exceed all US safety standards.  Sig, however, has failed to disclose in any representation that the Pistols are manufactured and sold without a disconnector safety.

3.      As background, Sig traditionally manufactured and designed hammer-fired pistols (described in more detail below).  The Pistols, however, were Sig's first attempts at designing a striker-fired pistol.  Unlike a hammer-fired pistol, in a striker-fired pistol an internal striker is cocked when the slide of the pistol is racked.  On a typical striker, the only way to de-cock the pistol is to pull the trigger.

4.      Shortly after the Pistols were released, consumers began complaining that the Pistols could unintentionally fire under certain conditions, including when dropped.

5.      In August of 2017, Sig issued a "voluntary upgrade" to address the Pistols' propensity to unintentionally fire when dropped.  Sig, however, failed to disclose that the Pistols were plagued with additional problems.  For instance, because the Pistols did not have a disconnector safety, the Pistols could fire out-of-battery, a serious safety concern potentially leading to catastrophic failures and injuries.  Instead of disclosing the lack of a disconnector safety, Sig touted the safety of the Pistols as originally designed:

---

[2] "Firing out-of-battery" means that the explosion that occurs inside the chamber of the gun, when the hammer or striker hits it, is not properly contained within the firearm.  Instead of containing the energy from the explosion and using it to project the bullet from the end of the barrel, the firearm defect allows the explosion to expand in a non-forward or uncontrolled direction, potentially causing damage to the firearm or the shooter.  A disconnector safety prevents a firearm from firing when the explosion cannot be properly contained and controlled.

- 2 -

**Is my P320 safe in its current configuration?**
Yes. The P320 meets and exceeds all US safety standards. However, mechanical safeties are designed to augment, not replace safe handling practices. Careless and improper handling of any firearm can result in an unintentional discharge.

6.     Because of Defendant's failure to disclose material facts to Plaintiffs and the Class, Plaintiffs seek recovery for Defendant's violations of the federal Magnuson-Moss Warranty Act, the Missouri Merchandising Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, additional state consumer protection statutes, and under common law.

## II.     THE PARTIES

**Plaintiff Hartley**

7.     Plaintiff David Hartley is a citizen and resident of the State of Missouri.  Plaintiff Hartley is both a firefighter and a paramedic.

8.     In or around August of 2015, Plaintiff Hartley purchased a Sig model P320 pistol from MTC Gun in Lone Jack, Missouri for approximately $450.00.  The pistol was new when purchased and was sold with Defendant's warranty that provided, *inter alia*, the Pistol was "originally manufactured free of defects in material, workmanship and mechanical function."

9.     Plaintiff Hartley purchased his Pistol for personal use and still owns the Pistol.

10.     In its original condition, Plaintiff Hartley's Pistol did not contain a disconnector safety.  Plaintiff's pistol has the potential to fire when out of battery and the firing pin will fall with sufficient force to ignite a cartridge when the Pistol is out of battery.

11.     At the time of the purchase, Plaintiff Hartley was unaware, and in the exercise of reasonable diligence could not have discovered, that his Pistol could not operate safely and could

- 3 -

fire out-of-battery due to a lack of a disconnector safety.

12.    Plaintiff Hartley would not have purchased the Pistol, or would have paid substantially less for it, had the defective nature of the Pistol been publicly disclosed and/or publicly confirmed by Defendant prior to the time of purchase.

13.    None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff that his Pistol could not operate safely and could fire out-of-battery due to a lack of a disconnector safety prior to purchase.

**Plaintiff DeLisle**

14.    Plaintiff Tim DeLisle is a citizen and resident of the State of Illinois.

15.    On or about March 17, 2017, Plaintiff DeLisle purchased a new Sig model P320 pistol from Shoot Point Blank of Mokena, Illinois for $649.99.  The pistol was new when purchased and was sold with Defendant's warranty that provided, *inter alia*, the Pistol was "originally manufactured free of defects in material, workmanship and mechanical function."

16.    Plaintiff DeLisle purchased his Pistol for personal use and still owns the Pistol.

17.    In its original condition, Plaintiff DeLisle's Pistol did not contain a disconnector safety.

18.    At the time of the purchase, Mr. DeLisle was unaware, and in the exercise of reasonable diligence could not have discovered, that his Pistol could not operate safely and could fire out-of-battery due to a lack of a disconnector safety.

19.    In or around early April 2017, Plaintiff DeLisle was shooting his Pistol when it experienced an out-of-battery event, catastrophically failing and requiring repair.

20.    Plaintiff DeLisle returned the Pistol to Defendant Sig, putting them on notice regarding the out-of-battery event, and specifically told them the cartridge was not fully in

- 4 -

battery when his out-of-battery event occurred.

21.     The out-of-battery event experienced by Plaintiff DeLisle occurred on, by his recollection, the sixteenth cartridge fired through his Pistol.  When the event occurred, Plaintiff was using factory ammunition.[3]

22.     DeLisle presented his pistol to Defendant for warranty repairs.  Rather than acknowledge the issue and honor their warranty, Sig falsely blamed the ammunition in his Pistol and charged him $280 to repair the firearm.  Sig did not fit the pistol for a disconnector safety at that time.

23.     In December of 2017, Plaintiff DeLisle again experienced an out-of-battery event. With his total round count through the pistol since new being approximately 170 rounds, and while continuing to use only factory ammunition, the gun again discharged while not in battery.

24.     Substantial damage was done to the pistol and when Plaintiff DeLisle notified Sig about the issues he was again told the ammunition was to blame.  He was instructed to send the pistol back to Sig for repairs and an upgrade.  Having paid for this once before, Plaintiff DeLisle declined and instead has kept possession of the damaged Pistol in its inoperable condition.

25.     Plaintiff DeLisle would not have purchased the Pistol, or would have paid substantially less for it, had the defective nature of the Pistol been publicly disclosed and/or publicly confirmed by Defendant prior to the time of purchase.

26.     None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff that his Pistol could not operate safely and could fire out-of-battery due to a

---

[3] "Factory ammunition" means ammunition that was manufactured in a factory for commercial resale, as opposed to ammunition that was reloaded by a consumer.  The terms "cartridge" or "ammunition" refer to the whole component comprised of cartridge casing (also called the "brass"), propellant (also called the "powder"), primer, and bullet.

lack of a disconnector safety prior to purchase.

**Defendant Sig Sauer**

27.     Defendant Sig Sauer, Inc. designs, manufactures, and markets firearms, including the Pistols, and firearms accessories.

28.     Defendant Sig Sauer, Inc. is a Delaware Corporation with a principal place of business is 72 Pease Boulevard, Newington, New Hampshire 03801.  Sig Sauer, Inc. may be served in Missouri through its registered agent for service: Cogency Global Inc., 222 E. Dunklin, Suite 102, Jefferson City, MO 65101.

### III.      JURISDICTION AND VENUE

29.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

30.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims herein arise in part out of violations of federal law.

31.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c), because: (i) Defendant is actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) Defendant transact business in the State and in the District based on its sales with residents of the District; (iii) upon information and belief Defendant has committed unlawful acts in the District by and through its sales and/or finance practices with residents of

this District, and (iv) a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.    FACTS COMMON TO ALL CLAIMS

### A.    Sig's Model P320 Pistols

33.    The Sig family of companies designs and manufactures both military and civilian firearms.  Currently Sig claims that about one-third of police forces in the United States use Sig's firearms.

34.    Until recently, Sig primarily designed and manufactured only hammer-fired pistols.  Hammer-fired pistols rely upon the falling of an internal or external hammer to impact the firing pin or transfer bar.

35.    In Sig's hammer-fired pistols, a disconnector safety stops the pistol from being able to fire out-of-battery.  Modern semi-automatic pistols include a single fixed firing chamber that is integral to the rear of the barrel, as well as, a combination of parts that allow for the firearm to lock prior to the cartridge being fired, and a feeding device (*e.g.*, a magazine) that allows for a new round to be placed in the chamber at the end of the firing cycle.

36.    There is a cycle of operations that occur when placing a cartridge into a firearm and then proceeding to firing it.  In a modern semi-automatic pistol this will encompass: feeding (stripping a cartridge from a magazine and starting it into the chamber); chambering (fully placing the cartridge into the barrel chamber); locking (chambering the cartridge and mechanically locking the pistol in place); firing (striking and discharging the cartridge, causing the  bullet to leave the end of the barrel); unlocking (gas expansion causing the slide to unlock after the bullet has exited and pressure has dropped); extraction (the slide continuing to recoil rearward the extractor causes the cartridge casing to travel back with the breechface); ejection

- 7 -

(slide continuing rearward, until casing hits the ejector and is expelled from the gun) and cocking (cocking the hammer or striker for the cycle of operations to begin again).

37.     The firing of any firearm is, in simplest form, a controlled explosion.  A properly functioning firearm contains this explosion with minimal risk to the end user.   In a modern handgun, using common centerfire cartridges, the gun is locked or "in battery" until pressure from the contained explosion dissipates and the bullet exits the barrel.  Only after this pressure drops does the firearm unlock and the rest of the cycle of operations occur.

38.     Below is a diagram of a typical handgun cartridge and its components.



39.     During the firing sequence the striker will cause the firing pin to hit the primer of the cartridge.   This sequence ignites the powder and causes a controlled explosion inside the chamber of the pistol.  At first, the pressure within the chamber is very high causing the bullet to travel down the barrel.  As it travels, the pressure begins to drop, and, when the bullet exits, the barrel's chamber pressure will quickly approach zero.  Initially, the firing pressure starts out in the multi-thousand pounds per square inch range and falls off rapidly until the bullet exits the barrel.  An exemplar diagram (for a pistol with a 5.5-inch barrel) can be seen below.

- 8 -



40.     Preventing the pistol from becoming unlocked, especially at a time when the chamber pressure is dangerously high, is essential for user safety.  As a result, a properly designed firearm will ensure that it can only fire while in battery.

41.     To ensure that a pistol will not fire out-of-battery, a disconnector safety breaks the direct connection between the trigger and the sear.  The sear is the last point of contact between the firing mechanism (in this case a striker) and the firearm discharging.  The disconnector safety functions by making it physically impossible to fire the pistol unless the slide and barrel are in a proper locked position.

42.     As discussed above, the disconnector safety also functions as a safety feature in that it prevents the gun from being fired out-of-battery.  A diagram of the disconnector mechanism in a hammer-fired pistol made by Sig is included below:

- 9 -

Disconnector Operation (Automatic Interruption of Trigger Function)

1. Upon firing - the blowback reaction thrusts the slide and barrel rearward. The slide disconnects the trigger bar from the safety lever, which allows the firing pin and firing pin safety lock to reset to the locked position, as well as releasing the sear. The sear, under pressure of the sear spring, returns to its initial position and arrests the hammer as the slide goes forward. In order to fire the next shot, the trigger must be released to allow the trigger bar and safety lever to engage.

2. Incomplete locking - if the slide does not fully return into battery due to a weapon, magazine or ammunition malfunction, the connection between the firing pin safety lock and safety lever is not made. Therefore, the safety lock remains engaged, blocking the firing pin. In this disconnected state, the slide also cams down the trigger bar and effectively interrupts subsequent trigger functions.



**Trigger Assembly, Disconnector Operated**

| | | | |
|---|---|---|---|
| 4. | Slide | 22. | Trigger bar |
| 11. | Firing pin | 24. | Sear |
| 13. | Safety lock | 28. | Safety lever |
| 20. | Trigger | 29. | Hammer |

43.     The above design prevents the hammer-fired pistol from firing out-of-battery in two ways. First the trigger bar becomes "disconnected" from the sear. Second, the firing pin is blocked. If the slide retracts then the pistol cannot fire. This prevents any out-of-battery events from occurring. Even a small amount of movement (such as that from pressing the muzzle of the pistol against a wall) would be enough to keep the pistol from firing.

- 10 -



44.     John Moses Browning designed a disconnector safety into his proven design known as the model 1911.  The 1911 pistol also has a disconnector safety that will not allow the pistol to fire out-of-battery.  Additionally, this design physically blocks the trigger bow from traveling rearward to cause the sear spring to move enough to allow the sear to drop.  This disconnector safety is actuated each time the slide retracts in the cocking cycle keeping the pistol from operating in a fully automatic mode.

45.     In approximately 2014, Defendant Sig designed and manufactured its first striker-fired pistol, the model P320 Pistols.  A striker-fired pistol uses a "striker" to impact the primer of the cartridge.  The pulling of the trigger (if all safety conditions are met) causes the striker to move rearward until the trigger bar releases the striker allowing it to move forward and impact the primer, thereby firing the weapon.  A diagram of a striker-fired pistol (in this case a Glock 23) is included below:

- 11 -



46.     The Glock pistol above includes a trigger safety that would prevent the gun from discharging when dropped but also includes a "Striker Safety" analogous to the "Safety Lock" found in earlier Sig hammer-fired designs.  As described above, this safety in the Glock also acts as a disconnector safety and keeps the pistol from firing out-of-battery.  The Sig P320 Pistol, as designed, had no such mechanism, resulting in a perpetual risk that the Pistol could fire out-of-battery.

47.     Because the P320 was the first of Sig's ventures into striker-fired pistols, it needed to be innovative to compete in an already diverse market.[4]  The primary feature of the

---

[4] Striker-fired pistols on the market currently include over 25 models of Glock, Heckler & Koch VP9, Ruger SR9, Ruger American, Smith & Wesson M&P, Springfield Armory XD series, Walther PPQ and P99 series, Steyr L9 and S9 series, Fabrique Nationale FNS and 509 series,

- 12 -

Pistols, as advertised by Sig, is their "smooth, consistent trigger pull."  After coming to market,

Guns Magazine stated:

> The trigger is an absolute treat. If you've never liked the feel or travel of the typically
> segmented multi-part triggers on striker-fired polymer pistols, you owe it to yourself to try it.
> Our test sample, like virtually all the first-run P320's, is equipped with the "standard"
> smooth, 1-piece trigger, and I recommend it. In my opinion it's the best off-the-shelf
> production DAO trigger I've encountered on a striker-fired pistol and very nearly as good as
> some high-dollar aftermarket triggers I've tested.

48.     Sig also touted the Pistols as safer than other options.  However, Sig's quest for

an improved trigger led to two very serious safety issues.  First, the trigger pull was too light,

allowing the Pistols to discharge if dropped.  Second, Sig did not include a disconnector safety in

the Pistols, which creates a dangerous condition that allows the Pistols to fire out-of-battery.

49.     Sig concealed the lack of a disconnector safety in the Pistols from consumers and

continued to advertise the Pistols as safe.

**B.     Sig's Pistols are capable of firing out-of-battery.**

50.     As explained above, firing out-of-battery refers to the Pistols' ability to fire when

the barrel and slide are not firmly locked together.  Generally, the barrel and slide will not unlock

until after the bullet exits the barrel and the barrel-pressure drops to near zero.  When this occurs

the barrel and slide can safely disengage and the pistol can then continue through its cycle of

operations.  When a pistol fires out-of-battery, the pistol may be unlocked at a time when barrel-

pressure is catastrophically high, creating a dangerous situation for the shooter and all those in

the immediate vicinity of the shooter.  Firing out-of-battery may also result in the swelling of the

---

Remington RP9,  Beretta APX,  Kahr arms line of pistols,  Bersa BP series, Taurus Millennium
series, and others.

cartridge casings and full explosive failure of the Pistol. Plaintiff DeLisle's pistol did just that on at least two different and separate occasions with the exclusive usage of factory ammunition.

51.     During the second out-of-battery event, the pressure within Plaintiff DeLisle's pistol was so high that the frame cracked and broke in several places, the extractor and magazine blew out of the gun, and the brass casing of the ammunition "flowed" to alleviate pressure. At the time of the second catastrophic out-of-battery event, the pistol had less than 200 total rounds of ammunition fired through it since being purchased new. The pictures below illustrate the resulting damage caused by the second out-of-battery event as well as the unsafe and dangerous condition created by the lack of a disconnector safety.





52.    Upon information and belief, the out-of-battery events experienced by Plaintiff DeLisle could have been prevented if his P320 Pistol had utilized a disconnector safety.  Instead, Plaintiff DeLisle experienced two catastrophic out-of-battery events in the first two-hundred rounds despite only using factory ammunition in his P320 Pistol.

53.    The picture below shows a typical 9mm casing after firing, as well as one that experienced an out-of-battery event.  The casing on the right (fired out-of-battery) is shorter and bulged above the case head.  In this instance, the direction of the explosion was contained not by the firearm, but by the cartridge casing, deforming it in the process.  This is essentially the best case scenario of what can happen when a pistol fires out-of-battery, and is a warning of potentially worse failures to come.  Such events cannot occur if a pistol has a functioning disconnector safety which would keep the pistol in battery.

- 15 -



54.     Searches of various online forums show that other consumers are also experiencing out-of-battery-events with the Pistols (yet Sig denies or conceals the issue):



### g mac
Looks for Target
●●●



Classified
156 posts
Gender:Male
Location:Maui, Hawaii

Posted July 12, 2017

My friend's sig 320 rx seems to fire out of battery too, and the barrel appears to be short chambered, not enough case support...see pictures.



http://forums.brianenos.com/topic/250694-p320-x-five-and-releasing-the-striker-out-of-battery/                    8/22

### titandriver
Calls Shots
●●●●●



Classifieds
626 posts
Gender:Male
Location:Cody, WY

Posted September 12, 2017

I've got about 20 pieces of brass that look just like in the above picture, in addition to blowing out the extractor on one occasion.

- 17 -



**Kenji** says:

December 22, 2017 at 00:14 (http://www.thetruthaboutguns.com/2017/12/jeremy-s/update-ttags-sig-p320-back-voluntary-upgrade/#comment-3763302)

I had my 320 sent in at the beginning of this month but not for the upgrade. The reason I sent my 320 was because I had three blow outs or what looked to be out of battery fires. Ammo was blamed and according to sig my 320 was in spec. I guess the gun going off when it's dropped as well as blowing up in my hand is something that is supposed to happen. So after talking with Sig's customer service about what to do next, I asked for the upgrade and was told it would take a few weeks. I was fine with this as there where no more USPSA matches for the rest of this month. I got a surprise two days later seeing that my gun was on it's way back to my house. Unfortunately I opened my case and noticed that the upgrade was not taken care of. Because of all of this I have lost interest in this firearm (which sucks because I fell in love with my 320 for USPSA) and will be selling it as I don't feel like loosing a finger or worse. The last time the gun blew up in my hands was right in front of Ben Stoeger and boy was that embarrassing but the one thing that I got a laugh out of that was what he said " I can tell you none of my stock 2s have done that". You can find pictures of what my gun looked like on his Facebook page or just Google p320 firing out of battery.



55.     Plaintiff DeLisle put Sig on actual notice of the defect as early as April 2017 when he sent his damaged pistol in for repair.  Further, Sig may have learned of the defect earlier via other customer repair requests, customer complaints directly to Sig, or routine monitoring of social media.  Sig had actual knowledge of the defect and has admitted as much by quietly fixing the out-of-battery defect on pistols that were sent in for the voluntary recall for the trigger-pull defect.

56.     Defendant Sig attempts to explain away the out-of-battery firing issues by telling consumers that the events were instead caused by their choice in ammunition and not by any problem with the Pistols, thereby intentionally concealing that the Pistols are defective. Similarly, when Plaintiff DeLisle confronted Sig about the out-of-battery events that he experienced, Sig advised that the ammunition was to blame even though Plaintiff DeLisle used only new factory-produced ammunition in his Pistol.  One consumer posted the following similar observation:

- 18 -



**C.**     <u>**Sig's Marketing of the P320 Pistol**</u>

57.     Sig's advertising stresses the military and law-enforcement lineage of their firearms and focusses on highlighting the military/police usage, the modularity, the safety, and the functionality to everyone.  Not only are military and law enforcement sales a source of profit for Sig, but military associations are also a powerful marketing tool that Sig uses to aggressively spur consumer sales. Representative advertisements follow on the next few pages.

- 19 -







58.    As demonstrated in the above marketing materials, Sig advertised that the Pistols would function in a safe manner.  Not only were these representations contained within Sig's advertisements, packaging, package inserts and website, but they were also delivered to retailers in the form of marketing materials and specifications which were reprinted verbatim and made

available to consumers.  The advertising and continued claims of safety have led to many people purchasing the Pistols without knowledge of the associated dangers.

59.     Sig's representations regarding the safety of the pistols are express warranties in addition to Sig's Limited Lifetime Warranty.

60.     Sig's Limited Lifetime Warranty appears below:

## Limited Lifetime Warranty

SIG SAUER warrants that the enclosed firearm was originally manufactured free of defects in material, workmanship and mechanical function. For the lifetime of the original purchaser, SIG SAUER agrees to correct any defect in the firearm for the original purchaser by repair, adjustment or replacement, at SIG SAUER' option, with the same or comparable quality components (or by replacing the firearms at SIG SAUER' option); provided, however, that the firearm is returned unloaded and freight prepaid to SIG SAUER at 18 Industrial Drive, Exeter, NH 03833.

This limited warranty is null and void if the firearm has been misused, damaged (by accident or otherwise), fired with handloaded, reloaded or improper ammunition, fired with an obstruction in the barrel, damaged through failure to provide reasonable and necessary maintenance as described in the manual accompanying the firearm, or if unauthorized repair or any alteration, including of a cosmetic nature, has been performed on the firearm. This limited warranty does not apply to normal wear and tear of any parts.

Subject to the foregoing, this limited warranty confers the right to have the covered firearm or its parts repaired, adjusted or replaced exclusively upon the original purchaser, which right is not transferable to any other person. No implied warranties of any kind are made herein and this warranty does not apply to any accessory items attached or appurtenant to the firearm.

In no event shall SIG SAUER be liable for any incidental or consequential damages arising from or in connection with this limited warranty.

61.     Sig had a duty to disclose that the Pistols suffer from a dangerous safety defect. Instead of disclosing the defect on the numerous marketing materials – or on the packaging of the Pistols themselves – Sig decided to conceal this dangerous safety defect from Plaintiffs and the Class, causing them to purchase the Pistols when they otherwise would not have purchased them, or by paying more for the Pistols than they otherwise would have.

- 23 -

D.      **Defendant's "Voluntary Upgrade"**

62.     As mentioned above, on or about August 8, 2017, Sig began a "Voluntary Upgrade" to address "recent events indicat[ing] that dropping the P320 beyond U.S. standards for safety may cause an unintentional discharge."[5]  However, through this program, Sig fails to address reports relating to out-of-battery firing events associated with the Pistols.

63.     Instead, Sig provides the following explanation related to the Voluntary Upgrade:[6]

> The design of the SIG SAUER P320 overcomes the most significant safety concern in striker-fired pistols today: the practice of pressing the trigger for disassembly. This can be performed with a round in the chamber which has resulted in numerous incidents of property damage, physical injury, and death. The disassembly process of the P320, however, uses a take-down lever rather than pressing the trigger, eliminating the possibility of discharge during the disassembly process.
>
> Recent events indicate that dropping the P320 beyond U.S. standards for safety may cause an unintentional discharge.
>
> As a result of input from law enforcement, government and military customers, SIG has developed a number of enhancements in function, reliability, and overall safety including drop performance. SIG SAUER is offering these enhancements to its customers. Details of this program will be available at sigsauer.com on Monday, August 14, 2017.
>
> The M17 variant of the P320, selected by the U.S. government as the U.S. Army's Modular Handgun System (MHS), is not affected by the Voluntary Upgrade.
>
> "SIG SAUER is committed to our approach on innovation, optimization, and performance, ensuring we produce the finest possible products," said Ron Cohen, President and CEO of SIG SAUER. "Durability, reliability and safety, as well as end-user confidence in the SIG SAUER brand are the priorities for our team."

64.     Under the Voluntary Upgrade, Sig not only fixed the firing-when-dropped issue, but also quietly attempted to fix its firing-out-of-battery issue without ever disclosing it as a

---

[5] https://www.cnbc.com/2017/08/08/sig-sauer-offers-voluntary-upgrade-of-p320-pistol-that-candischargeerroneously.html  (last visited April 3, 2018.)

[6] https://www.sigsauer.com/support/p320-voluntary-upgrade/ (last visited April 9, 2018.)

safety concern.  Sig notes on its website that the Voluntary Upgrade "… will include an alternate design that reduces the physical weight of the trigger, sear, and striker *while additionally adding a mechanical disconnector*."[7]   The reduced physical weight of the trigger was used by Sig to overcome any inertial issues with regard to the Pistols firing when dropped.   However, the addition of the mechanical disconnector or disconnector safety is not related to the firing-when-dropped issue, but rather to stop the firearm from discharging when out-of-battery.   The below pictures and diagrams illustrate the changes instituted to the Pistols by Sig through the Voluntary Upgrade.



---

[7]     https://www.sigsauer.com/support/p320-voluntary-upgrade/us-consumer-p320-voluntary-upgrade-program/ (last visited April 9, 2018) (emphasis added).









65.      The addition of a mechanical disconnector by Sig through the Voluntary Upgrade,

demonstrates that Sig secretly recognized that the Pistols have the capability to fire out-of-

battery and are taking secretive steps to address this issue for only those individuals who choose to participate in the Voluntary Upgrade established for the drop issue.  However, even with the addition of this mechanical disconnector by Sig through the Voluntary Upgrade, out-of-battery events remain possible, since the process in which the disconnector safety was added to the Pistols is defective.  Variations among the Pistols cause even the "fix" done in the Voluntary Upgrade to still allow out of battery events.  Below is an example of an upgraded Pistol where the disconnector safety pocket now continues forward (still allowing the Pistol to fire out-of-battery).



66.     Sig conceals the rationale and need for a disconnector safety to consumers who are considering participating in the Voluntary Upgrade program.  As a result, there are still many consumers who have decided, without having all of the necessary information, not to participate

- 27 -

in the Voluntary Upgrade or have a disconnector safety added to their Pistol and therefore still own a Pistol that is capable of having an unsafe and dangerous out-of-battery event.

67.     Regardless, Sig continues to tout the safety of the Pistols, markets the Pistols without disclosing they suffer from a dangerous design defect, and has failed to disclose that, even after participation in the Voluntary Upgrade, the Pistols remain dangerous and unsafe because they can still fire out-of-battery.

68.     Unfortunately, many consumers are under the misconception that the Pistols are safe due to Sig's continued and false marketing claims regarding safety.  Moreover, and because of Sig's failure to disclose, many individuals do not know that a properly installed disconnector safety is necessary to prevent future out-of-battery events with the Pistols.  Below are only a few examples of consumers unaware of the need for a disconnector safety in the Pistols:

69.



| 08-13-2017, 11:11 AM | #2 |
| --- | --- |
| **BILLG**<br>Senior Member<br><br>Join Date: Dec 2012<br>Location: Ohio<br>Posts: 233<br><br> | Good possibility I am not sending mine back.The 320 has passed all current industry standard tests and then some.Plenty safe for me.<br>conniemack, usmcdjb and ORSigShooter like this. |
| 08-13-2017, 11:19 AM | #3 |
| **MoRivera** ST<br>Supporting Member | I'm going to keep mine the way it is for a while...at least until I see feedback on the upgrades. I don't carry the P320c, so for range use or even home defense, I don't see it much different than having a Series 70 1911 in terms of 'drop safety'.<br>Jedi5150, PatLannon, dnaber and 1 others like this. |

- 28 -



Join Date: Jun 2015
Location: CT
Posts: 5,902



dieter9mm
Senior Member

Join Date: Dec 2013
Location: Kingsport, TN
Posts: 167

Not doing it. Feel it's unnecessary.

10-18-2017, 08:28 PM                                                                    #192

Sebcast1
Member

Join Date: Oct 2017
Location: Florida
Posts: 36

I don't think I'm going to be sending in my p320. I feel like it'll be safe enough and don't believe I'll ever drop it. (hopefully) For now, i believe I'll just wait and see what others say.

70.    However, even after participating in the Voluntary Upgrade, consumers are still experiencing out-of-battery events due to the defective process utilized by Sig in the Voluntary Upgrade.  Some examples follow on the next page.

- 29 -





71.     In the Pistol's operating manual, Sig clearly recognizes the danger of a burst cartridge and the possibility of a malfunction where the Pistol's slide does not close completely. Without a disconnector safety, both situations may occur in the Pistols.  Regardless, Sig does not inform consumers that such dangers exist due to the absence of a disconnector safety when the Pistols were originally sold to the public.

3. Firearms may be severely damaged and serious injury to the shooter or to others may result from any condition causing excessive pressure inside the chamber or barrel during firing. Excessive pressure can be caused by obstructions in the barrel, propellant powder overloads, the use of incorrect cartridges, or defectively assembled cartridges. In addition, the use of a dirty, corroded, or damaged cartridge can lead to a burst cartridge case and consequent damage to the firearm and personal injury from the sudden escape of high-pressure propellant gas within the firearm's mechanism.

- 30 -

| Slide does not close easily or completely | Pistol or cartridge is fouled (dirty) or pistol is too heavily lubricated | Clean and lubricate pistol and/or replace the ammunition |
|---|---|---|
| | Incorrect ammunition | Replace ammunition |
| | Pistol requires service | Return to SIG SAUER |

72.     Despite knowing, at the time of sale to the public, that the pistols were designed in a way that allowed them to fire out-of-battery, Sig has chosen to leave Pistols capable of catastrophic out-of-battery events in their customers' hands.  Sig has not recalled the Pistols and has instead chosen to continue to conceal important safety information regarding the Pistols from consumers.  Plaintiffs seek to correct this for themselves and the classes they seek to represent.

## V.     CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated.  The proposed Class includes all individuals who purchased one or more Sig model P320 Pistols in the United States (the "Class") from 2014 until the present (the "Class Period"). Excluded from the Class are assigned judges and members of their families within the first degree of consanguinity, Defendant, and their subsidiaries, affiliates, officers, and directors.

74.     Plaintiff Hartley also brings this class action on behalf of himself and the "Missouri Subclass."  The proposed Missouri Subclass includes all individuals who reside in Missouri and either own or have purchased one or more Sig Pistols in Missouri during the Class Period.  Excluded from the Missouri Subclass are assigned judges and members of their families within the first degree of consanguinity, Defendant, and their subsidiaries, affiliates, and directors.

75.     Plaintiff DeLisle also brings this class action on behalf of himself and the "Illinois Subclass."  The proposed Illinois Subclass includes all individuals who reside in Illinois and

either own or have purchased one or more Sig Pistols in Illinois during the Class Period. Excluded from the Illinois Subclass are assigned federal judges and members of their families within the first degree of consanguinity, Defendant, and their subsidiaries, affiliates, officers, and directors.

76.     Members of the Class, Missouri Subclass, and Illinois Subclass will be jointly referred to as "Class Members."

77.     The requirements of Federal Rule of Civil Procedure 23 are satisfied.

78.     The proposed Class and Subclasses are so numerous that individual joinder of all their members is impracticable.  On information and belief, members of the Class and subclasses number in the thousands.   The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be ascertained through appropriate discovery.  Class members may be notified of the pendency of this action by mail, publication and/or through the records of Defendant and third-party retailers and vendors.

79.     There are many common questions of law and fact affecting Plaintiffs and Class Members.  Common legal and factual questions include, but are not limited to:

> (a)     whether Defendant advertised or marketed the Pistols in a way that was false or misleading;
>
> (b)     whether Defendant's statements about the characteristics of the Pistols were false or misleading;
>
> (c)     whether Defendant concealed information regarding a dangerous safety defect from consumers;
>
> (d)     whether Defendant's statements about the Pistols safety were false or misleading;

- 32 -

(e)     whether Defendant's statements about the toughness and the ability of the Pistols to function in varied and harsh environments were false or misleading;

(f)     whether Defendant concealed from Plaintiffs and the Class that Sig Pistols did not conform to its stated representations;

(g)     whether, by the misconduct set forth in this complaint, Defendant have engaged in unfair, fraudulent or unlawful business practices;

(h)     whether Defendant's conduct was committed knowingly or intentionally;

(i)     whether Defendant breached any express warranties made to Plaintiffs and Class Members;

(j)     whether Defendant's conduct violates the Magnuson-Moss Act;

(k)     whether Defendant's conduct constitutes violations of the state laws asserted herein;

(l)     whether Defendant were unjustly enriched by their conduct;

(m)     whether Class Members suffered an ascertainable loss as a result of the Defendant's misrepresentations; and

(n)     whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

80.     Plaintiffs' claims are typical of the claims of the proposed Class and Subclasses because Plaintiffs and Class Members were harmed in the same manner by the same conduct. Plaintiffs and Class Members have all sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

- 33 -

81.     Plaintiffs Hartley and DeLisle will fairly and adequately represent and protect the interests of the Class and Subclasses.  Their interests do not conflict with the interests of the Class Members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

82.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the litigation.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system.  Individualized litigation also presents the potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

83.     Questions of law and fact common to the Class and Subclasses predominate over any questions affecting only individual Class Members.  Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts i.e., Defendant's misconduct.  In each case, Defendant manufactured, marketed, distributed or sold the Pistols and deceived Plaintiffs and Class Members as to the characteristics, uses or benefits of the Pistols.  The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

84.     Plaintiffs also seek certification of an injunctive relief class under Fed. R. Civ. P. 23(b)(2) requiring, *inter alia*, that Defendant disclose the existence and nature of the Pistols' defective design to all consumers including but not limited to those who learn of, and participate

in, Defendant's "voluntary upgrade" program. Plaintiffs also seek a Court order requiring Defendant to issue notice directly to all members of the Class.

## COUNT I
### (Violation of the Magnuson-Moss Warranty Act)

85.     Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

86.     Sig Pistols are consumer products as defined in 15 U.S.C. § 2301(1).

87.     Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

88.     At all relevant times, Defendant was a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

89.     The amount in controversy of each individual's claim is more than the sum or value of twenty-five ($25) dollars.

90.     In connection with the sale of Sig Pistols, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which expressly warranted that Sig Pistols could safely be used for the intended purpose, as well as, that the Pistols were "originally manufactured free of defects in material, workmanship and mechanical function." See Paragraph 60 above.  In fact, Sig Pistols did not have a disconnect safety rendering them susceptible to out-of-battery discharge events.

91.     Defendant's breached the express written warranties stating that Sig Pistols that Sig Pistols were "safe" as designed.   Defendant thus violated the statutory rights of Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., thereby damaging Plaintiffs and Class Members.

92.     Defendant had actual notice of the defects through many different avenues prior to Plaintiffs filing suit.  Defendant knew from inception that they chose to exclude a disconnector

- 35 -

and that therefore the Pistol could fire out of battery.  Further, when Plaintiffs and others sent firearms in for repair Defendant knew or should have know that the Pistol could fire out of battery.  Additionally, by quietly adding disconnectors to the pistols during the so called "voluntary-recall" program, Defendant has admitted knowledge of the defect.

## COUNT II
**(Violation of Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*)**

93.     Plaintiff Hartley re-alleges and incorporates by reference each allegation set forth above.

94.     Plaintiff Harley brings this count individually, and on behalf of the National Class and the Missouri Subclass.

95.     The Missouri Merchandising Practices Act broadly prohibits false, fraudulent or deceptive merchandising practices. Mo. Rev. Stat. § 407.020.

96.     At all relevant times, Defendant's sales or distribution of Sig Pistols was a "sale" as defined by Section 407.010 because such sale or distribution constituted a sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit.

97.     At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of Sig Pistols was an "advertisement" as defined by Section 407.010 because such manufacturing, marketing, advertising, sales or distribution constituted an attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise.

98.     In connection with the sale or advertisement of Sig Pistols, Defendant failed to disclose that Sig Pistols suffered a safety defect concerning the disconnector safety or the lack thereof.  Sig continued to hide the defect even when issuing a "voluntary upgrade" for another

safety defect and specifically stated the firearms were safe and exceeded all safety standards in the US.   Defendant knew that these omissions and representations concerning Sig Pistols (described in detail above) would be reasonably equated to performance. As such, Defendant's acts and omissions as alleged constitute violations of Section 407.020.

99.    Sig's affirmative misrepresentations and omissions of the aforementioned material facts were undertaken with the intent that consumers rely upon them and purchase the Pistols with a design defect.

100.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff Hartley and Class Members suffered damages and ascertainable losses in amounts to be determined at trial, by paying more for Sig Pistols than they would have, or by not purchasing Sig Pistols at all if the true facts were known.

101.    Pursuant to Section 407.025, Plaintiff Hartley and Class Members are entitled to recover actual damage and attorney's fees from Defendant.

### **COUNT III**
**(Unjust Enrichment)**

102.    Plaintiff Hartley and Class Members re-allege and incorporate by reference each allegation set forth above.

103.    Plaintiff Hartley brings this count individually, and on behalf of the nationwide Class and the Missouri Subclass under Missouri law.

104.    Plaintiff and Class Members conferred a benefit on Sig by purchasing Sig Pistols. Defendant was aware of this benefit, and at the same time aware of the undisclosed defects the Pistols.

105.    Sig has been unjustly enriched in retaining the revenues derived from Class Members' purchases of Sig Pistols, which retention under these circumstances is unjust and

- 37 -

inequitable because Sig misrepresented that Sig Pistols were "safe" and later that they even exceeded US safety standards, which caused injuries to Plaintiff and Class Members because (a) they would not have purchased the Sig Pistols on the same terms if the true facts concerning their operation and construction had been known; or (b) they paid a price premium due to Defendant's false, misleading and deceptive representations concerning Sig Pistols.

106.    Because Sig's retention of the benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Sig must pay restitution to Plaintiff and the Class members for its unjust enrichment.

## COUNT IV
### (Illinois Consumer Fraud and Deceptive
Business Practices Act 815 ILCS 505/1, *et seq*. and 720 ILCS 295/1a)

107.    Plaintiff DeLisle and Class Members re-allege and incorporate by reference each allegation set forth above.

108.    Plaintiff DeLisle brings this count individually and on behalf of members of the Illinois Subclass against Defendant.

109.    Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

110.    Plaintiff and the Illinois Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

111.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Act") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or

commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

112.    Defendant's acts, deception, practices, misrepresentations and concealment as alleged herein constitute "unfair" business acts and practices under the Illinois Act.  Defendant intentionally and knowingly misrepresented and omitted material facts regarding the Sig Pistols to Plaintiff Delisle and the Illinois Subclass.  Sig knew or should have known that this conduct violated the Illinois Act.

113.    Defendant owed Plaintiff DeLisle and the Illinois Subclass a duty to disclose the safety risks and or public health concerns of the Pistols as they possessed exclusive knowledge that the Pistols were not safe, intentionally concealed the safety defects, and continued to make incomplete or inaccurate representations during the "voluntary upgrade."

114.    Plaintiff DeLisle and members of the Illinois Subclass suffered lost money or property as a result of Defendant's Illinois Act violations because they would not have paid as much for, or purchased, Sig's Pistols if they knew the truth about the products.

115.    Plaintiff DeLisle and the Illinois Subclass seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair or fraudulent acts and practices, and to commence a corrective advertising campaign.  Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Class seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

116.    Plaintiff DeLisle and the Illinois Subclass also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

- 39 -

## COUNT V
**(Unfair and Deceptive Acts and Practices Under The Various State Laws In Which Class Members Reside, If The Court Eventually Determines That The Laws Of A Consumers' Residence Apply To Defendant's Wrongful, Unfair, And Deceptive Acts)**

117.   Plaintiffs and the Class Members re-allege and incorporate by reference each allegation set forth above and further allege as follows.

118.   As the choice of law question cannot be conclusively addressed at this point in the litigation, Plaintiffs state the following alternative causes of action under the laws of the states of residence of Class Members, if it is later determined by the Court that the choice of law rules require the application of these state laws.

119.   The practices discussed above, including, but not limited to, Defendant's undisclosed defects, all constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the state consumer protection statutes listed in ¶¶ 112- 157 below.

120.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Statutes § 45.50.471, *et seq.*  In particular, Alaska law provides:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.  (b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts: . . . (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (8) advertising goods or services with intent not to sell them as advertised; . . . (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged; . . . (15) knowingly making false or misleading statements concerning the need for parts, replacement, or repair service . . .

- 40 -

Alaska Stat. § 45.50.471.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Alaska Statutes Annotated § 45.50.471.

121.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Revised Statutes § 44-1521, *et seq*.  Particularly, Arizona law prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. Ann. § 44-1522(A).  By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Arizona Revised Statute Annotated § 44-1522(A).

122.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated § 4-88-101, *et seq*.  In particular, Arkansas law provides:

> Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; . . . (3) Advertising the goods or services with the intent not to sell them as advertised; . . . (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade. . . .

Ark. Code Ann. § 4-88-107.

Arkansas law further provides,

> "[w]hen utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful: (1) The act,

- 41 -

use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."

Ark. Code Ann. § 4-88-108.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant violated Arkansas Code Annotated §§ 4-88-107, 4-88-108.

123.    Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of CAL.BUS. & PROF CODE §17200, et seq., § 17500, et seq. Specifically, Section 17200 provides that unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Plaintiffs and the Class seek injunctive relief, including restitution, under the UCL. Plaintiffs and the Class also seek injunctive relief under California's Consumers Legal Remedies Act and will seek monetary relief once that statute's notice requirements have been satisfied.

124.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colorado Revised Statutes § 6-1-101, *et seq.* In particular, Colorado law provides:

> A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . . (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . . (i) Advertises goods, services, or property with intent not to sell them as advertised; . . . (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction . . . .

Colo. Rev. Stat. § 6-1-105.

- 42 -

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Colorado Revised Statutes § 6-1-105.

125.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the General Statutes of Connecticut § 42-110a, *et seq*.   In particular, Connecticut law provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."   Conn. Gen. Stat. § 42-110b(a).   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated the General Statutes of Connecticut § 42-110b.

126.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Delaware Code Annotated Title 6, § 2511, *et seq*.   In particular, Delaware law provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."   Del. Code Ann. tit. 6, § 2513(a).   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Delaware Code Annotated Title 6, § 2513(a).

127.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of District of Columbia Code § 28-3901, *et seq*.   Particularly, District of Columbia law provides:

> It shall be a violation of this chapter, whether or not any consumer is in fact
> misled, deceived or damaged thereby, for any person to: (a) represent that goods

- 43 -

> or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; . . . (f) fail to state a material fact if such failure tends to mislead; . . . (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered . . . .

D.C. Code § 28-3904.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated District of Columbia Code § 28-3904.

128.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Statutes § 501.201, *et seq.*  In particular, Florida law provides, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1).   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Florida Statutes § 501.204(1).

129.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Georgia Code Annotated §10-1-390, et seq.  In particular, Georgia law provides:

> (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised.

Ga. Code Ann. § 10-1-372.

Georgia law further provides:

> (a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this

- 44 -

> Code section, the following practices are declared unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised . . . .

Ga. Code Ann. § 10-1-393(a).

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Georgia Code Annotated §§ 10-1-372, 10-1-393(a).

130.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes § 480-1, *et seq.*  In particular, Hawaii law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2.  Hawaii law further provides:

> (a) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Haw. Rev. Stat. § 481A-3.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Hawaii Revised Statutes §§ 480-2, 481A-3.

131.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code Annotated § 48-601, *et seq.*  In particular, Idaho law provides:

> The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that

- 45 -

he has in the past, or is: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer . . . .

Idaho Code Ann. § 48-603.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Idaho Code Annotated § 48-603.

132.    Defendant have engaged in unfair competition or unfair or deceptive acts or practices in violation of Indiana Code § 24-5-0.5-1, *et seq*. In particular, Indiana law provides:

(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts: (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have. (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not. . . . (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it.

Ind. Code § 24-5-0.5-3.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Indiana Code § 24-5-0.5-3.

133.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Statutes Annotated § 50-623, *et seq*. In particular, Kansas law provides:

(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction; (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled: (1) Representations made knowingly or with reason to know that: (A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or

- 46 -

quantities that they do not have; . . . (D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; . . . (F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . .

Kan. Stat. Ann. § 50-626.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Kansas Statutes Annotated § 50-626.

134.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kentucky Revised Statutes Annotated § 367.110, *et seq*.  In particular, Kentucky law provides, "(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.  (2) For the purposes of this section, unfair shall be construed to mean unconscionable."  Ky. Rev. Stat. Ann. § 367.170.  By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Kentucky Revised Statutes Annotated § 367.170.

135.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Revised Statutes Annotated § 51:1401, *et seq*.  Particularly, Louisiana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  La. Rev. Stat. Ann. § 51:1405A.   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Louisiana Revised Statutes Annotated § 51:1405A.

- 47 -

136.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Maine Revised Statutes Annotated Title 5, § 205-A, *et seq*.  In particular, Maine law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."  Me. Rev. Stat. Ann. tit. 5, § 207. By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Maine Revised Statutes Annotated Title 5, § 207.

137.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Maryland Code Annotated, Commercial Law § 13-101, *et seq*.  In particular, Maryland law provides:

> Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) Representation that: (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; . . . or . . . (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) Failure to state a material fact if the failure deceives or tends to deceive; . . . (5) Advertisement or offer of consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent them as advertised or offered; . . . (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service . . . .

Md. Code Ann., Com. Law § 13-301.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Maryland Code Annotated, Commercial Law § 13-301.

138.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the General Laws of Massachusetts Chapter 93A, § 1, *et seq*.  In particular, Massachusetts law provides, "(a) Unfair methods of competition and unfair or

- 48 -

deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Mass. Gen. Laws Ch. 93A, § 2.  By engaging in the practices discussed above, including, but not limited to, including, but not limited to, Defendant's undisclosed defects, Defendant has violated the General Laws of Massachusetts Chapter 93A, § 2.

139.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Michigan Compiled Laws § 445.901, *et seq*.  In particular, Michigan law provides:

> (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: . . . (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. . . . (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. . . . . (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. . . . . (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. . . . (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws § 445.903.

By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendant has violated Michigan Compiled Laws § 445.903.

140.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minnesota Statutes § 8.31, *et seq*.  In particular, Minnesota law provides:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

- 49 -

Minn. Stat. § 325D.44, sub. 1.

Minnesota law further provides:

> Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

Minn. Stat. § 325F.67.

Minnesota law provides as well that

> "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable . . . ."

Minn. Stat. § 325F.69, sub. 1.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Minnesota Statutes §§ 325D.44, sub. 1, 325F.67, 325F.69, sub. 1.

141.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code Annotated § 30-14-101, *et seq.*  In particular, Montana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Mont. Code Ann. § 30-14-103.  By engaging

- 50 -

in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Montana Code Annotated § 30-14-103.

142.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Revised Statutes § 59-1601, *et seq*.  In particular, Nebraska law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."  Neb. Rev. Stat. § 59-1602.  Nebraska law further provides:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (c) This section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this state.

Neb. Rev. Stat. § 87-302.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Nebraska Revised Statutes §§ 59-1602, 87-302.

143.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nevada Revised Statutes § 598.0903, *et seq*.  Nevada law provides in particular:

> A person engages in a "deceptive trade practice" if, in the course of his business or occupation, he: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith. . . . 7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he knows or should know that they are of another standard, quality, grade, style or model. . . . 9. Advertises goods or services with intent not to sell or lease them as advertised. . . . 15. Knowingly makes any other false representation in a transaction. . . .

Nev. Rev. Stat. § 598.0915.

- 51 -

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Nevada Revised Statutes § 598.0915.

144.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Revised Statutes Annotated § 358-A:1, *et seq.* Particularly, New Hampshire law provides:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state.   Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: . . . V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . IX. Advertising goods or services with intent not to sell them as advertised . . . .

N.H. Rev. Stat. Ann. § 358-A:2.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant havs violated New Hampshire Revised Statutes Annotated § 358-A:2.

145.   Defendant has engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Jersey Statutes Annotated § 56:8-1, *et seq.* Particularly, New Jersey law provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.

- 52 -

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated New Jersey Statutes Annotated § 56:8-2.

146.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Statutes § 57-12-1, *et seq*.  In particular, New Mexico law provides:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes: . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another; . . . (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive; . . . E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services . . . : (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.

N.M. Stat. § 57-12-2.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated New Mexico Statutes § 57-12-2.

147.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New York General Business Law § 349, *et seq*.  In particular, New York law provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349.  By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated New York General Business Law § 349.

- 53 -

148.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina General Statutes § 75-1.1, *et seq.*  In particular, North Carolina law provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  N.C. Gen. Stat. § 75-1.1(a).   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated North Carolina General Statutes § 75-1.1(a).

149.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of North Dakota Century Code § 51-15-01, *et seq.*  In particular, North Dakota law provides:

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

N.D. Cent. Code § 51-15-02.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated North Dakota Century Code § 51-15-02.

150.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Revised Code Annotated § 1345.01, *et seq.*  In particular, Ohio law provides, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."   Ohio Rev. Code Ann. § 1345.02(a).   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Ohio Revised Code Annotated § 1345.02(a).

- 54 -

151.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Oklahoma Statutes Title 15, § 751, *et seq.* In particular, Oklahoma law provides:

> As used in the Oklahoma Consumer Protection Act: . . . 13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; 14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. . . .

Okla. Stat. Tit. 15, § 752.

Oklahoma law further provides:

> A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 et seq. of this title, when, in the course of the person's business, the person: . . . 5. Makes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction . . . ; . . . 7. Represents, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; 8. Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised; . . . 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title . . . .

Okla. Stat. Tit. 15, § 753.

It continues to provide:

> A. A person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . 7. Represents that goods or services are a particular standard, quality, or grade, or that goods are a particular style or model, if they are another; . . . C. The deceptive trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state.

Okla. Stat. Tit. 78, § 53.

- 55 -

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Oklahoma Statutes Titles 15, §§ 752 and 753, 78, § 53.

152.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pennsylvania Statutes Annotated Title 73, § 201-1, *et seq*.  In particular, Pennsylvania law provides:

> (4) "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following: . . . (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

Pa. Stat. Ann. Tit. 73, § 201-2.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Pennsylvania Statutes Annotated Title 73, § 201-2.

153.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island General Laws § 6-13.1-1, *et seq*.  In particular, Rhode Island law provides:

> As used in this chapter: . . . (6) "Unfair methods of competition and unfair or deceptive acts or practices" means any one or more of the following: (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding; (xiii) Engaging in any act or practice that is unfair or deceptive to the consumer; (xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect; . . . (xvii) Advertising claims concerning safety, performance, and comparative price unless the advertiser, upon request by any person, the consumer council, or the attorney

- 56 -

general, makes available documentation substantiating the validity of the claim . .
. .

R.I. Gen. Laws § 6-13.1-1.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Rhode Island General Laws § 6-13.1-1.

154.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Annotated § 39-5-10, *et seq.*  In particular, South Carolina law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. . . ."  S.C. Code Ann. § 39-5-20.   By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated South Carolina Code Annotated § 39-5-20.

155.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of South Dakota Codified Laws § 37-24-1, et seq.  In particular, South Dakota law provides:

> It is a deceptive act or practice for any person to: (1) Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby.

S.D. Codified Laws § 37-24-6(1).

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated South Dakota Codified Laws § 37-24-6(1).

156.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tennessee Code Annotated § 47-18-101, et seq.  In particular, Tennessee law provides:

- 57 -

(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services; . . . (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person . . . .

Tenn. Code Ann. § 47-18-104.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Tennessee Code Annotated § 47-18-104.

157.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*  Specifically General Motors has violated the following sections of the Texas Deceptive Trade Practices Act ("DTPA"):

Tex. Bus. & Com. Code §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(7), §17.46(b)(20), and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs and each member of the Texas Class; and

Tex. Bus. & Com. Code §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

TEX. BUS. & COM. CODE ANN. § 17.41.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Texas Business & Communication Code Annotated § 17.41.

- 58 -

158.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Annotated § 13-11-1, *et seq*.  In particular, Utah law provides:

> (1) A deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction.  (2) Without limiting the scope of Subsection (1), a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; . . .(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; . . . (j) . . . (ii) fails to honor a warranty or a particular warranty term . . . .

Utah Code Ann. § 13-11-4.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Utah Code Annotated § 13-11-4.

159.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vermont Statutes Annotated Title 9, § 2451, *et seq*.  In particular, Vermont law provides, "(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful."  Vt. Stat. Ann. tit. 9, § 2453.  By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Vermont Statutes Annotated Title 9, § 2453.

160.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Virginia Code Annotated § 59.1-196, *et seq*.  In particular, Virginia law provides:

> A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: . . . 5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; 7. Advertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished,

- 59 -

deteriorated, or reconditioned, or that are "seconds," irregulars, imperfects, or "not first class," without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, reconditioned, or are "seconds," irregulars, imperfects or "not first class"; 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. . . . 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . .

Va. Code Ann. § 59.1-200.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Virginia Code Annotated § 59.1-200.

161.   Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Washington Revised Code. § 19.86.010, *et seq*.  Particularly, Washington law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Wash. Rev. Code § 19.86.020.  By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Washington Revised Code § 19.86.020.

162.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et seq*.  In particular, West Virginia law provides:

(7) "Unfair methods of competition and unfair or deceptive acts or practices" means and includes, but is not limited to, any one or more of the following: . . . (E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; . . . (I) Advertising goods or services with intent not to sell them as advertised; . . . (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; . . . (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

- 60 -

W. Va. Code § 46A-6-102.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated West Virginia Code § 46A-6-102.

163.   Defendant has engaged in unfair competition or unfair, deceptive, or fraudulent acts or practices in violation of Wisconsin Statutes § 100.20, *et seq*.  Particularly, Wisconsin law provides, "Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited."  Wis. Stat. § 100.20(1).  By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Wisconsin Statutes § 100.20(1).

164.   Defendant has engaged in unfair competition or unfair, deceptive, or fraudulent acts or practices in violation of Wyoming Statutes Annotated § 40-12-101, *et seq*.  In particular, Wyoming law provides:

> (a) A person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly: (i) Represents that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; . . . (iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not; . . . (x) Advertises merchandise with intent not to sell it as advertised; . . . or . . . (xv) Engages in unfair or deceptive acts or practices.

Wyo. Stat. Ann. § 40-12-105.

By engaging in the practices discussed above, including, but not limited to, Defendant's undisclosed defects, Defendant has violated Wyoming Statutes Annotated § 40-12-105.

165.   Plaintiffs and members of the Class have been injured by reason of Defendant's unfair and deceptive acts and practices in regard to its sale of the Pistols without proper disclosure, without which consumers would not have bought the Pistols or would have been unwilling to pay the price they, in fact, purchased them for.  These injuries are of the type that

- 61 -

the above state consumer protection statutes were designed to prevent and are the direct result of Defendant's unlawful conduct.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

A.     Issue an order certifying the nationwide Class, the Missouri Subclass and the Illinois Subclass under Rule 23 of the Federal Rules of Civil Procedure

B.     Appoint Plaintiffs as Class Representatives and their attorneys as Class Counsel;

C.     Award actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, certifying a Class under Fed. R. Civ. P. 23(b)(2), and awarding restitution and all other forms of equitable monetary relief;

E.     Award prejudgment interest on all amounts awarded;

F.     Award Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit; and

G.     Grant such further relief that this Court deems appropriated.

## VII.    JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: July 20, 2018

By:___/s/ Tim Dollar_____
Tim E. Dollar          MO # 33123
**DOLLAR BURNS & BECKER, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600

- 62 -

Facsimile: (816) 221-8763
Email: timd@dollar-law.com

Matthew D. Schelkopf
*pro hac vice forthcoming*
**SAUDER SCHELKOPF**
555 Lancaster Ave.
Berwyn, PA 19312
Telephone: (610) 200-0581
Email: mds@sstriallawyers.com


Bonner Walsh
*pro hac vice*
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 20, 2018 the foregoing was filed electronically using the Court's electronic filing system, which will automatically send notice of electronic filing to all attorneys of record.

*/s/ Tim Dollar*
Attorney for Plaintiff